S/I

FEE PAID
RELATED DDJ

Scott York, in Pro Per
32 Esperanza Ave #204
Long Beach, CA 90802
323-359-9336
Scott.york@live.com
**Plaintiff In Pro Per**

**FILED**
CLERK, U.S. DISTRICT COURT

DEC 14 2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DEPUTY

**UNITED STATES DISTRICT COURT CENTRAL DISTRICT
OF CALIFORNIA CENTRAL DISTRICT (WESTERN DIVISION)**

Scott York, *an individual;*

Plaintiff,

vs.

United States of America;

United States Department of Defense (Unknown Officers, Agents, and Employees Acting Under the Direction Thereof), *a department of the federal government of the United States;*

National Security Agency (NSA) (Unknown Officers, Agents, and Employees Acting Under the Direction Thereof), *a federal agency of the federal government of the United States;*

Central Intelligence Agency (CIA) (Unknown Officers, Agents, and Employees Acting Under the Direction Thereof), *a federal agency of the federal government of the United States;*

CASE NUMBER:

**2:22-CV-09127-JAK-SP**

**DEFENDANT CLASS ACTION**

1.  ***Bivens*** **actions including 4th Amendment, 8th Amendment, 5th and 14th Amendment – due process, and (novel) 1st Amendment** ***Bivens*** **causes of Action.**
2.  **28 U.S.C. 1331;**
3.  **42 U.S.C. 1983;**
4.  **42 U.S.C. 1985;**
5.  **Fraudulent Concealment;**
6.  **28 U.S.C. §1346 Federal Jurisdiction Over Tort Claims;**
7.  **28 U.S.C. §2671,** ***et seq.*** **Federal Tort Claims Act;**
8.  **28 U.S.C. §2680 Exceptions – Intentional Torts of Investigative or Law Enforcement Officers of the United States Government;**
9.  **28 U.S.C. §2674 Liability of the United States;**

1

Drug Enforcement Administration (DEA) (Unknown Officers, Agents, and Employees Acting Under the Direction Thereof), *a federal agency of the federal government of the United States;*

Unknown California State Official Authorizing the Ongoing Use of Directed Energy Technologies/Weapons Against Plaintiff at the California National Guard, *a California State Government Official;*

Unknown Class Representative(s) of Defendant Class Actively Participating (sitting at the controls and/or participating in the coordination of the Harmful Use of Directed Energy Technologies/Weapons upon Plaintiff;

Does 1 to 10, inclusive;

                              Defendants.

1. **Parties to this Complaint**

a. **Plaintiff(s).**

Scott P. York

32 Esperanza Ave, #204

Los Angeles, CA 90802

(323) 359-9336.

b. **Defendant(s).**

**Defendant 1:**

Unites States of America

Merrick Garland

United States Attorney General

Office of the Attorney General

U.S. Department of Justice

950 Pennsylvania Avenue

NW Washington, D.C. 20530-0001

**Defendant 2:**

United States Department of Defense (Unknown Officers, Agents, and Employees Acting Under the Direction Thereof)

1600 Defense Pentagon

Washington, D.C. 20301-1600

**Defendant 3:**

National Security Agency (Nsa) (Unknown Officers, Agents, And Employees Acting Under The Direction Thereof)

9800 Savage Road, Suite 6272

Fort George G. Meade, MD 20755-6000

**Defendant 4:**

Central Intelligence Agency (CIA) (Unknown Officers, Agents, and Employees Acting Under the Direction Thereof)

Central Intelligence Agency

Washington, D.C. 20505

**Defendant 5:**

Drug Enforcement Administration (DEA) (Unknown Officers, Agents, and Employees Acting Under the Direction Thereof)

600 Army Navy Drive

Arlington, VA 22202

**Defendant 6:**

Unknown California State Official Authorizing The Ongoing Use Of Directed Energy Technologies/Weapons Against Plaintiff At The California National Guard

**Defendant 7:**

Unknown Class Representative(s) of Defendant Class Actively Participating in the Harmful Use of Directed Energy Technologies/Weapons upon Plaintiff

Address to be determined

## 2. Jurisdiction

The gravamen of this complaint are grounds upon which Plaintiff is entitled to bring this civil action for harms done to Plaintiff and damages resulting therefrom arising under the Constitution and laws of the United States of America. This complaint finds federal questions jurisdiction in federal district court in the Central District of California, Southern Division, based upon deprivations of Plaintiff's constitutional rights under color of federal law, with the conduct of all federal and related State level actors inextricably intertwined, with the federal causes of action so significantly predominant to Plaintiff's claims that the conduct of the State level actors acting in concert with the coordinations/fabrications/orchestrations of the overarching federal conspiracy are federal issues which cannot thereby be separated simply because the actors claim to work within the State and/or local levels of government. The harms done and damages suffered by Plaintiff are matters of federal law with issues germane to the Court's considerations/deliberations which must be decided at the federal level as the issues require interpretation of and final decisions/holdings interpreting federal law. The named parties to the lawsuit as well as the presently unidentified Does, one (1) to ten (10), inclusive, have coordinated with and directed their activities targeting Plaintiff primarily to the State of California, most predominantly within Los Angeles County, while the intentional conduct also encompasses Riverside County, Orange County, San Bernardino County, and San Diego County. Given the gravamen of Plaintiff's Complaint is for the illegal/unconstitutional intentional use of directed energy technologies/weapons which are capable of being operated from control centers/points/locations physically located <u>both</u> within as well as outside of the State of California, those targeting Plaintiff with directed energy technologies/weapons

from any geographic point(s) physically located outside the State of California have and continue to intentionally direct their targeting and use of said technologies/weapons upon Plaintiff with full knowledge and with the full intent that the effects/affects upon Plaintiff be experienced by Plaintiff while Plaintiff is physically located within the State of California, most predominantly within Los Angeles County, while also encompassing Riverside County, Orange County, San Bernardino County, and San Diego County.

## 3. Venue

Plaintiff is domiciled in Los Angeles County California and the gravamen of this Complaint are for the acts directed at Plaintiff, predominantly occurring in and around Los Angeles County, California. Continuity of the overarching level of coordination within the government extended to acts/conduct coordinated with and directed against Plaintiff in Michigan, New York, New Mexico, and (upon returning after a brief three-plus (3+) year period in the foregoing locations, beginning in October 2016 through to the present time the ongoing/continuing acts/conduct directed against Plaintiff have (again) occurred predominantly within Los Angeles County, California. In the years prior to Plaintiff moving to Michigan for law school in January 2013, the acts directed at Plaintiff occurred primarily in Los Angeles County, California, where Plaintiff resided and was domiciled from 1996 through 2000, moving (briefly) during the year 2000 to San Diego, California, before returning to Los Angeles County from 2000 through 2013, when Plaintiff then left California to attend law school in Michigan, returning again to California in October 2016, where Plaintiff has remained since that time and is presently located. Each of the named Defendants as well as unknown officers, agents, and/or employees acting under the direction of the named Defendants and any DOES discovered to be acting in coordination with Defendants have carried out the vast majority of acts/conduct directed against Plaintiff in Los Angeles County, California.

## 4. Intra-district Assignment

Incorporating the foregoing, this lawsuit should be assigned to the Western Division of this Court because a substantial part of the acts, constituting the prima facie claim, occurred in and around Los Angeles County, California, located in the Western Division of the Central District of California.

## 5. Statement of Facts and Claims

### BRIEF SUMMARY OF CURRENT CLAIM

1.      Remote directed energy technologies/weapons are being (and have, for many years, been) used to control and manipulate Plaintiff's thoughts and actions, impairing and/or augmenting Plaintiff's cognitive abilities and mimicking volitional choice(s) by imbuing and/or neuromodulating Plaintiff's unadulterated thoughts using electrical brain stimulation techniques remotely administered using directed energy technologies/weapons.

2.      Use of the directed-energy mind/body control brain-computer interface technologies/weapons upon Plaintiff have been and continue to be coordinated with the tangible physical surroundings and tangible events occurring in Plaintiff's life, thereby creating a series of linked ongoing tangible physical environments that are coordinated using the remote administration/application of said directed-energy technologies/weapons upon Plaintiff and other individuals in those physical environments to create environments in which the parameters and the individuals therein are thereby synchronized with said technologies/weapons to fabricate/orchestrate entirely staged scenarios that simultaneously misrepresent Plaintiff's true persona, intellect, cognition, and volition while directly imbuing thoughts and controlling/regulating bodily and mental functions of Plaintiff, thereby fully depriving Plaintiff of protected fundamental (civil) rights, freedoms, and liberties, while continuously moving Plaintiff from one scenario to the next without ever breaking the control exerted over Plaintiff via the directed-energy mind/body control brain-computer interface technologies/weapons.

3.      The entire course of conduct (past and ongoing) and deliberate concealment of capabilities and use of said technologies/weapons upon Plaintiff domestically, within the United States, is evidence that the ongoing use of said technologies/weapons are an attempt to engineer the path of Plaintiff's entire (human) life and thereby fabricating, orchestrating, and creating an entirely artificial set of life experiences which, when taken together, thereby form a linear chain of tangible (but fabricated) experiences through which Plaintiff has been and continues being moved which (tangible experiences) those running said technologies/weapons then have attempted to string together to meld the mental and physical manipulations that are intended to form a substitute ('artificial') 'reality' for Plaintiff, that meaning attempting to substitute the fabricated/orchestrated set of conditions and experiences that those running said technologies/weapons fabricate/orchestrate for what would otherwise be Plaintiff's natural life, if Plaintiff was left unaffected by said technologies/weapons.

4.      Attempts to substitute the fabrications/orchestrations (created by those running said technologies/weapons) for Plaintiff's unadulterated (without the use of said technologies/weapons) 'reality'/life have been unsuccessful, which Plaintiff has recognized and continues to resist, as those (Defendants) running said technologies/weapons continue to engage in serious deprivations of Plaintiff's fundamental, civil, and (basic) human rights, as those running said technologies/weapons have and continue using said technologies/weapons to inflict pain, suffering, mental, emotional, and physical distress as well as bodily harms/injuries to Plaintiff.

5.      Plaintiff has been (and continues being) attacked by those running said technologies/weapons and severely limited in all areas of Plaintiff's life, personally and professionally, physically and mentally by those running said technologies/weapons as they to attempt to create leverage against Plaintiff, to

force/coerce Plaintiff into acceptance of the fabrications/orchestrations those running said technologies/weapons have attempted to create.

6.      The ongoing conduct of those running said technologies/weapons and Plaintiff's resistance thereto, have resulted in those running said technologies/weapons using the same to engage in conduct that has resulted in literal "torture" (as the term is defined under 18 U.S.C. §2340 and Cal. Penal Code §206) of Plaintiff, administered throughout the day-and-night, as Plaintiff attempts to live his life (i.e. work, gym, relationships) domestically, within the United States.

7.      The use of said technologies/weapons upon Plaintiff have been uninterrupted and continuous, to varying extents and at varying intensities, as Plaintiff has been physically located and living (at different times along the timeline of Plaintiff's life) in New York, California, Michigan, New Mexico, and all points in between as Plaintiff has driven between all of the aforementioned in his temporary relocations to each, with California being Plaintiff's domicile since approximately 1996.

8.      The gravamen of this Complaint is for the ongoing course-of-conduct harassment, stalking, complete deprivations of and intentional violations of Plaintiff's fundamental rights, civil rights, and (most basic) human rights, which are inherent in the very intentional concealment and use of said technologies/weapons, by those running said technologies/weapons, as well as for the tortious acts and resulting harms done to Plaintiff as a result of the ongoing use of said technologies/weapons to attempt to force/coerce Plaintiff to forgo seeking legal recourse against (Defendants) for their involvement in the same.

9.      Said technologies/weapons affect Plaintiff's mental processes by intercepting and neuromodulating (i.e. changing, augmenting, impairing, impeding, truncating, replacing, embellishing upon) Plaintiff's thoughts, thereby exerting direct control over Plaintiff's cognitive and volitional mental functions, all while (based upon the totality of the circumstances, evidence, information and belief) using the same

technologies/weapons to literally view what Plaintiff sees through Plaintiff's eyes as a function of the same interception of Plaintiff's brain signals, while simultaneously controlling Plaintiff's body via the same neuromodulation of Plaintiff's brain waves, the coordinated effects/affects of which fully deprive Plaintiff of the protections of U.S. Constitution, including the Amendments therein for which courts have previously granted relief under *Bivens* analysis, as well as a novel *Bivens* claim for serious violations of Plaintiff's First (1st) Amendment rights for which Congress has not acted but for which constitutional protections are imperative and necessary.

10.    Defendants coordinated and included Plaintiff's immediate family in the use of said technologies/weapons upon Plaintiff.

11.    Plaintiff's father (now purportedly deceased) was an Air Force Veteran who worked in a radar tower during the Vietnam War, made a career as a Computer Systems Engineer following the Vietnam War, and based upon information and belief served in the Air National Guard following service in Vietnam.

12.    Plaintiff's sister lived in Fort Meade, Maryland for many years, which is where the headquarters for the National Security Agency (NSA) is located. Based upon information and belief, Plaintiff believes Plaintiff's sister to have made a career for herself at the NSA, notably over the same time period during which Plaintiff has been subjected to ongoing use of the directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons to attempt to fabricate/orchestrate an entirely fake path, mainly one of detriment and harm, in Plaintiff's life.

13.    Plaintiff's maternal uncle is a United States Army veteran who served during the Vietnam War, whose current status with ongoing military/reserve operations is unknown to Plaintiff.

14.    Based upon evidence, information and belief, Plaintiff's paternal aunt worked for a federal intelligence agency.

15.    Based upon evidence, information and belief, Plaintiff's cousin is married to

an Air Force veteran, whose current status (active/inactive and/or reserve) is unknown to Plaintiff.

16.    Based upon evidence, information and belief, Plaintiff's family's connections to and work with(in) the government, notably the Department of Defense (DoD) and/or intelligence community domestically created a set of conditions in which Plaintiff's family members were told they were to keep the use of said technologies/weapons concealed (a secret) from Plaintiff, which facilitated the direct use of said technologies/weapons upon Plaintiff while providing a barrier of protection for those running said technologies/weapons upon Plaintiff, as Plaintiff's immediate family were thereby incorporated into the use of said technologies/weapons upon Plaintiff and would not raise issue with the use of said technologies/weapons upon Plaintiff, as Plaintiff's family members either intentionally, knowingly, and willfully participate(d) in the use of said technologies/weapons upon Plaintiff or Plaintiff's family members were led to believe a false set of conditions which led them to believe that there was/is some legitimate legal justification for the deprivation of Plaintiff's rights without affording Plaintiff protections of fundamental rights and civil rights.

17.    Plaintiff's family has remained out of contact with Plaintiff as those running said technologies/ weapons continue attacking Plaintiff with said technologies/weapons, as those running said technologies/weapons continue holding Plaintiff trapped within the ongoing use of said technologies/weapons coordinated with Plaintiff's tangible surroundings as those running said technologies/weapons attempt to force/coerce Plaintiff to accept the false/fabricated/orchestrated scenarios while literally attacking Plaintiff with the directed energy weapons capabilities of the same technologies/weapons to cause Plaintiff mental, physical, and emotional pain and suffering as Plaintiff attempts to live a day-to-day life of attending work, going to the gym, and sleeping, as all other activities (i.e. a relationship(s) with

COMPLAINT

intimate/romantic partner(s), marriage, children, recreation, even Plaintiff's ability to lift weights and engage in cardiovascular exercise are manipulated to negatively affect/effect and prevent Plaintiff from engaging in the same) are prevented and/or interfered with to destroy those aspects of Plaintiff's life and prevent Plaintiff from engaging in, experiencing, and/or enjoying such other activities/rights.

18.     Those running said technologies/weapons have actively attempted to provide legal cover for themselves by manipulating Plaintiff (who is a law school graduate), allowing Plaintiff to communicate and/or initiate some form of legal proceedings and/or correspondence(s) with federal, state, and local departments/agencies/entities but then using said technologies/weapons to literally prevent Plaintiff from timely pursuing the initial communications/notices Plaintiff communicated, thereby (apparently) attempting to avoid legal repercussions by asserting claims that statutes of limitations have expired, despite those running said technologies/weapons actually (based upon their very conduct/actions) equitably tolling the statutes of limitations, as those running said technologies/weapons use said technologies/weapons to (very literally) mentally incapacitate, impair, impede, and control Plaintiff to prevent Plaintiff from timely following up on all (previous) attempts Plaintiff has initiated to seek legal redress and court intervention in the ongoing conduct by Defendants (those running said technologies/weapons upon Plaintiff).

19.     Since those running said technologies/weapons revealed (during the month of December 2016 through the beginning of 2017) the capabilities, use of, and effects/affects the same have upon Plaintiff, Plaintiff has attempted to and has effectuated communications with several federal, state, and local government agencies/entities, each of which need to be coordinated with those running said technologies/weapons for the use of the same to persist unabated, in direct contravention to the United States Constitution, as it has against Plaintiff.

20.     Plaintiff's ability to follow-up on each prior communication with the several

COMPLAINT

federal, state, and local government agencies/entities has been interfered with and prevented by those running said technologies/weapons, preventing Plaintiff from timely follow-up immediately following the initial communication(s) made by Plaintiff.

21.    During the month of July 2017, after attempting to involve the local office(s) of the following Department(s) to no avail, as no one would even follow-up on Plaintiff's complaints to them, Plaintiff sent letters to the Federal Bureau of Investigations ("FBI"), the Los Angeles County Sheriff's Departments, the California Attorney General's Office, and others Plaintiff had reason to believe were directly involved with and/or complicit in the illegal/unconstitutional attacks with the directed energy technologies/weapons upon Plaintiff, noticing them of the complacency and/or non-responsiveness of the personnel within their departments/agencies, the seriousness of the attacks with the technologies/weapons upon Plaintiff, and requesting them to direct their personnel to cease-and-desist (if involved), thereby also placing each department/entity contacted on notice of the same - none of these parties responded to Plaintiff's correspondence and the attacks on Plaintiff persisted.

22.    On-or-about March 19, 2022, Plaintiff mailed letters to three California State Court judges: Judge Barbara Scheper, Judge Cynthia Ulfig, and Judge Daniel Feldstern, each of which had roles in the fabrications/orchestrations of those running said technologies/weapons fabricating/orchestrating scenarios in Plaintiff's life during the year 2006 and 2007, at times when Plaintiff was fully aware that Plaintiff was being falsely framed in fabricated/orchestrated scenarios but did not know of and/or suspect the intentional existence and use of said technologies/weapons on U.S. citizens/civilians at that time - none of these parties responded to Plaintiff's correspondence.

23.    On-or-about March 11, 2018, Plaintiff mailed letters notifying each agency/entity    contacted    of    the    illegal/unconstitutional    use    of    said

technologies/weapons, further ordering that they instruct personnel working within their department(s)/agency/ies to immediately cease and desist from the ongoing use and/or coordination/complicity in the use of said technologies/weapons upon Plaintiff. Those letters were sent to the following: General David L. Goldfein, Air Force Chief of Staff; General Mark A. Milley, Army Chief of Staff; General Joseph L. Lengyel, Chief, National Guard Bureau; General Robert B. Neller, Commandant of the Marine Corps; Patrick M. Shanahan, Deputy Secretary of Defense; Dr. Heather Wilson, Secretary of the Air Force; Dr. Mark Esper, Secretary of the Army; General Joseph N. Dunford, Jr., Chairman of the Joint Chiefs of Staff; General James N. Mattis, Secretary of Defense; General Paul J. Selva, Vice Chairman of the Joint Chiefs of Staff; Admiral John M. Richardson, Chief of Naval Operations; Richard Spencer, Secretary of the Navy; John C. Rood, Under Secretary of Defense (Policy) - none of these parties responded to Plaintiff's correspondence and the attacks on Plaintiff persisted.

24.     On-or-about January 21, 2019, Plaintiff emailed correspondence to the office of (then) Senator of California, Kamala Harris, the subject of which stated "Complaint/request for assistance to Kamala Harris," the content of which disclosed the illegal/unconstitutional attacks on Plaintiff with said directed/energy mind/body control brain-computer interface technologies/weapons.

25.     On-or-about January 30, 2019, an email from Kamala D. Harris was sent to Plaintiff, expounding upon Senator Harris's acts to defend civil rights during her time as Attorney General of California, further expounding upon (then) Senator Harris's acknowledgement of "mounting threats to our constitutional rights" but addressing nothing of the actual context to Plaintiff's initial email to (then) Senator Harris, rendering (then) Senator Harris's response to Plaintiff completely non-responsive to the actual harms being done to Plaintiff - the attacks on Plaintiff persisted.

26.     On-or-about January 24, 2022, Plaintiff mailed certified letters to twenty-four

13

(24) federal and state departments/agencies Plaintiff had reason to believe to be involved in the direct use of said technologies/weapons and/or to have oversight over those operating said technologies/weapons domestically, in which Plaintiff requested each department/agency of the illegal/unconstitutional use of said directed energy technologies/weapons, further requesting that they cease and desist in the use of the same on Plaintiff and noticing each that Plaintiff would file a lawsuit(s) for the same if the conduct persisted. The letters were mailed to the following: Gavin Newsom, Governor of the State of California; Rob Bonta, Attorney General for the State of California; Michelle Lujan, Governor of the State of New Mexico; Gretchen Whitmer, Governor of the State of Michigan; Hector Balderas, Attorney for the State of New Mexico; Dana Nessel, Attorney General for the State of Michigan; David Baldwin, Adjutant General for the State of California; Kenneth Nava, Adjutant General for the State of New Mexico; Paul Rogers, Adjutant General for the State of Michigan; Alex Villanueva, (then) Los Angeles County Sheriff; Michael Moore, Los Angeles City Chief of Police; Merrick Garland, U.S. Attorney General; Caroline Krauss, General Counsel at the Department of Defense; Ariane Cerlenko, General Counsel at the National Security Agency (NSA); Jason Jones, General Counsel at the Federal Bureau of Investigations (FBI); Courtney Ellwood, General Counsel at the Central Intelligence Agency (CIA); Chief Justice Tani G. Cantil-Sakauye, in her role with the Judicial Council of California; Vanessa Lynne Holton, General Counsel for the State Bar of California; Edward Hendrie, Chief Counsel for the Drug Enforcement Agency (DEA); Craig Smith, General Counsel for the Air Force; Carri Ricci, General Counsel for the Department of the Army; Sean Coffey, General Counsel for the Department of the Navy; Jonathan Meyer, General Counsel for the U.S. Department of Homeland Security, none of which sent a response to Plaintiff's correspondence - none of these parties responded to Plaintiff's correspondence and the attacks on Plaintiff persisted.

27.    On-or-about June 15, 2022, Plaintiff sent Federal Tort Claims Act ("FTCA")

notices (including approved SF-95 forms) for recovery of damages for both the negligent and intentional harms done to Plaintiff by those running said technologies/weapons upon Plaintiff, as well as notices under the related state tort claims act laws for each of the states in which harm has been done to Plaintiff by those running said technologies/weapons. Those notices were sent to the following: Gavin Newsom, Governor of the State of California; Rob Bonta, Attorney General for the State of California; Michelle Lujan, Governor of the State of New Mexico; Gretchen Whitmer, Governor of the State of Michigan; Hector Balderas, Attorney for the State of New Mexico; Dana Nessel, Attorney General for the State of Michigan; David Baldwin, Adjutant General for the State of California; Kenneth Nava, Adjutant General for the State of New Mexico; Paul Rogers, Adjutant General for the State of Michigan; Alex Villanueva, (then) Los Angeles County Sheriff; Michael Moore, Los Angeles City Chief of Police; Merrick Garland, U.S. Attorney General; Caroline Krauss, General Counsel at the Department of Defense; Ariane Cerlenko, General Counsel at the National Security Agency (NSA); Jason Jones, General Counsel at the Federal Bureau of Investigations (FBI); Courtney Ellwood, General Counsel at the Central Intelligence Agency (CIA); Chief Justice Tani G. Cantil-Sakauye, in her role with the Judicial Council of California; Vanessa Lynne Holton, General Counsel for the State Bar of California; Edward Hendrie, Chief Counsel for the Drug Enforcement Agency (DEA); Craig Smith, General Counsel for the Air Force; Carri Ricci, General Counsel for the Department of the Army; Sean Coffey, General Counsel for the Department of the Navy; Jonathan Meyer, General Counsel for the U.S. Department of Homeland Security; Richard C. Visek, Office of the Legal Adviser of the U.S. Department of State; Kathy Hochul, Governor of the State of New York; Letitia James, Attorney General for the State of New York; Major General Raymond Shields, Adjutant General for the State of New York; the clerk for the Los Angeles County Board of Supervisors; City Clerk for the City of Los Angeles; Keith Manes, Clerk or

Authorized Agent for the County Board of Commissioners of Lea County, New Mexico; Barb Byrum, Clerk or Authorized Agent for the County Board of Commissioners of Ingham County, Michigan; Lawrence Kestenbaum, Clerk or Authorized Agent for the County Board of Commissioners of Washtenaw County; Chief August Fons, City of Hobbs, New Mexico Police Department; Jan Fletcher, City Clerk for the City of Hobbs, NM; the Risk Management Division for the State of New Mexico; the Department of General Services for the State of California; Clerks of the Courts of Claims of the third and fourth districts of Michigan; the Judicial Tenure Commission in the State of Michigan; Diane Luce, District Attorney for Lea County, New Mexico; Government Claims Program in West Sacramento, California.

28.     In response to the notices sent by Plaintiff to those in the preceding paragraph, Plaintiff received the following responses: (1) On-or-about October 19, 2022, the Department of the Air Force issued a letter denying Plaintiff's tort claim; (2) August 30, 2022, Plaintiff received a notice from the U.S. Department of Justice, asserting that the U.S. Department of Justice would be "handling" Plaintiff's claim. On-or-about September 12, 2022, Plaintiff mailed a certified correspondence to the Civil Division, Torts Branch Paralegal who signed off on the August 30, 2022, letter to Plaintiff, in which Plaintiff requested contact details to communicate directly with the Civil Division to resolve Plaintiff's tort claims with the Department, to which Plaintiff has received no response; (3) Some days following the date on which the letter is dated, that being June 21, 2022, Plaintiff received a notice of denial of Plaintiff's tort claim from the State Bar of California; (4) some days after the date on which the letter is dated, that being June 30, 2022, Plaintiff received a denial of Plaintiff's tort claim from the City of Los Angeles; (5) some days following the date on which the letter is dated, that being August 02, 2022, Plaintiff received a notice of denial of Plaintiff's tort claim from the Federal Bureau of Investigation; (6) some days following the date

COMPLAINT

on which the letter is dated, that being July 07, 2022, Plaintiff received a notice of denial of Plaintiff's tort claim from the Department of the Army; (7) some days following the dates on each of the subsequent/additional letters sent from the Department of Army, those dated on September 08, 2022, and September 13, 2022, Plaintiff received notices of denial of Plaintiff's tort claim (again) from the Department of Army; (8) some days after the date on which the correspondence is dated, that being June 21, 2022, Plaintiff received acknowledgement that Plaintiff's tort claim submitted to the Court of Claims for the State of Michigan had been received and assigned a tracking number of 22-200126-o, the actual district (Third or Fourth) of the Court responding is not included on the response; (9) some days after the date on which the correspondence is dated, that being June 24, 2022, Plaintiff received acknowledgement that Plaintiff's tort claim submitted to the Court of Claims for the State of Michigan had been received and assigned a tracking number of 22-200133-o, the actual district (Third or Fourth) of the Court responding is not included on the response; (10) some days after the date on which the postage stamp on the envelope is dated, that being September 13, 2022, Plaintiff received a letter with a salutation to a "Ms. Patterson," denying Plaintiff's tort claim that was submitted to the Drug Enforcement Agency, asserting that Plaintiff had not submitted an SF-95, which is incorrect – this was not an effective denial of Plaintiff's claim as letter is addressed to a Ms. Patterson and does not properly state the facts of Plaintiff's SF-95 submission, as Plaintiff properly submitted an SF-95 with Plaintiff's Federal Tort Claims Act notice; (11) some days after the date on which the correspondence is dated, that being June 27, 2022, Plaintiff received a general denial, based upon the timing (purportedly but erroneously concluded to be 'untimely') of Plaintiff's tort claim(s), for the Los Angeles County Board of Supervisors. On-or-about July 18, 2022, Plaintiff mailed an additional correspondence to the Los Angeles County Board of Supervisors, expressing the deliberate interference with Plaintiff discovering the

COMPLAINT

source of the harms done to Plaintiff as well as the equitable tolling required as a result of said interference. Some days after the date on which the correspondence is dated, that being August 01, 2022, Plaintiff (again) received a general denial, based on the timing of Plaintiff's tort claim(s), from the Los Angeles County Board of Supervisors. (12) Some days after the date on which the correspondence is dated, that being July 14, 2022, Plaintiff received a denial of Plaintiff's tort claims, from the Department of Army on behalf of the State of Michigan National Guard, citing case law which had no relevance to the claim that Plaintiff submitted and further attempting to require an exact timeline and exact dates when the facts of Plaintiff's claim(s) clearly allege the entire ongoing course-of-conduct (harassment/stalking) has been an uninterrupted sequence of twenty-four (24) hour-a-day, seven (7) day-a-week attacks on Plaintiff, as well as literal control over Plaintiff's mind and body by those intentionally preventing Plaintiff from pursuing legal recourse and preventing Plaintiff from recovering the legal damages Plaintiff is entitled to. The letter further erroneously states that Plaintiff's claim was "defective." On August 01, 2022, Plaintiff emailed the Army personnel who drafted the July 14, 2022, letter to Plaintiff. In that email, Plaintiff reasserted the justice obstructing tactics being used by those running said technologies/weapons, the fraudulent concealment those running said technologies/weapons are guilty of, and Plaintiff provided the actual United States Code, Code of Federal regulations, as well as case law supporting that Plaintiff's claim was not defective and met the requirements for proper filing of a SF-95 notice of a Federal Tort Claim. Plaintiff has received no further correspondence back from the individual with the Department of Army who corresponded on behalf of the Michigan National Guard – also note (6) and (7) in this paragraph, as the Department of Army had already denied Plaintiff's tort claim(s) at the time of communications (12) in this paragraph.

29.    The conduct directed at Plaintiff has been deliberate and ongoing, requiring

coordination at a level of government (over many years), which is not limited to the borders of one state, which spans the entire United States, requires participation of those working for/with government at all levels (federal, state, and local), relies upon infrastructure and personnel controlled by and/or working for/with federal, state, and local government operating under a coordinated effort to deliberately conceal the source of said technologies/weapons while individuals who know of the existence, capabilities, and use of said technologies/weapons are placed in the tangible physical surroundings/scenarios with Plaintiff to attempt to effectuate the furtherance of the project, that being the manipulations/orchestrations of Plaintiff's actual life coordinated with the illegal/unconstitutional use of said mind/body control brain-computer interface technologies/weapons upon Plaintiff.

30.    In the entirety of the totality of the facts and circumstances through which Plaintiff has been and continues being moved, as well as the direct inferences therefrom, Defendants named to (this) Plaintiff's Complaint are the departments/entities directly involved in the ongoing course of conduct directed at Plaintiff, coordinated to intentionally deprive Plaintiff of constitutional rights without affording constitutional protections, as well as engaging in the ongoing tortious harms to Plaintiff caused by individuals working for/with Defendants named hereto.

31.    Defendants' continuous and ongoing use of said directed-energy technologies/weapons to control the thoughts and/or actions of any un-consenting U.S. citizen (including Plaintiff) on U.S. soil, with the intent being to neuromodulate, substitute, imbue, and/or replace the thoughts in individuals' minds and/or manipulate the physical conditions and functions of individuals' bodies, with the intent being to fabricate/orchestrate artificial paths/realties in the lives of those individuals (including Plaintiff), does not fall under any protected national security interest, nor do the ongoing use of the same technologies/weapons constitute a quick, instantaneous, and/or limited use of the same to address an exigent circumstance for a brief period

until proper legal channels can be engaged to address whatever purported legal justification those running said technologies/weapons claim as their legal 'necessity' for their use of the same to deprive Plaintiff of Plaintiff's constitutional rights and to attack Plaintiff - the ongoing deprivations of Plaintiff's rights are unwarranted and unacceptable given the exact nature of the use and function of said technologies/weapons upon Plaintiff.

32.     Defendants and/or contractors working therefor have operated said technologies/weapons to control Plaintiff, who, until those running said technologies/weapons deliberately revealed the existence and their use of the same to Plaintiff at the end of 2016, beginning of 2017, Plaintiff had no knowledge of the existence, capabilities, and deliberate use of said technologies/weapons by the U.S. government domestically upon U.S. citizens.

33.     While the full capabilities, existence and use of said technologies/weapons by the United States government on the populations of the United States domestically, are now and have been for several decades concealed from Plaintiff and the general public (U.S. citizens living on U.S. soil), as use of the same technologies/weapons are not discussed in the mainstream media, their use being such an egregious violation of constitutional protections that it shocks the conscience of unsuspecting U.S. citizens that the same are being secretly used by Defendants and other federal and state government entities, on U.S. citizens (including Plaintiff), on U.S. soil, in direct contravention to the U.S. Constitution as a form of unspoken government manipulation, control, and literally a system of government run by unelected, administrative government personnel, the system being one which is not ratified by the individual states and of which the general population has no knowledge.

34.     Based upon evidence, information, belief, the facts, and the totality of the circumstances the federal government defendants are those exerting control using said technologies/weapons over Plaintiff as a means of continuity, attempting to frame an

COMPLAINT

entire overlay/persona unto Plaintiff via the use of said technologies/weapons.

35.     Persons working for/within those Defendants' departments/agencies attempt to string together the past individual links of the ongoing chain of fabricated/orchestrated total immersions scenarios they have created for Plaintiff and are thereby attempting to use those past fabrications/orchestrations as the predicate upon which they have based the current chain in their ongoing chain, thereby attempting to make the current link of fabrications/orchestrations appear to simply be a continuation thereof.

36.     Plaintiff continues to resist the overwhelming force exerted by those running said technologies/weapons, as the prior links in the chain have not been believable to Plaintiff, they have caused serious/irreparable harm/detriment to Plaintiff, and Plaintiff continues to resist because the experience has not felt and does not feel like a natural set of conditions.

37.     As Plaintiff has resisted, those running said technologies/weapons have attacked and continue to attack Plaintiff mentally and physically, resulting in literal acts of 'torture' of Plaintiff via the directed energy technologies/weapons as that term ('torture') is defined under both federal and state law.

38.     As the federal level defendants work to attempt to frame the overlay/persona unto Plaintiff via the use of said technologies/weapons in furtherance of creating links in the chain of total immersion scenarios, those federal level Defendants' control over Plaintiff results in Plaintiff being controlled within individual States (i.e. California, New Mexico, New York, Michigan, and all points between) thereby manifesting the creation of a fabricated/orchestrated persona of Plaintiff at the State and local levels of government, within which State and local level government offices and entities are relied upon as the tangible physical loci in which the control exerted by the federal government Defendants manifest into a false but tangible storyline in Plaintiff's life. The states are in coordination and participation therewith, thereby creating an

COMPLAINT

inextricably intertwined ongoing conspiracy between federal, state, and local government actors all done (from the federal level down) to fabricate/orchestrate an entirely false persona and false path through Plaintiff's life.

39.    State and local level government defendants intentionally, knowingly, and willfully participate in the illegal/unconstitutional ongoing use of said technologies/weapons, thereby intentionally, knowingly, and willfully violating the fundamental, civil, and (basic) human rights of U.S. citizens (including Plaintiff) and further prevent, hinder, and/or delay the ability of U.S. citizens (including Plaintiff) to obtain legal relief from the same in legitimate courts of the United States. Related state law causes of action sounding in tort and conspiracy have been filed in a separate state court lawsuit against parties acting in concert with the actions alleged herein but for which relief is sought for wholly (aside from 42 U.S.C. §1985, asserted there as well as within this Complaint) State law causes of action resulting from state and local level actors acting in concert with the federal and state actors over which this court has jurisdiction for the claims Plaintiff asserts herein.

40.    The capabilities, use of, and source(s) of the use of the directed energy mind/body control brain-computer interface technologies/weapons was (for many years) and continues to be intentionally, knowingly, and willfully concealed by Defendants for the purpose of defrauding Plaintiff (and others who are unknowingly being manipulated/effected/affected by the same technologies/weapons).

41.    Said technologies/weapons have been used to create an entirely false persona of Plaintiff, an entire false path through Plaintiff's life, false medical diagnoses to attempt to further obfuscate the reality that conditions Plaintiff was experiencing were entirely the result of the illegal/unconstitutional and concealed use of said technologies/weapons upon Plaintiff and not (in fact) the actual medical conditions which Plaintiff was led to believe that Plaintiff was suffering from.

42.    Upon those running said technologies/weapons upon Plaintiff revealing the

capabilities of and the fact that they were (in fact) running said technologies/weapons upon Plaintiff, the (past) conditions and experiences that were caused to Plaintiff by the use of said technologies/weapons were immediately exposed as being the result of intentional, knowing, and willful acts of those running said technologies/weapons upon Plaintiff – fraudulent concealment and subsequent revelation of the source of the harms done to Plaintiff drew all past statutes of limitations to present at the beginning of 2017.

43.    Since the time when defendants, those running said technologies/weapons, revealed the existence and use of the same upon Plaintiff at the end of 2016, beginning of 2017, those same defendants have actively impaired and/or completely prevented Plaintiff from initiating and seeing through all of the steps necessary to file and see through the entire legal process any means of legal recourse against the defendants. The defendants have engaged in twenty-four (24) hour-a-day, seven (7)-days a week, active interference with Plaintiff's cognitive and volitional functions throughout that time to prevent Plaintiff from seeing through the legal action, while those same defendants have engaged in continuous, twenty-four (24) hour-a-day, seven (7)-days a week stalking and harassment of Plaintiff while attempting to force/coerce Plaintiff to not pursue legal recourse, all while those running said technologies/weapons are doing so to intentionally attempt to cover up their current and past fabrications of evidence, thereby equitably tolling (through their ongoing course of conduct directed at to literally use said technologies/weapons to incapacitate Plaintiff) the statutes of limitations for the previously fraudulently concealed causes of action for harms done to Plaintiff over many years with the same technologies/weapons.

44.    Past and current orchestrations/fabrications of Plaintiff's life, created by those running said technologies/weapons, have and continue to cause Plaintiff to suffer extreme harm, defamation in Plaintiff's personal and professional reputation, lost/missed education and work experiences, lost relationships, physical bodily injury,

mental anguish, pain and suffering.

45.    Prior to the use of said technologies/weapons being revealed to Plaintiff by those operating the same working for/with Defendants, Plaintiff sensed a 'disconnect' between what Plaintiff was experiencing in Plaintiff's life and what Plaintiff noticed but was unable to understand due to intentional, fraudulent concealment of the capabilities and use of said technologies/weapons domestically, within the United States, by those running the same.

46.    Plaintiff left Los Angeles County, California to attend law school in Michigan from 2013 through 2016, during which said technologies/weapons continued being used to attempt to frame/fabricate/orchestrate the false narratives in Plaintiff's life.

47.    Upon Plaintiff returning to California during the months of October 2016 through January 2017, individuals at the controls of said technologies/weapons deliberately, intentionally, and harshly revealed the capabilities and use of said technologies/weapons upon Plaintiff, at which time the 'disconnect' Plaintiff had recognized but was unable to understand for many years immediately fell into place, along with multiple years of prior manipulations via said technologies/weapons.

48.    Upon revealing the capabilities and use of said technologies/weapons upon Plaintiff, those running said technologies/weapons made clear they intended that Plaintiff was to accept all prior orchestrations/fabrications, many of which did tremendous harm to Plaintiff physically as well as personally and professionally.

49.    The identities of those running said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons on Plaintiff, working for/with Defendants remains deliberately concealed from Plaintiff while the attacks upon Plaintiff using the same persist.

50.    The response by those running said technologies/weapons has been a full scale, ongoing, twenty-four (24) hour-a-day, seven (7)-day-a-week, ongoing series of attacks using the directed energy technologies/weapons to inflict intentional and

ongoing harm and suffering unto Plaintiff. The attacks have been ongoing since 2016.

51.     Those running said technologies/weapons intentionally impair Plaintiff's ability to think, thereby intentionally harming Plaintiff in all areas of life, personal and professional.

52.     Those running said technologies/weapons have and continue to impair/inhibit Plaintiff's ability to cognitively reason and to act upon Plaintiff's own volition, thereby (for literally years) intentionally preventing Plaintiff from legitimately pursuing legal and equitable redress for the same from the courts.

53.     Those running said technologies/weapons use said technologies/weapons to manipulate and affect countless functions of Plaintiff's body and mind, including but not limited to, impairing Plaintiff's ability to think, speak, act, and/or otherwise controlling Plaintiff's mind and body to fabricate communications (i.e. text messages, emails, even spoken language) which appear to be from Plaintiff but which are 100% fabricated/orchestrated via the use of the directed-energy mind/body control brain-computer interface technologies/weapons.

54.     The ongoing acts by those running said technologies/weapons have been intentional and deliberate attempts to discredit, defame, and falsely frame Plaintiff, thereby both intentionally and negligently inflicting emotional distress unto Plaintiff, all as cover stories for the illegal/unconstitutional use of said technologies/weapons upon Plaintiff over many years.

55.     Those running said technologies/weapons have allowed Plaintiff to file and/or communicate about the illegal/unconstitutional use of said technologies/weapons upon Plaintiff while simultaneously then preventing Plaintiff from taking any further action(s) to address the ongoing illegal/unconstitutional use of said technologies/weapons upon Plaintiff. Those running said technologies/weapons have effectuated this outcome by (very literally) targeting Plaintiff's head/mind and turning the directed energy technologies/weapons up to the point when Plaintiff can literally

25

not function cognitively and/or make volitional choices to take action in one way or another. Thereby, Defendants have attempted to keep Plaintiff confined within the parameters of the current link in the chain of total immersion scenarios to prevent themselves from answering for the legal consequences of their actions, all while simultaneously, relentlessly attacking Plaintiff with the microwave weapons-style use of said technologies/weapons to criminally stalk, criminally harass, and (very literally) 'torture' (as the term is defined under both federal and state law) Plaintiff as he attempts to go about his life.

56.     Defendants awaken Plaintiff nightly by the individuals at the controls of said technologies/weapons are on the overnight 'shift'/'crew.' When awakened, Plaintiff is subjected to nothing less than full-scale microwave weapons attacks as Plaintiff lays in his bed, in his apartment.

57.     Plaintiff is further subjected to illegal/unconstitutional psychological operations ("psyops") that are germane to the use of said technologies/weapons and have been over many years, that being those running said technologies/weapons use the directed-energy mind/body control brain-computer interface technologies/weapons to imbue thoughts to Plaintiff's mind/head while simultaneously using remote electrical brain stimulation to intentionally inflict distressing thoughts, feelings, and emotions unto Plaintiff as an artificial stream of thoughts are projected by those running said technologies/weapons unto Plaintiff's mind, coordinated with associated physical conditions/responses in Plaintiff's body administered via the same technologies/weapons.

58.     During the month of June 2022, Plaintiff filed Federal Tort Claims Act ("FTCA") notices with each named Defendant to this lawsuit, as well as several other federal departments and agencies whose coordination and/or complicity in the ongoing use of said technologies/weapons are required, without which those running/operating said technologies/weapons would be stopped and held to answer

legally for the illegal/unconstitutional use of said technologies/weapons upon Plaintiff as well as the domestic civilian population.

59.     During the month of June 2022, Plaintiff filed federal, state and local government tort claims act notices with federal, state and local level government agencies/entites as well as notifying each of the same of Plaintiff's related *Bivens* claims against federal actors, Plaintiff's federal 42 U.S.C. §1983 claims against state actors, and Plaintiff's 42 U.S.C. §1985 claims, are all inextricably intertwined, each dependent on the others.

60.     FTCA notices to federal agencies document injuries (temporary and/or permanent) directly resulting from the targeting of specific body parts and physiological processes of Plaintiff by those working with Defendants to attack/affect the body parts with said technologies/weapons, thereby causing the associated harmful effects/affects upon each body part and process complained of by Plaintiff within those notices. A copy of one such notice is attached hereto as Exhibit "A".

61.     Body parts reported in Plaintiff's FTCA notices include Plaintiff's brain/mind, head (everything other than the brain/mind), teeth and gums, left shoulder (permanent shoulder injury), chest/lungs, breathing/respiratory, heartrate, abdomen including effects/affects on internal organs, genitalia, legs, knees, ankles/feet, entire body muscloskeletal system, as well as skin conditions (including those staging tangible scenarios using rodents and insects released in Plaintiff's residence as a form of harassment/stalking).

62.     Prior to disclosure of the capabilities of said technologies/weapons, Defendants used said technologies/weapons to create symptoms mimicking legitimate medical conditions for which Plaintiff would then see a doctor(s), being prescribed medication(s) for the actual medical conditions that Defendants mimicked via the remote targeting and manipulations of Plaintiff's mind and body via said technologies/weapons.

63.    Defendants used said technologies/weapons to induce false neurological symptoms, using the mind/body control brain-computer interface technologies/weapons to mimic symptoms of Post-Traumatic Stress Disorder ("PTSD"), during the years 2007 through 2016, anxiety, depression, problems with memory, cognition, volition, for which doctors prescribed medication. Defendants continue using said technologies/weapons to actively engage and interfere with Plaintiff's cognition and volitional abilities, which is the very means by which Defendants have prevented Plaintiff from filing the lawsuit and pursuing it prior to now.

64.    Defendants used said technologies/weapons to induce a false condition, using the mind/body control brain-computer interface technologies/weapons to mimic symptoms, of Attention-Deficit Hyperactivity Disorder ("ADHD"), during the years 2013 through 2016, for which doctors both diagnosed the mimicked symptoms as such and prescribed Plaintiff medications for the conditions.

65.    Defendants continue directing remote manipulations/attacks of Plaintiff's mental and bodily functions as a means of attempting to force/coerce Plaintiff into acceptance of the fabrications/orchestrations those running said technologies/weapons attempted to previously fabricate in Plaintiff's life, as Defendants continue trying to establish those prior fabrications/orchestrations as a 'reality' for Plaintiff, as those prior fabrications/orchestrations are the predicate for the artificial reality (fake overlay) Defendants attempted to assign unto Plaintiff's life which, when revealed for being fake overlays/orchestrations/fabrications, those Defendants who have participated in running said technologies/weapons face serious legal consequences.

66.    Defendants deliberately concealed the use of said technologies/weapons from discovery by Plaintiff for many years while simultaneously attempting to make Plaintiff believe that the effects/affects of said mind/body control brain-computer

interface technologies/weapons upon him were natural physiological conditions Plaintiff was experiencing.

67.    Since the time when Defendants revealed (at least in part) the existence of, capabilities of, and active use of said technologies/weapons upon Plaintiff at the end of 2016/beginning of 2017, the exact identities of those running said technologies/weapons still being concealed from Plaintiff at the time when Defendants revealed the same, Defendants have engaged in twenty-four (24) hour-a-day, seven (7)-day-a-week, intentional interference with every aspect of Plaintiff's life, including cognitive and volitional functions, to actively prevent Plaintiff from filing and seeing through legal action against those running said technologies/weapons.

68.    Prior to revealing (at least in part) the existence of, capabilities of, and active use of said technologies/weapons upon Plaintiff at the end of 2016/beginning of 2017, Defendants concealed the use of said technologies/weapons over the greater part of Plaintiff's life, thereby attempting to fabricate/orchestrate linked scenarios in the ongoing chain of fabrications/orchestrations those running said technologies/weapons attempted to form into an entirely fake overly of fabricated/orchestrated experiences unto Plaintiff's life.

69.    Since revealing (at least in part) the existence of, capabilities of, and active use of said technologies/weapons upon Plaintiff at the end of 2016/beginning of 2017, Defendants have continued attempting to cover up their use of said technologies/weapons while attempting to force/coerce Plaintiff to forgo legal action against them. Plaintiff has resisted Defendants and endured their attacks with said technologies/weapons, which devolved into literal 'torture' of Plaintiff, as those Defendants running said technologies/weapons have been unsuccessful in gaining Plaintiff's allegiance in Defendant's illegal/unconstitutional use of the same on Plaintiff (and others in the U.S. civilian population, on U.S. soil), and Defendants

have thereby resorted to full-scale threats (via said technologies/weapons) on Plaintiff's life, career, rights, liberties, and basic well-being.

70.    Defendants attempted to portray the use of the directed energy mind/body control brain-computer interface technologies/weapons as a 'spiritual' and/or 'godly' (natural) force which Plaintiff could only have relief from the harmful effects/affects thereof if Plaintiff focused on meditation, prayer, accepted the force (said technologies/weapons) and did not resist their use as they were (and continue to be) used to intentionally violate Plaintiff's fundamental, civil, and (basic) human rights, Defendants further asserting that the harmful effects/affects of said technologies/weapons on Plaintiff and Plaintiff's life were only occurring as the result of some moral/personal defect/shortcoming, thereby violating the free exercise and establishment clauses of the <u>First (1st) Amendment</u> and (notably) the harmful effects/affects are/were occurring to Plaintiff because individuals working with Defendants are/were operating (concealed) directed energy technologies/weapons to cause the harmful effects/affects.

71.    Defendants very literally control Plaintiff into speaking, writing, communicating statements, and/or taking actions which are not Plaintiff's genuine thoughts and/or conduct but rather fabricated/orchestrated via literal control over Plaintiff using mind/body control brain-computer interface technologies/weapons to attempt to frame Plaintiff in false light – all of which clearly violate <u>1st Amendment</u> freedom of speech and freedom of expression protections.

72.    Defendants very literally control the tangible scenarios (i.e. school, work, gym, etc.) through which Plaintiff is moved, further controlling Plaintiff within those environments to prevent and/or create interactions with those who Defendants coordinate for Plaintiff to interact with, further Defendants have attempted to force/coerce Plaintiff into attending and participating in community 'groups,' bridging the federal use of said technologies/weapons into the State and local level,

in violation of the 1st Amendment right to freedom of association.

73.     Defendants remotely access and manipulate Plaintiff's electronics (i.e. computers, cellular phone, computer files, etc.), in violation of the 4th Amendment, both to access Plaintiff's private information as well as to manipulate the devices and files for the purpose of ongoing harassment/stalking of Plaintiff done in the form of (what is known as) "gaslighting," wherein the manipulations of Plaintiff's mind and body are coordinated with Plaintiff's tangible surroundings, the manipulations of electronics therein are used to attempt make Plaintiff feel/believe that files that are replaced (containing mistakes, misstatements, and/or other manipulations done by those running said technologies/weapons that adjust Plaintiff's documents from their original form (in which Plaintiff originally creates them)) to a form which contains many errors, designed to make Plaintiff believe that he has created the errors himself and is experiencing mental problems in that Plaintiff does not recall creating the errors, but they are there in tangible form in the documents Plaintiff reopens. The same is done in coordination with Plaintiff's work environment, thereby drawing Plaintiff's professional qualifications, aptitude, and abilities into questions, thereby resulting in countless deleterious effects upon Plaintiff's ability to advance professionally and upon Plaintiff's professional reputation

74.     Defendants remotely view everything that Plaintiff does through Plaintiff's own eyes via the remote neuromodulation brain-computer interface technologies/weapons, thereby rendering Plaintiff with a full-time group of observers of everything Plaintiff does in life, leaving Plaintiff without any privacy, creating a massive affront to 4th Amendment protections.

75.     Defendants literally intercept, read, modulate, and imbue Plaintiff's thoughts via the remote neuromodulation brain-computer interface technologies/weapons, invading privacy (likely) beyond anything the drafters of the 4th Amendment ever actually conceived but inherent in which are the very same underlying principles of

illegal/unconstitutional unreasonable searches and seizures the drafters of the 4<u>th</u> <u>Amendment</u> intended to curb in its creation.

76.      Defendants have fabricated/orchestrated countless aspersions over many years in Plaintiff's life and have attempted to pull those aspersions together in Defendants' illegal/unconstitutional psychological operations ("psyops") Defendants continue running on Plaintiff, imbuing thoughts unto Plaintiff's psyche which (again, as in Defendants' attempts to play 'God' and/or some spiritual force with said technologies/weapons) Defendants attempt to make Plaintiff believe that Plaintiff *deserves* the attacks with said technologies/weapons as some form of punishment, the accusations for which Plaintiff has never been formally presented with, nor given an opportunity to confront Plaintiff's (purported) accusers, nor afforded due process and a right to put on witnesses on Plaintiff's (own) behalf, thereby effectuating a set of psychological conditions imparting ongoing "punishment" for acts Plaintiff has not been formally charged with and (based upon the assertions made by those running said technologies/weapons) are aspersions which were wholly fabricated/orchestrated initially for the very same effect/affect Defendants attempt to use them now, as leverage to force/coerce Plaintiff not to pursue legal recourse for the harms done by Defendant to Plaintiff in the past, instead attempting to turn Defendants' past illegal/unconstitutional use said technologies/weapons to turn past fabrications/orchestrations into weapons against Plaintiff presently – all of which amounts to cruel and unusual punishment under the 8<u>th Amendment</u>.

77.      Defendants have involved both state and federal actors in the ongoing course of conduct scheme to deprive Plaintiff of constitutional rights, all of which has been done in direct contravention to 5<u>th Amendment</u> and 14<u>th Amendment</u> due process protections, the effects/affects being to hold Plaintiff back from advancing in Plaintiff's life, both personally and professionally, while intentionally, knowingly, and willfully depriving Plaintiff of enjoyment of civil and fundamental rights, in part

---

for the intended effect/affect and in part to attempt to force/coerce Plaintiff into not pursuing legal action against those running the same, all being fabricated/orchestrated to make Plaintiff feel "disparately impacted" in the ongoing attacks upon Plaintiff with said technologies/weapons.

78.     Physical control over the mind is an area of biological, physiological, psychological interest that has been researched by the scientific community for many years, published in various works, including evaluations of electrical stimulation of every area of the brain and brain mapping to determine the effects/affects of artificially applied stimulation and the resulting activation of groups of neurons triggered by such stimulations.

79.     Publication of books and several U.S. patents are publicly available records providing the basis for the existence, capabilities, and effects/affects of electrical brain stimulation, Mind/Body Control (neuromodulation) Brain-Computer Interface Technologies/Weapons, as well as directed energy mechanisms for remotely administering/targeting individuals with the same.

80.     Patents for "microwave hearing" in which microwave frequencies are remotely transmitted and targeted at a specific area of the human mind capable of interpreting the electrical signals remotely targeted into that region of the mind has existed for many years, one such patent for the same being U.S. Patent Number 4,858,612, Inventor Philip L. Stocklin, Filed on December 19, 1983, which explains (in part) how a person can speak into a microphone and the signal is transmitted directly into the auditory cortex of the targeted individual via a directed microwave beam, enabling the targeted person to hear what the person speaking into the microphone is saying without needing external apparatus on the targeted individual's ears to demodulate the beam, rather the brain of the targeted individual does the demodulation and interpretation.

81.     A patent titled "Apparatus and Method for Remotely Monitoring and Altering

33

Brain Waves," U.S. Patent Number 3,951,134, was filed on August 05, 1974, by inventor Robert Malech, explains (in part) the process and equipment for a brain-computer interface device that remotely entrains the frequency of an individual's mind with that being propagated by the computer interface, thereby modulating the signals of the human target with the signals propagated by the computer, thereby creating a brain-computer interface, which creates a link and frequency/ies which can be manipulated by the operator of the computer to directly effect/affect, manipulate, and control the mind of the targeted individual.

82.    A patent titled "Target Tracking System and Method for Jitter Reduction Suitable for Directed Energy Systems," U.S. Patent Number U.S. 2012/0104282 A1, filed on May 29, 2009, by inventor James R. Gallivan, explains (in part) how directed energy technologies/weapons can be locked on to individual (human) targets, track the human target(s), while administering other wavelengths/frequencies (such as a microwave, milimeter wave, radio frequency, etc.) to that tracked target once the tracking system is locked onto the human target.

83.    Dr. Jose M.R. Delgado, M.D., published a book, copyrighted in 1969, titled "Physical Control of the Mind, Towards a Psychocivilized Society," in which Doctor Delgado discusses the effects/affects of electrical stimulation of various distinct regions of the brains of both animals and humans who were implanted with electrodes into their brains (the studies obviously occurred before the book was published in 1969) and the result Dr. Delgado and other scientists discovered when electrical impulses were delivered in different intensities to those specific areas of the brains of those living animals and humans, noting the effects/affects upon them and the complete control over them such externally induced stimulation created.

84.    The scientific and technological bases for the control being exerted over Plaintiff, which are the gravamen of (this) Plaintiff's Complaint have existed for several decades in one form or another and are being used presently upon Plaintiff

and other non-consenting U.S. citizens on U.S. soil, while litigation for the effects/affects of the same in U.S. courts is being largely, deliberately prevented.

85.    Defendants' continue using directed energy brain-computer interface technologies/weapons with capabilities that Defendants would have the general population believe are outside the realm of the possibilities with current technological capabilities, while the same technologies/weapons are the very source of harms done to Plaintiff, as well as (based upon evidence, information, and belief) the widespread use of the same on the civilian population of the United States with intentional sequestering of said technologies/weapons despite the direct control of persons minds and bodies, as they live their day-to-day lives, notably not as a matter of  true "necessity" and/or in furtherance of a national security interest but actually a course of conduct requiring deliberate, intentional, and ongoing violations, by Defendants, of Plaintiff's and every individual upon whom said technologies/weapons are being actively used, as Defendants are running the technologies/weapons domestically on Plaintiff and other non-consenting civilians on U.S. soil.

86.    Defendants have taken technologies/weapons under the control of agencies that are simultaneously tasked with protecting the national security interests in the United States, and Defendants have used a capability of those technologies/weapons for wholly unconstitutional purposes, directing their use on Plaintiff and the civilian population of the United States domestically to not only frame social and political narratives but to actively augment/impair and fully control the lives those individuals actually experience and lead, thereby attempting to not just shape social and political narratives but to actually control which individuals participate in which roles within society, culture, and government within the United States, thereby stripping away true individuality for the purpose of fabricating/orchestrating an artificial reality, inherent in which is a full deprivation of the constitutional rights of those upon whom the technologies/weapons are used – it is an incredibly dangerous use of said

technologies/weapons in complete disregard for necessary fundamental and civil rights protections, the long-term costs of which dramatically outweigh any purported benefits.

87.    Said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons are capable of control over Plaintiff to the extent of causing Plaintiff to move, say, think, feel, and/or engage in actions/conduct over which Plaintiff has no control, and Plaintiff cannot control/stop the influence of the directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons when they are being administered with sufficient force to effectuate the foregoing.

88.    Said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons have been used to manipulate Plaintiff's mind and body to compel Plaintiff to compose and send text messages, emails, and/or to communicate verbally messages/communications that were entirely fabricated and imbued into Plaintiff's psyche via the directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons. Thereby, those running said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons have attempted to create false narratives, including creating communications sent by Plaintiff, from Plaintiff's emails address(es), text messages from Plaintiff's cellular phone, and/or posting content on websites, thereby creating tangible evidence that is 100% fake/fabricated (not representative of who Plaintiff truly is), effectively creating an entirely false persona of Plaintiff.

89.    Defendants' fabrications/orchestrations/manipulations using said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons on Plaintiff are done in a way that intentionally attempts to intimidate Plaintiff.

90.    Defendants continuously impart (via the very same communication/manipulation abilities of said technologies/weapons) that Defendants have used the same directed energy Mind/Body Control Brain-Computer Interface

Technologies/Weapons to cause serious harms to Plaintiff in the past, the implication being direct threats to Plaintiff that those running said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons will engage in further serious harms along the same lines as the past harms they have caused to Plaintiff if Plaintiff does not capitulate to and accept the illegal/unconstitutional use of said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons upon Plaintiff.

91.    Defendants' use of threats directed at Plaintiff are combined with Defendants' active deprivations of Plaintiff's fundamental rights, in which Defendants actively prevent Plaintiff from progressing in and/or enjoying every area of Plaintiff's life, including but not limited to professional endeavors, personal relationships, recreational activities, essentially deprivation of all of Plaintiff's civil liberties and fundamental rights without due process in an ongoing course of conduct by Defendants to cover for the illegal/unconstitutional use of said directed energy technologies/weapons on Plaintiff, not only presently but extending back over the vast majority of Plaintiff's life, done with the purpose to attempt to fabricate/orchestrate/engineer an entire path through Plaintiff's life, including assigning an artificial persona to Plaintiff, a fabricated persona that would comport with the fabricated/orchestrated scenarios but which is not Plaintiff's genuine persona.

92.    Plaintiff recognizes the vast divergence between Plaintiff's genuine persona and that which those running said technologies/weapons have attempted to fabricate/orchestrate/engineer, which thereby is one means by which Defendants impart ongoing strife, inducing constant and ongoing mental and emotional pain, suffering and anguish to Plaintiff, again as a further means and method Defendants employ to intentionally attempt to force/coerce Plaintiff into acceptance of Defendants' failed attempt to fabricate/orchestrate/engineer the artificial path of

Plaintiff's life and persona of Plaintiff.

93.     Defendants attempt to embed Defendants' wrongful use of said technologies/weapons upon Plaintiff into tangible scenarios and events that are carried out at the level of and within the physical surroundings in which Plaintiff functions, those being the towns, cities, states, school environments, work environments, and social environments in which Plaintiff is moved through and functions in, thereby Defendants rely upon the constitutional rights of the States' sovereign immunity while thereby attempting to confound those who are attacked (as is Plaintiff) in their attempts to address and/or remedy the illegal/unconstitutional course of action which are the gravamen of (this) Plaintiff's Complaint, as the fabrications/orchestrations engineered at the federal level are incorporated into the State, local, and community level with individuals who are not all (if any are) 'government actors' in the legal sense of that term, which is one method by which Defendants attempt to confound those upon whom said technologies/weapons are used, as concealment of the source of the use of said technologies/weapons with the end result being manifest and reinforced in the very lives individuals, including Plaintiff, are moved through (and believe they are leading), is designed to both confound the individuals upon whom said technologies/weapons are used as well as to attempt to create jurisdictional issues (legally) for those individuals, including Plaintiff, upon whom said technologies/weapons are being illegally/unconstitutionally used.

94.     Defendants at the level of State and local governments, as well as those Defendants who are not government actors but who are U.S. citizens and/or civilians are thereby directly made a function of Defendants' fabrications/orchestrations/manipulations.

95.     Some State and local governments and individuals work in concert with the federal orchestrations/fabrications to frame false social and/or political narratives at

COMPLAINT

the state and/or local levels, (again) as a method by which Defendants attempt to both confound the individuals upon whom said technologies/weapons are used as well as to attempt to create jurisdictional issues (legally) for those individuals, including Plaintiff, upon whom said technologies/weapons are being illegally/unconstitutionally used.

96.     Notably, a California State Court action was filed by California attorneys, on behalf of Plaintiff, for complete destruction of Plaintiff's personal property, which was all inside the room in which Plaintiff was living at the time of a building fire that occurred on February 07, 2020, as well as personal injury sustained by Plaintiff, as Plaintiff attempted flee the building as the entire building was engulfed in smoke and flames.

97.     Defendants, via the use of said technologies/weapons coordinated with Plaintiff's tangible physical surroundings, that Plaintiff was living in the building at the time of said fire, said lawsuit being one which Plaintiff repeatedly told the California attorneys who filed it that it could not be properly filed in California State Court, as the gravamen of (this) Plaintiff's instant Complaint before this court are/were the actual legal bases for any civil action Plaintiff had at the time of the building fire, while Plaintiff was simultaneously (very literally, via the direct control of Plaintiff's mind, thoughts, and actions which are the gravamen of (this) Plaintiff's instant Complaint before this court) prevented from seeking recourse for himself and likewise literally prevented from finding any attorney(s) who would file the lawsuit which presents the totality of the circumstances, including directly addressing the illegal/unconstitutional use of said technologies/weapons, in a lawsuit surrounding the February 07, 2020, building fire.

98.     Plaintiff is seeking a stay on those California State Court proceedings in the California Superior Court Case that was filed as Scott York v Emmarex, LLC, et al, Case Number 22STCV04279, which Plaintiff (at this time) will seek to amend (if not

fully prevented by Defendants, as has been the case until this time) the pleadings in that California State Court matter to incorporate the gravamen of (this) Plaintiff's Complaint into that State Court action.

99.    Defendants' use of said technologies/weapons to exercise the manipulations, control, and influence which have resulted in ongoing criminal attacks by Defendants on Plaintiff, giving Defendants undue/unconstitutional influence over the country, which is used by Defendants as a means of controlling those working for government, including federal government workers (including Congress), State and local government workers, as well as those State level entities/agencies that would otherwise have autonomy in their conduct (i.e. State Court judiciaries and State attorneys) but for the control being exercised by those individuals Defendants place at the controls of said technologies/weapons, thereby placing Defendants at the controls of said technologies/weapons in an illegal/unconstitutional position of (complete) control over the minds, bodies, and lives of Plaintiff, and every other individual in the United States.

100.    Following the building fire on February 07, 2020, Plaintiff relocated to a short-term apartment located in San Pedro, California.

101.    A property directly across the street from Plaintiff's short-term apartment set up loudspeakers and hosted parties with individuals who became extremely rowdy, setting off M-80 style explosives which would set off car alarms in the surrounding neighborhood, smashing glass bottles, and carrying on loudly into overnight hours – it bears repeating, Plaintiff has continued being heavily controlled via the directed energy technologies weapons since before the time of the fire through the time of Plaintiff filing this instant Complaint with this court.

102.    Several of the cars regularly parked around and near the home where the parties were held had stickers displaying military branches (i.e. Marines, Air Force, etc.).

103.    Plaintiff called the local police department several times asking for the police to come by to ask the neighbors to turn the music down as it was in violation of municipal codes, but police never responded.

104.    The neighbors repeated their conduct with the loud music, explosives, breaking bottles, several times prompting Plaintiff to draft letters with relevant municipal codes and place them in each of the mailboxes at the property where the parties were held/hosted.

105.    The neighbors persisted, having additional parties with complete (seemingly deliberate) irreverence towards the neighborhood.

106.    On January 31, 2021, Plaintiff felt himself controlled but could not prevent the exertion of the control over Plaintiff as he walked down to the street and yelled across the street, asking for the neighbors to turn the music down.

107.    One individual came across the street, as Plaintiff was recording the scene with Plaintiff's cell phone, grabbed Plaintiff's cell phone from Plaintiff's hands, and threw Plaintiff to the ground as Plaintiff bent down to pick up the cell phone – Plaintiff felt himself controlled by said technologies/weapons as Plaintiff could not react/respond.

108.    Plaintiff had a picture of the individual who attacked Plaintiff, and Plaintiff filed a police report that night, as Plaintiff's knee was injured when Plaintiff was thrown to the ground.

109.    Plaintiff understood the incident to be another in the ongoing series of course of conduct harassment/stalking scenarios being fabricated/orchestrated by those running said technologies/weapons, as the entire situation is not how Plaintiff knows he would have initially handled and subsequently responded to the situation.

110.    Upon contacting Los Angeles Police Department Detective Jacinto Zavala, who Plaintiff learned was investigating the attack on Plaintiff, Plaintiff fully disclosed the illegal/unconstitutional use of said technologies/weapons upon Plaintiff, learned

COMPLAINT

the Detective Zavala had a military background as well and (when Plaintiff asked about said technologies/weapons) Detective Zavala would not say that he did not know of them, implying that he was aware of said technologies/weapons and their use by government in Southern California.

111.   Plaintiff sent several emails, photos, videos, supporting Plaintiff's side of the matter to Detective Zavala to no avail, as Plaintiff wanted to learn the identity of the attacker for purposes of a civil lawsuit as well as to investigate (this) Plaintiff's instant federal cause of action with this court.

112.   Detective Zavala never located the attacker, even with a close-up photograph Plaintiff provided to Detective Zavala of the individual.

113.   Detective Zavala stopped communicating with Plaintiff far short of anything that seemed to be a reasonable effort by Detective Zavala to actually investigate the matter.

114.   Plaintiff emailed Detective Zavala's supervisor and received no response.

115.   The attack on Plaintiff on January 31, 2021, was entirely staged by those running said technologies/weapons, and the Los Angeles Police Department Detective assigned to it intentionally disregarded it.

116.   Plaintiff has resisted the force/coercion of those running said technologies/weapons which has resulted in those running the same increasing the level of harms directed at Plaintiff, (apparently) as attempts to force/coerce Plaintiff to capitulate to and align with the illegal/unconstitutional conduct/acts of those running said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons, ultimately resulting in those running said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons inflicting ongoing/perpetual harms to Plaintiff which has resulted in both serious bodily injury to Plaintiff, as well as mimicking serious bodily injury to Plaintiff, as well as intentionally depriving Plaintiff of protected constitutional right, liberties, and equal

protection of the laws, furthering resulting in ongoing acts that amount to literal 'torture' of Plaintiff, as that term is defined in both federal and California State laws, via the illegal/unconstitutional attacks upon Plaintiff with directed/energy technologies/weapons.

117. Plaintiff was not provided with notice of, nor did Plaintiff participate in any formal hearing(s) during which the use of said technologies/weapons upon Plaintiff were either ordered (the constitutionality of which would automatically be in question as well) and/or agreed upon by Plaintiff.

118. Plaintiff has never consented to the use of said technologies/weapons upon Plaintiff.

119. Plaintiff's location has at all times relevant to this lawsuit been known to those individuals running said technologies/weapons.

120. Plaintiff has at all times relevant to this lawsuit been and remains in the jurisdiction of the fully functioning United States Federal and State Court systems.

121. At no time during the entirety of Plaintiff's life, during times when said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons have been used upon Plaintiff, has martial law been declared by the United State government.

122. Based upon all available information and belief, Plaintiff understands said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons to be controlled by a computer and/or by direct transmission of the thoughts/responses/actions of individuals working for Defendants and/or individuals working for Defendants programming narratives into a computer which are translated therein into a form the human brain can read/interpret and respond to, being transmitted into Plaintiff's psyche via a device that reads that individual's brain activity and transmits it to Plaintiff's psyche.

123. Individuals working for Defendants who run said technologies/weapons hide

in a sequestered location, out of the purview of Plaintiff and the general public, with the link between Plaintiff and Defendants and/or Defendant's computer(s) being established by a variety of different wavelength technologies/weapons including directed energy, radar, microwave, radio-frequency, and varying wavelengths, all of which rely upon government infrastructure to maintain continuity of their use across the various States in which Plaintiff has lived, including California, New Mexico, Michigan, New York, and all points in between.

124.    Those running said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons have attempted and continue attempting to trap Plaintiff within Plaintiff's own life, depriving Plaintiff of fundamental rights, asserting (via thoughts imbued to Plaintiff via use of said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons) that those running said technologies/weapons will further harm and attempt to discredit and defame Plaintiff, going so far as to engage in acts amounting to 'torture' (as that term is defined under federal and state law) Plaintiff as Plaintiff attempts to engage in activities of daily life (i.e. while attempting to eat, sleep, exercise, work (interfering with Plaintiff's ability to think and make decisions at work), preventing Plaintiff from being able to prepare for and pass the California State Bar Examination (Plaintiff is literally prevented from being able to read bar review materials), preventing Plaintiff from meeting a woman/women for a personal relationship(s) and affecting Plaintiff's ability to interact with others via deliberate attacks on Plaintiff's mind), the implication being that if Plaintiff capitulates to and acts in concert with Defendants' illegal/unconstitutional use of said technologies/weapons then Plaintiff will be given the opportunity to enjoy all of the foregoing and a life in which Plaintiff is not actively attacked twenty (24) hours-a-day, seven (7) days-a-week, at least for so long as Plaintiff continues to acquiesce to and go along with the illegal/unconstitutional use of said technologies/weapons, which (thereby, as stated previously in (this) Plaintiff's

Complaint) requires Plaintiff to accept all prior fabrications/orchestrations while simultaneously (thereby) consenting to all future fabrications/orchestrations, which are in complete contravention to Plaintiff's (most basic) human, civil, and fundamental rights. Capitulation by Plaintiff simply does not make sense and would be a decision that would make Plaintiff a co-conspirator in Defendants' illegal/unconstitutional use of said mind/body control brain-computer interface technologies/weapons upon the civilian population domestically within the United States.

### 6. Demand for Relief

### FIRST CAUSE OF ACTION
**BIVENS RELIEF FOR VIOLATIONS OF PLAINTIFF'S RIGHTS UNDER THE 4TH AMENDMENT, 8TH AMENDMENT, 5TH AND 14TH AMENDMENTS, AND 1ST AMENDMENT**
**(Against Defendants United States of America; United States Department of Defense (Unknown Officers, Agents, and Employees Acting Under the Direction Thereof); National Security Agency (NSA) (Unknown Officers, Agents, and Employees Acting Under the Direction Thereof); Central Intelligence Agency (CIA) (Unknown Officers, Agents, and Employees Acting Under the Direction Thereof); and Drug Enforcement Administration (DEA) (Unknown Officers, Agents, and Employees Acting Under the Direction Thereof); and DOES 1 to 10, inclusive)**

125.    While they co-exist, one clearly being separable from the other and fully capable of being simultaneously litigate before this court, the *Bivens* and 42 U.S.C. §1983 causes of action predominate (this) Plaintiff's lawsuit while the Federal Tort Claims Act ("FTCA") are the result of the failed use of said technologies/weapons literally degenerating and devolving into outright, ongoing attacks upon Plaintiff, all in attempts to force/coerce and intimidate Plaintiff into capitulating to and going along with the illegal/unconstitutional conduct of those running said technologies/weapons on the U.S. civilian population domestically.

126.    Remote directed energy technologies/weapons are being (and have, for many years, been) used to control and manipulate Plaintiff's thoughts and actions,

---

impairing and/or augmenting Plaintiff's cognitive abilities and mimicking volitional choice(s) by imbuing and/or neuromodulating Plaintiff's unadulterated thoughts using electrical brain stimulation techniques remotely administered using directed energy technologies/weapons.

127.    Use of the directed-energy mind/body control brain-computer interface technologies/weapons upon Plaintiff have been and continue to be coordinated with the tangible physical surroundings and tangible events occurring in Plaintiff's life, thereby creating a series of linked ongoing tangible physical environments that are coordinated using the remote administration/application of said directed-energy technologies/weapons upon Plaintiff and other individuals in those physical environments to create environments in which the parameters and the individuals therein are thereby synchronized with said technologies/weapons to fabricate/orchestrate entirely staged scenarios that simultaneously misrepresent Plaintiff's true persona, intellect, cognition, and volition while imbuing thoughts and controlling/regulating bodily and mental functions of Plaintiff, thereby fully depriving Plaintiff of protected fundamental (civil) rights, freedoms, and liberties, while continuously moving Plaintiff from one scenario to the next without ever breaking the control exerted over Plaintiff via the directed-energy mind/body control brain-computer interface technologies/weapons.

128.    Attempts to substitute the fabrications/orchestrations (created by those running said technologies/weapons) for Plaintiff's unadulterated (without the use of said technologies/weapons) 'reality'/life have been unsuccessful.

129.    Defendants initially attempted to portray the use of the directed energy mind/body control brain-computer interface technologies/weapons upon Plaintiff as a 'spiritual' and/or 'godly' (natural) force which Plaintiff could only have relief from the harmful effects/affects thereof if Plaintiff focused on meditation, prayer, accepted the force (said technologies/weapons) and did not resist their use,

46

Defendants further asserting that the harmful effects/affects of said technologies/weapons on Plaintiff and Plaintiff's life were only the result of some moral/personal defect/shortcoming, thereby violating the free exercise and establishment clauses of the First (1st) Amendment of the United States Constitution.

130.    Defendants very literally control Plaintiff into thinking, speaking, writing, communicating statements, and/or taking actions towards others which are not Plaintiff's genuine thoughts, actions, and/or conduct but rather fabricated/orchestrated via literal control over Plaintiff using mind/body control brain-computer interface technologies/weapons to attempt to frame Plaintiff in false light – all of which clearly violate freedom of speech and freedom of expression, again in deliberate and intentional violation of the 1st Amendment of the United States Constitution.

131.    Defendants very literally control the tangible scenarios (i.e. school, work, gym, etc.) through which Plaintiff is moved, further controlling Plaintiff within those environments to prevent and/or create interactions with those other individuals Defendants coordinate with to participate in the illegal/unconstitutional use of said technologies/weapons upon Plaintiff, thereby causing Plaintiff to interact with those individuals, and Defendants have (further) attempted to force/coerce Plaintiff into attending and participating in community 'groups,' deliberately attempting to fully obfuscate and confuse jurisdictional issues with the Courts by bridging the federal use of said technologies/weapons into the tangible environments of the State and local level of governments and communities, again in violation of the 1st Amendment of the United States notably intentionally, directly interfering with and manipulating Plaintiff's (as well as other individuals') freedom of associations.

132.    Defendants remotely access and manipulate Plaintiff's electronics (i.e.

47

computers, cellular phone, computer files, etc.), in violation of the 4th Amendment of the United states of America, both to access Plaintiff's private information as well as to manipulate the devices and files for the purpose of ongoing harassment/stalking of Plaintiff done in the form of (what is known as) "gaslighting," wherein the manipulations of Plaintiff's mind and body are coordinated with Plaintiff's tangible surroundings, the manipulations of electronics therein are used to attempt make Plaintiff feel/believe that files that are replaced (containing mistakes, misstatements, and/or other manipulations done by those running said technologies/weapons that adjust Plaintiff's documents from their original form (in which Plaintiff originally creates them)) to a form which contains many errors, designed to make Plaintiff believe that he has created the errors himself and is experiencing mental problems in that Plaintiff does not recall creating the errors, but they are there in tangible form in the documents Plaintiff creates. The same is done in coordination with Plaintiff's work environment, thereby drawing Plaintiff's professional qualifications, aptitude, and abilities into questions, thereby resulting in countless deleterious effects upon Plaintiff's ability to advance professionally and upon Plaintiff's professional reputation. These manipulations are not done for any legitimate 'security' interest but rather for the deliberate purpose of criminally stalking, criminally harassing, and running illegal/unconstitutional psychological operations ("psyops") on Plaintiff as Plaintiff goes about his day-to-day life, all of which deliberately invades Plaintiff's legal rights and violates the 4th Amendment of the United States Constitution.

133.     Defendants remotely view everything that Plaintiff does through Plaintiff's own eyes via the remote neuromodulation brain-computer interface technologies/weapons, thereby rendering Plaintiff with a full-time group of observers of everything Plaintiff does in life, leaving Plaintiff without any privacy, all of which deliberately invades Plaintiff's legal rights and violates the 4th

COMPLAINT

Amendment of the United States Constitution to an extent the drafters of the 4th Amendment of the United States Constitution could never have imagined at the time they were drafting the Amendment, but the Amendment applies to the present conduct just as much as it does to any other "persons, houses, papers, and effects."

134.    Defendants literally intercept, read, modulate, and imbue Plaintiff's thoughts via the remote neuromodulation brain-computer interface technologies/weapons, invading privacy (likely) beyond anything the drafters of the 4th Amendment of the United States Constitution ever actually conceived but inherent in which are the very same underlying principles of illegal/unconstitutional unreasonable searches and seizures the drafters of the 4th Amendment of the United States Constitution intended to curb in its creation.

135.    Defendants have fabricated/orchestrated countless aspersions over many years in Plaintiff's life and have attempted to pull those aspersions together in Defendants' illegal/unconstitutional psychological operations ("psyops") Defendants continue running on Plaintiff, imbuing thoughts unto Plaintiff's psyche which (again, as in Defendants' attempts to play 'God' and/or some spiritual force with said technologies/weapons) Defendants attempt to make Plaintiff believe that Plaintiff *deserves* the attacks with said technologies/weapons as some form of punishment, the accusations for which Plaintiff has never been formally presented with, nor given an opportunity to confront Plaintiff's (purported) accusers, nor afforded due process and a right to put on witnesses on Plaintiff's (own) behalf, thereby effectuating a set of psychological conditions imparting ongoing "punishment" (by Defendants, administered to Plaintiff) for acts Plaintiff has not received formal notice of, has not been formally charged with, and (based upon the assertions made by those running said technologies/weapons) are aspersions which were wholly fabricated/orchestrated initially for the very same effect/affect Defendants attempt to use them now, as leverage to force/coerce Plaintiff not to

pursue legal recourse for the harms done by Defendant to Plaintiff in the past, instead attempting to turn Defendants' past illegal/unconstitutional use said technologies/weapons to turn past fabrications/orchestrations into weapons against Plaintiff presently. Those working for Defendants, running said technologies/weapons upon Plaintiff have engaged in ongoing acts (attempts to force/coerce Plaintiff) amounting to "torture" (as that term is defined under both federal and state law) – all of which amounts to cruel and unusual punishment in violation of the 8th Amendment of the United States Constitution.

136.    Defendants have involved both state and federal actors in the ongoing course of conduct scheme to deprive Plaintiff of constitutional rights, all of which has been done in direct contravention to 5th Amendment of the United States Constitution and 14th Amendment of the United States Constitution due process protections, the effects/affects being to hold Plaintiff back from advancing in Plaintiff's life, both personally and professionally, while intentionally, knowingly, and willfully depriving Plaintiff of enjoyment of civil and fundamental rights, in part for the intended effect/affect and in part to attempt to force/coerce Plaintiff into not pursuing legal action against those running the same, all being fabricated/orchestrated to make Plaintiff feel "disparately impacted" and held in conditions to deliberately make Plaintiff feel discriminated again, in the staged ongoing attacks/scenarios being carried out upon Plaintiff with said technologies/weapons. The fabrications/orchestrations of those running said scenarios is deliberately intended to make Plaintiff feel that his rights are being violated and that there is no recourse for Plaintiff to seek – clearly, the entire set of conditions, deliberately depriving Plaintiff of due process and committing an ongoing series of crimes against Plaintiff are done to make Plaintiff feel 'disparately impacted,' in violation of the 5th and 14th Amendments of the United States Constitution.

COMPLAINT

137.    Plaintiff has been (and continues being) attacked by those running said technologies/weapons and severely limited in all areas of Plaintiff's life, personally and professionally, physically and mentally by those running said technologies/weapons as they to attempt to create leverage against Plaintiff, to force/coerce Plaintiff into acceptance of the fabrications/orchestrations those running said technologies/weapons have attempted to create while those running said technologies/weapons attempt through their use of force to prevent, hinder, and/or delay the execution of the actual laws of the United States (which is language expressly stated in 18 U.S.C. 2384 "Seditious Conspiracy").

138.    The ongoing conduct of those running said technologies/weapons and Plaintiff's resistance thereto, have resulted in those running said technologies/weapons using the same to engage in conduct that has resulted in literal "torture" (as the term is defined under 18 U.S.C. §2340 and Cal. Penal Code §206) of Plaintiff, administered throughout the day-and-night, as Plaintiff attempts to live his life (i.e. work, gym, relationships) domestically, within the United States.

139.    Said technologies/weapons affect Plaintiff's mental processes by intercepting and neuromodulating (i.e. changing, augmenting, impairing, impeding, truncating, replacing, embellishing upon) Plaintiff's thoughts, thereby exerting direct control over Plaintiff's cognitive and volitional mental functions, all while (based upon the totality of the circumstances, evidence, information and belief) using the same technologies/weapons to literally view what Plaintiff sees through Plaintiff's eyes as a function of the same interception of Plaintiff's brain signals, while simultaneously controlling Plaintiff's body via the same neuromodulation of Plaintiff's brain waves, the coordinated effects/affects of which fully deprive Plaintiff of the protections of U.S. Constitution, including the Amendments therein for which courts have previously granted relief under *Bivens* analysis for violations of Plaintiffs' protected rights under the 4th Amendment, 5th and 14th Amendments,

8th Amendment, as well as a novel *Bivens* claim for serious violations of Plaintiff's First Amendment rights for which Congress has not acted but for which constitutional protections are necessary.

140. Defendants' continuous and ongoing use of said directed-energy technologies/weapons to control the thoughts and/or actions of any un-consenting U.S. citizen (including Plaintiff) on U.S. soil, with the intent being to neuromodulate, substitute/imbue/replace the thoughts in their minds and/or manipulate the physical conditions and functions of their bodies, with the intent being to fabricate/orchestrate artificial paths/realties in the lives of those individuals (including Plaintiff), does not fall under any protected national security interest, nor do the ongoing use of the same technologies/weapons constitute a quick, instantaneous, and/or limited use of the same to address an exigent circumstance for a brief period until proper legal channels can be engaged to address whatever purported legal justification those running said technologies/weapons claim as their legal necessity for their use of the same to deprive Plaintiff of Plaintiff's constitutional rights and to attack Plaintiff - the ongoing deprivations of Plaintiff's rights are unwarranted and unacceptable given the exact nature of the use and function of said technologies/weapons upon Plaintiff.

141. Based upon evidence, information, belief, the facts, and the totality of the circumstances the federal government defendants are those exerting control using said technologies/weapons over Plaintiff as a means of continuity, attempting to frame an entire overlay/persona unto Plaintiff via the use of said technologies/weapons, as persons working for/within those defendants' departments/agencies attempt to string together the past individual links of the ongoing chain of fabricated/orchestrated total immersions scenarios they have created for Plaintiff and are thereby attempting to use those past fabrications/orchestrations as the predicate upon which they have based the current

52

link in their ongoing chain, thereby attempting to make the current link of fabrications/orchestrations appear to simply be a continuation thereof.

142.    State and local level government defendants intentionally, knowingly, and willfully participate in the illegal/unconstitutional ongoing use of said technologies/weapons, thereby intentionally, knowingly, and willfully violating the fundamental, civil, and (basic) human rights of U.S. citizens (including Plaintiff) and further prevent, hinder, and/or delay the ability of U.S. citizens (including Plaintiff) of relief from the same in legitimate courts of the United States.

143.    Those running said technologies/weapons use said technologies/weapons to manipulate and affect countless functions of Plaintiff's body and mind, including but not limited to, impairing Plaintiff's ability to think, speak, act, and/or otherwise controlling Plaintiff's mind and body to fabricate communications (i.e. text messages, emails, even spoken language) which appear to be from Plaintiff but which are 100% fabricated/orchestrated via the use of the directed-energy mind/body control brain-computer interface technologies/weapons.

144.    The ongoing acts by those running said technologies/weapons have been intentional and deliberate attempts to discredit, defame, and falsely frame Plaintiff, thereby both intentionally and negligently inflicting emotional distress unto Plaintiff, all as cover stories for the illegal/unconstitutional use of said technologies/weapons upon Plaintiff over many years.

145.    Those running said technologies/weapons have allowed Plaintiff to file and/or communicate about the illegal/unconstitutional use of said technologies/weapons upon Plaintiff while simultaneously then preventing Plaintiff from taking any further action(s) to address the ongoing illegal/unconstitutional use of said technologies/weapons upon Plaintiff. Those running said technologies/weapons have effectuated this outcome by (very literally) targeting Plaintiff's head/mind

COMPLAINT

and turning the directed energy technologies/weapons up to the point when Plaintiff can literally not function cognitively and/or make volitional choices to take action in one way or another. Thereby, Defendants have attempted to keep Plaintiff confined within the parameters of the current link in the chain of total immersion scenarios to prevent themselves from answering for the legal consequences of their actions, all while simultaneously, relentlessly attacking Plaintiff with the microwave weapons-style use of said technologies/weapons to criminally stalk, criminally harass, and (very literally) 'torture' (as the term is defined under both federal and state law) Plaintiff as he attempts to go about his life.

146.    Defendants' continue using directed energy brain-computer interface technologies/weapons with capabilities that Defendants would have the general population believe are outside the realm of the possibilities with current technological capabilities, while the same technologies/weapons are the very source of harms done to Plaintiff, as well as (based upon evidence, information, and belief) the widespread use of the same on the civilian population of the United States with intentional sequestering of said technologies/weapons despite the direct control of persons minds and bodies, as they live their day-to-day lives, notably not as a matter of true "necessity" and/or in furtherance of a national security interest but actually a course of conduct requiring deliberate, intentional, and ongoing violations, by Defendants, of Plaintiff's and every individual upon whom said technologies/weapons are being actively used, as Defendants are running the technologies/weapons domestically on Plaintiff and other non-consenting civilians on U.S. soil.

147.    Defendants' use of threats directed at Plaintiff are combined with Defendants' active deprivations of Plaintiff's fundamental rights, in which Defendants actively prevent Plaintiff from progressing in and/or enjoying every area of Plaintiff's life,

including but not limited to professional endeavors, personal relationships, recreational activities, essentially deprivation of all of Plaintiff's civil liberties and fundamental rights without due process in an ongoing course of conduct by Defendants to cover for the illegal/unconstitutional use of said directed energy technologies/weapons on Plaintiff, not only presently but extending back over the vast majority of Plaintiff's life, done with the purpose to attempt to fabricate/orchestrate/engineer an entire path through Plaintiff's life, including assigning an artificial persona to Plaintiff, a fabricated persona that would comport with the fabricated/orchestrated scenarios but which is not Plaintiff's genuine persona.

148.    Defendants attempt to embed Defendants' wrongful use of said technologies/weapons upon Plaintiff into tangible scenarios and events that are carried out at the level of and within the physical surroundings in which Plaintiff functions, those being the towns, cities, states, school environments, work environments, and social environments in which Plaintiff is moved through and functions in, thereby Defendants rely upon the constitutional rights of the States' sovereign immunity while thereby attempting to confound those who are attacked (as is Plaintiff) in their attempts to address and/or remedy the illegal/unconstitutional course of action which are the gravamen of (this) Plaintiff's Complaint, as the fabrications/orchestrations engineered at the federal level are incorporated into the State, local, and community level with individuals who are not all (if any are) 'government actors' in the legal sense of that term, which is one method by which Defendants attempt to confound those upon whom said technologies/weapons are used, as concealment of the source of the use of said technologies/weapons with the end result being manifest in the very lives individuals, including Plaintiff, are moved through (and believe they are leading), is designed to both confound the individuals upon whom said

---

technologies/weapons are used as well as to attempt to create jurisdictional issues (legally) for those individuals, including Plaintiff, upon whom said technologies/weapons are being illegally/unconstitutionally used.

149.   Defendants at the level of State and local governments, as well as those Defendants who are not government actors but who are U.S. citizens and/or civilians are thereby directly made a function of Defendants' fabrications/orchestrations/manipulations and/or some State and local governments and individuals work in concert with the federal orchestrations/fabrications to frame false social and/or political narratives at the state and/or local levels, (again) as a method by which Defendants attempt to both confound the individuals upon whom said technologies/weapons are used as well as to attempt to create jurisdictional issues (legally) for those individuals, including Plaintiff, upon whom said technologies/weapons are being illegally/unconstitutionally used.

150.   Plaintiff has resisted the force/coercion of those running said technologies/weapons which has resulted in those running the same increasing the level of harms directed at Plaintiff, (apparently) as attempts to force/coerce Plaintiff to capitulate to and align with the illegal/unconstitutional conduct/acts of those running said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons, ultimately resulting in those running said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons inflicting ongoing/perpetual harms to Plaintiff which has resulted in both serious bodily injury to Plaintiff, as well as mimicking serious bodily injury to Plaintiff, as well as intentionally depriving Plaintiff of protected constitutional right, liberties, and equal protection of the laws, further resulting in ongoing acts that amount to literal 'torture' of Plaintiff, as that term is defined in both federal and California State laws, via the illegal/unconstitutional attacks upon Plaintiff with directed/energy

technologies/weapons.

151.   Plaintiff was not provided with notice of, nor did Plaintiff participate in any formal hearing(s) during which the use of said technologies/weapons upon Plaintiff were either ordered (the constitutionality of which would automatically be in question as well) and/or agreed upon by Plaintiff.

152.   Plaintiff has never consented to the use of said technologies/weapons upon Plaintiff.

153.   Plaintiff's location has at all times relevant to this lawsuit been known to those individuals running said technologies/weapons.

154.   Plaintiff has at all times relevant to this lawsuit been and remains in the jurisdiction of the fully functioning United States Federal and State Court systems.

155.   At no time during the entirety of Plaintiff's life, during times when said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons have been used upon Plaintiff, has martial law been declared by the United State government.

156.   Individuals working for Defendants who run said technologies/weapons hide in a sequestered location, out of the purview of Plaintiff and the general public, with the link between Plaintiff and Defendants and/or Defendant's computer(s) being established by a variety of different wavelength technologies/weapons including directed energy, radar, microwave, radio-frequency, and varying wavelengths, all of which rely upon government infrastructure to maintain continuity of their use across the various States in which Plaintiff has been moved and has lived, including California, New Mexico, Michigan, New York, and all points in between.

157.   Those running said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons have attempted and continue attempting to trap Plaintiff within Plaintiff's own life, depriving Plaintiff of fundamental rights,

asserting (via thoughts imbued to Plaintiff via use of said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons) that those running said technologies/weapons will further harm and attempt to discredit and defame Plaintiff, going so far as to engage in acts amounting to 'torture' (as that term is defined under federal and state law) Plaintiff as Plaintiff attempts to engage in activities of daily life (i.e. while attempting to eat, sleep, exercise, work (interfering with Plaintiff's ability to think and make decisions at work), preventing Plaintiff from being able to literally read to prepare for let alone pass the California State Bar Examination (Plaintiff is literally prevented from being able to read bar review materials), preventing Plaintiff from meeting a woman/women for a personal relationship(s) and affecting Plaintiff's ability to interact with others via deliberate attacks on Plaintiff's mind), the implication being that if Plaintiff capitulates to and acts in concert with Defendants' illegal/unconstitutional use of said technologies/weapons then Plaintiff will be given the opportunity to enjoy all of the foregoing and a life in which Plaintiff is not actively attacked twenty (24) hours-a-day, seven (7) days-a-week, at least for so long as Plaintiff continues to acquiesce to and go along with the illegal/unconstitutional use of said technologies/weapons, which (thereby, as stated previously in (this) Plaintiff's Complaint) requires Plaintiff to accept all prior fabrications/orchestrations while simultaneously (thereby) consenting to all future fabrications/orchestrations, which are in complete contravention to Plaintiff's (most basic) human, civil, and fundamental rights. Capitulation by Plaintiff simply does not make sense and would be a decision that would make Plaintiff a co-conspirator in Defendants' illegal/unconstitutional use of said mind/body control brain-computer interface technologies/weapons upon the civilian population domestically within the United States.

158.    For *Bivens* causes of action for which Courts have previously granted relief

including 4th Amendment actions, 8th Amendment actions, 5th and 14th Amendment actions, and for the novel 1st Amendment action additionally present and necessitating relief in (this) Plaintiff's Complaint, Plaintiff is seeking to recover compensatory damages: general damages including loss of enjoyment, emotional distress, pain and suffering in amounts to be proven at trial, special damages in amounts to be proven at trial including Plaintiff's debt (including student loan debt) that has been forced to remain unpaid while accumulating additional interest) during such time as Plaintiff continues being held in the ongoing scenarios and prevented from advancing professionally, also including cost for medical services to address and treat the injuries and harms done to Plaintiff with said directed energy technologies/weapons in an amount Plaintiff is in the process of investigating and determining, for loss of income, for loss of personal property, for out of pocket expenses, for attorney's fees (Plaintiff's time spent in Pro per), for prejudgment interest for according to proof, for punitive and exemplary damages in an amount to be ascertained at trial, for injunctive relief to stop the current use and prevent future/ongoing use of said technologies/weapons, and for such other relief as the court deems appropriate.

## **SECOND CAUSE OF ACTION**
### **28 U.S.C. 1331**
### **(Against all defendants)**

159.    Plaintiff's instant lawsuit find jurisdiction in this United States District Court arising out of federal questions, not capable of complete and proper relief at the State Court level, as the gravamen of (this) Plaintiff's Complaint are based in principles of constitutional law, several of which directly fall under *Bivens* relief and based upon the illegal/unconstitutional use of directed energy mind/body control brain-computer interface technologies/weapons upon Plaintiff (including other U.S. citizens, on U.S. soil, not as a matter of 'national security,' despite that

being an area where these same technologies/weapons may have had some application, but their use has been manipulated as an attempt to literally mind-control individuals (including Plaintiff) domestically within the United States into fake/fabricated lives using said technologies/weapons, the deliberate use and concealment of which are a direct attack against the Constitution and the established democratic republican form of government, presenting substantive and procedural due process issues, as well as raising issues of equal protection.

160.    Remote directed energy technologies/weapons are being (and have, for many years, been) used to control and manipulate Plaintiff's thoughts and actions, impairing and/or augmenting Plaintiff's cognitive abilities and mimicking volitional choice(s) by imbuing and/or neuromodulating Plaintiff's unadulterated thoughts using electrical brain stimulation techniques remotely administered using directed energy technologies/weapons.

161.    Use of the directed-energy mind/body control brain-computer interface technologies/weapons upon Plaintiff have been and continue to be coordinated with the tangible physical surroundings and tangible events occurring in Plaintiff's life, thereby creating a series of linked ongoing tangible physical environments that are coordinated using the remote administration/application of said directed-energy technologies/weapons upon Plaintiff and other individuals in those physical environments to create environments in which the parameters and the individuals therein are thereby synchronized with said technologies/weapons to fabricate/orchestrate entirely staged scenarios that simultaneously misrepresent Plaintiff's true persona, intellect, cognition, and volition while imbuing thoughts and controlling/regulating bodily and mental functions of Plaintiff, thereby fully depriving Plaintiff of protected fundamental (civil) rights, freedoms, and liberties, while continuously moving Plaintiff from one scenario to the next without ever breaking the control exerted over Plaintiff via the directed-energy mind/body control brain-computer interface technologies/weapons.

162.    Attempts to substitute the fabrications/orchestrations (created by those running said technologies/weapons) for Plaintiff's unadulterated (without the use of said technologies/weapons) 'reality'/life have been unsuccessful.

163.    Plaintiff has been (and continues being) attacked by those running said technologies/weapons and severely limited in all areas of Plaintiff's life, personally and professionally, physically and mentally by those running said technologies/weapons as they to attempt to create leverage against Plaintiff, to force/coerce Plaintiff into acceptance of the fabrications/orchestrations those running said technologies/weapons have attempted to create.

164.    The ongoing conduct of those running said technologies/weapons and Plaintiff's resistance thereto, have resulted in those running said technologies/weapons using the same to engage in conduct that has resulted in literal "torture" (as the term is defined under 18 U.S.C. §2340 and Cal. Penal Code §206) of Plaintiff, administered throughout the day-and-night, as Plaintiff attempts to live his life (i.e. work, gym, relationships) domestically, within the United States.

165.    The gravamen of this Complaint is for the ongoing course-of-conduct harassment, stalking, complete deprivations of and intentional violations of Plaintiff's fundamental rights, civil rights, and (most basic) human rights, which are inherent in the very intentional concealment and use of said technologies/weapons, by those running said technologies/weapons.

166.    Said technologies/weapons affect Plaintiff's mental processes by intercepting and neuromodulating (i.e. changing, augmenting, impairing, impeding, truncating, replacing, embellishing upon) Plaintiff's thoughts, thereby exerting direct control over Plaintiff's cognitive and volitional mental functions, all while (based upon the totality of the circumstances, evidence, information and belief) using the same technologies/weapons to literally view what Plaintiff sees through Plaintiff's eyes as a function of the same interception of Plaintiff's brain signals, while

simultaneously controlling Plaintiff's body via the same neuromodulation of Plaintiff's brain waves, the coordinated effects/affects of which fully deprive Plaintiff of the protections of U.S. Constitution, including the Amendments therein for which courts have previously granted relief under Bivens analysis, as well as a novel Bivens claim for serious violations of Plaintiff's First Amendment rights for which Congress has not acted but for which constitutional protections are necessary.

167.    On-or-about March 19, 2022, Plaintiff mailed letters to three California State Court judges: Judge Barbara Scheper, Judge Cynthia Ulfig, and Judge Daniel Feldstern, each of which had roles in the fabrications/orchestrations of those running said technologies/weapons fabricating/orchestrating scenarios in Plaintiff's life during the year 2006 and 2007, at times when Plaintiff was fully aware that Plaintiff was being falsely framed in fabricated/orchestrated scenarios but did not know of and/or suspect the intentional existence and use of said technologies/weapons on U.S. citizens/civilians at that time - none of these parties responded to Plaintiff's correspondence.

168.    On-or-about March 11, 2018, Plaintiff mailed letters notifying each agency/entity contacted of the illegal/unconstitutional use of said technologies/weapons, further ordering that they instruct personnel working within their department(s)/agency/ies to immediately cease and desist from the ongoing use and/or coordination/complicity in the use of said technologies/weapons upon Plaintiff. Those letters were sent to the following: General David L. Goldfein, Air Force Chief of Staff; General Mark A. Milley, Army Chief of Staff; General Joseph L. Lengyel, Chief, National Guard Bureau; General Robert B. Neller, Commandant of the Marine Corps; Patrick M. Shanahan, Deputy Secretary of Defense; Dr. Heather Wilson, Secretary of the Air Force; Dr. Mark Esper, Secretary of the Army; General Joseph N. Dunford, Jr., Chairman of the Joint Chiefs of Staff; General James N. Mattis, Secretary of Defense; General Paul J.

Selva, Vice Chairman of the Joint Chiefs of Staff; Admiral John M. Richardson, Chief of Naval Operations; Richard Spencer, Secretary of the Navy; John C. Rood, Under Secretary of Defense (Policy) - none of these parties responded to Plaintiff's correspondence.

169.    On-or-about January 21, 2019, Plaintiff emailed correspondence to the office of (then) Senator of California, Kamala Harris, the subject of which stated "Complaint/request for assistance to Kamala Harris," the content of which disclosed the illegal/unconstitutional attacks on Plaintiff with said directed/energy mind/body control brain-computer interface technologies/weapons.

170.    On-or-about January 30, 2019, an email from Kamala D. Harris was sent to Plaintiff, expounding upon Senator Harris's acts to defend civil rights during her time as Attorney General of California, further expounding upon (then) Senator Harris's acknowledgement of "mounting threats to our constitutional rights" but addressing nothing of the actual context to Plaintiff's initial email to (then) Senator Harris.

171.    On-or-about January 24, 2022, Plaintiff mailed certified letters to twenty-four (24) federal and state departments/agencies Plaintiff had reason to believe to be involved in the direct use of said technologies/weapons and/or to have oversight over those operating said technologies/weapons domestically, in which Plaintiff requested each department/agency of the illegal/unconstitutional use of said directed energy technologies/weapons, further requesting that they cease and desist in the use of the same on Plaintiff and noticing each that Plaintiff would file a lawsuit(s) for the same if the conduct persisted. The letters were mailed to the following: Gavin Newsom, Governor of the State of California; Rob Bonta, Attorney General for the State of California; Michelle Lujan, Governor of the State of New Mexico; Gretchen Whitmer, Governor of the State of Michigan; Hector Balderas, Attorney for the State of New Mexico; Dana Nessel, Attorney General for the State of Michigan; David Baldwin, Adjutant General for the State of

California; Kenneth Nava, Adjutant General for the State of New Mexico; Paul Rogers, Adjutant General for the State of Michigan; Alex Villanueva, (then) Los Angeles County Sheriff; Michael Moore, Los Angeles City Chief of Police; Merrick Garland, U.S. Attorney General; Caroline Krauss, General Counsel at the Department of Defense; Ariane Cerlenko, General Counsel at the National Security Agency (NSA); Jason Jones, General Counsel at the Federal Bureau of Investigations (FBI); Courtney Ellwood, General Counsel at the Central Intelligence Agency (CIA); Chief Justice Tani G. Cantil-Sakauye, in her role with the Judicial Council of California; Vanessa Lynne Holton, General Counsel for the State Bar of California; Edward Hendrie, Chief Counsel for the Drug Enforcement Agency (DEA); Craig Smith, General Counsel for the Air Force; Carri Ricci, General Counsel for the Department of the Army; Sean Coffey, General Counsel for the Department of the Navy; Jonathan Meyer, General Counsel for the U.S. Department of Homeland Security, none of which sent a response to Plaintiff's correspondence.

172.    On-or-about June 15, 2022, Plaintiff sent notices (including SF-95 forms) for recovery of damages for the negligent and intentional harms done to Plaintiff by those running said technologies/weapons upon Plaintiff, as well as notices under the related state tort claims act laws for each of the states in which harm has been done to Plaintiff by those running said technologies/weapons. Those notices were sent to the following: Gavin Newsom, Governor of the State of California; Rob Bonta, Attorney General for the State of California; Michelle Lujan, Governor of the State of New Mexico; Gretchen Whitmer, Governor of the State of Michigan; Hector Balderas, Attorney for the State of New Mexico; Dana Nessel, Attorney General for the State of Michigan; David Baldwin, Adjutant General for the State of California; Kenneth Nava, Adjutant General for the State of New Mexico; Paul Rogers, Adjutant General for the State of Michigan; Alex Villanueva, (then) Los Angeles County Sheriff; Michael Moore, Los Angeles City Chief of Police;

COMPLAINT

Merrick Garland, U.S. Attorney General; Caroline Krauss, General Counsel at the Department of Defense; Ariane Cerlenko, General Counsel at the National Security Agency (NSA); Jason Jones, General Counsel at the Federal Bureau of Investigations (FBI); Courtney Ellwood, General Counsel at the Central Intelligence Agency (CIA); Chief Justice Tani G. Cantil-Sakauye, in her role with the Judicial Council of California; Vanessa Lynne Holton, General Counsel for the State Bar of California; Edward Hendrie, Chief Counsel for the Drug Enforcement Agency (DEA); Craig Smith, General Counsel for the Air Force; Carri Ricci, General Counsel for the Department of the Army; Sean Coffey, General Counsel for the Department of the Navy; Jonathan Meyer, General Counsel for the U.S. Department of Homeland Security; Richard C. Visek, Office of the Legal Adviser of the U.S. Department of State; Kathy Hochul, Governor of the State of New York; Letitia James, Attorney General for the State of New York; Major General Raymond Shields, Adjutant General for the State of New York; the clerk for the Los Angeles County Board of Supervisors; City Clerk for the City of Los Angeles; Keith Manes, Clerk or Authorized Agent for the County Board of Commissioners of Lea County, New Mexico; Barb Byrum, Clerk or Authorized Agent for the County Board of Commissioners of Ingham County, Michigan; Lawrence Kestenbaum, Clerk or Authorized Agent for the County Board of Commissioners of Washtenaw County; Chief August Fons, City of Hobbs, New Mexico Police Department; Jan Fletcher, City Clerk for the City of Hobbs, NM; the Risk Management Division for the State of New Mexico; the Department of General Services for the State of California; Clerks of the Courts of Claims of the third and fourth districts of Michigan; the Judicial Tenure Commission in the State of Michigan; Diane Luce, District Attorney for Lea County, New Mexico; Government Claims Program in West Sacramento, California.

173.    In response to the notices sent by Plaintiff to those in the preceding paragraph, Plaintiff received the following responses: (1) On-or-about October 19, 2022, the

65

Department of the Air Force issued a letter denying Plaintiff's tort claim; (2) August 30, 2022, Plaintiff received a notice from the U.S. Department of Justice, asserting that the U.S. Department of Justice would be "handling" Plaintiff's claim. On-or-about September 12, 2022, Plaintiff mailed a certified correspondence to the Civil Division, Torts Branch Paralegal who signed off on the letter to August 30, 2022, letter to Plaintiff, in which Plaintiff requested contact details to communicate directly with the Civil Division to resolve Plaintiff's tort claims with the Department, to which Plaintiff has received no response; (3) Some days following the date on which the letter is dated, that being June 21, 2022, Plaintiff received a notice of denial of Plaintiff's tort claim from the State Bar of California; (4) some days after the date on which the letter is dated, that being June 30, 2022, Plaintiff received a denial of Plaintiff's tort claim from the City of Los Angeles; (5) some days following the date on which the letter is dated, that being August 02, 2022, Plaintiff received a notice of denial of Plaintiff's tort claim from the Federal Bureau of Investigation; (6) some days following the date on which the letter is dated, that being July 07, 2022, Plaintiff received a notice of denial of Plaintiff's tort claim from the Department of the Army; following that initial notice of denial, (7) some days following the dates of subsequent letters sent from the Department of Army, dated September 08, 2022, and September 13, 2022, Plaintiff received notices of denial of Plaintiff's tort claim (again) from the Department of Army; (8) some days after the date on which the correspondence is dated, that being June 21, 2022, Plaintiff received acknowledgement that Plaintiff's tort claim submitted to the Court of Claims for the State of Michigan had been received and assigned a tracking number of 22-200126-o, the District of the Court responding is not included on the response; (9) some days after the date on which the correspondence is dated, that being June 24, 2022, Plaintiff received acknowledgement that Plaintiff's tort claim submitted to the Court of Claims for the State of Michigan had been received and assigned a tracking number of 22-200133-o, the District of

COMPLAINT

the Court responding is not included on the response; (10) some days after the date on which the postage stamp on the envelope is dated, that being September 13, 2022, Plaintiff received a letter with a salutation to a "Ms. Patterson," denying Plaintiff's tort claim that was submitted to the Drug Enforcement Agency, asserting that Plaintiff had not submitted an SF-95, which is incorrect – this was not an effective denial of Plaintiff's claim as letter is addressed to a Ms. Patterson and does not properly state the facts of Plaintiff's SF-95 submission, as Plaintiff properly submitted an SF-95 with Plaintiff's Federal Tort Claims Act notice; (11) some days after the date on which the correspondence is dated, that being June 27, 2022, Plaintiff received a general denial, based on the timing of Plaintiff's tort claim(s), for the Los Angeles County Board of Supervisors. On-or-about July 18, 2022, Plaintiff mailed an additional correspondence to the Los Angeles County Board of Supervisors, expressing the deliberate interference with Plaintiff discovering the source of the harms done to Plaintiff as well as the equitable tolling required as a result of said interference. Some days after the date on which the correspondence is dated, that being August 01, 2022, Plaintiff (again) received a general denial, based on the timing of Plaintiff's tort claim(s), from the Los Angeles County Board of Supervisors. (12) Some days after the date on which the correspondence is dated, that being July 14, 2022, Plaintiff received a denial of Plaintiff's tort claims, from the Department of Army on behalf of the State of Michigan National Guard, citing case law which had not relevance to the claim that Plaintiff submitted and further attempting to require an exact timeline when the facts of Plaintiff's claim(s) clearly allege the entire course-of-conduct (harassment/stalking) and literal control over Plaintiff's mind and body by those intentionally preventing Plaintiff from pursuing legal recourse. The letter further erroneously states that Plaintiff's claim was "defective." On August 01, 2022, Plaintiff emailed the Army personnel who drafted the July 14, 2022, letter to Plaintiff. In that email, Plaintiff reasserted the justice obstructing tactics being used

by those running said technologies/weapons, the fraudulent concealment those running said technologies/weapons are guilty of, Plaintiff provided the actual United States Code, Code of Federal regulations, as well as case law supporting that Plaintiff's claim was not defective and met the requirements. Plaintiff has received no further correspondence back from the individual with the Department of Army who corresponded on behalf of the Michigan National Guard – note (6) and (7) in this paragraph, as the Department of Army denied Plaintiff's tort claim(s).

174.    Plaintiff is seeking to recover compensatory damages: general damages including loss of enjoyment, emotional distress, pain and suffering in amounts to be proven at trial, special damages in amounts to be proven at trial including Plaintiff's debt (including student loan debt) that has been forced to remain unpaid while accumulating additional interest) during such time as Plaintiff continues being held in the ongoing scenarios and prevented from advancing professionally, also including cost for medical services to address and treat the injuries and harms done to Plaintiff with said directed energy technologies/weapons in an amount Plaintiff is in the process of investigating and determining, for loss of income, for loss of personal property, for out of pocket expenses, for attorney's fees (Plaintiff's time spent in Pro per), for prejudgment interest for according to proof, for punitive and exemplary damages in an amount to be ascertained at trial, for injunctive relief to stop the current use and prevent future/ongoing use of said technologies/weapons, and for such other relief as the court deems appropriate.

## THIRD CAUSE OF ACTION
### 42 U.S.C. 1983
**(Against Defendants Unknown California State Official Authorizing the Ongoing Use of Directed Energy Technologies/Weapons Against Plaintiff, a California State Government Official; Unknown Class Representative(s) of Defendant Class Actively Participating in the Harmful Use of Directed Energy Technologies/Weapons upon Plaintiff; and DOES 1 to 10, inclusive)**

68

175.    Remote directed energy technologies/weapons are being (and have, for many years, been) used to control and manipulate Plaintiff's thoughts and actions, impairing and/or augmenting Plaintiff's cognitive abilities and mimicking volitional choice(s) by imbuing and/or neuromodulating Plaintiff's unadulterated thoughts using electrical brain stimulation techniques remotely administered using directed energy technologies/weapons.

176.    Use of the directed-energy mind/body control brain-computer interface technologies/weapons upon Plaintiff have been and continue to be coordinated with the tangible physical surroundings and tangible events occurring in Plaintiff's life, thereby creating a series of linked ongoing tangible physical environments that are coordinated using the remote administration/application of said directed-energy technologies/weapons upon Plaintiff and other individuals in those physical environments to create environments in which the parameters and the individuals therein are thereby synchronized with said technologies/weapons to fabricate/orchestrate entirely staged scenarios that simultaneously misrepresent Plaintiff's true persona, intellect, cognition, and volition while imbuing thoughts and controlling/regulating bodily and mental functions of Plaintiff, thereby fully depriving Plaintiff of protected fundamental (civil) rights, freedoms, and liberties, while continuously moving Plaintiff from one scenario to the next without ever breaking the control exerted over Plaintiff via the directed-energy mind/body control brain-computer interface technologies/weapons.

177.    Attempts to substitute the fabrications/orchestrations (created by those running said technologies/weapons) for Plaintiff's unadulterated (without the use of said technologies/weapons) 'reality'/life have been unsuccessful.

178.    Plaintiff has been (and continues being) attacked by those running said technologies/weapons and severely limited in all areas of Plaintiff's life, personally and professionally, physically and mentally by those running said technologies/weapons as they to attempt to create leverage against Plaintiff, to

69

force/coerce Plaintiff into acceptance of the fabrications/orchestrations those running said technologies/weapons have attempted to create.

179.    The ongoing conduct of those running said technologies/weapons and Plaintiff's resistance thereto, have resulted in those running said technologies/weapons using the same to engage in conduct that has resulted in literal "torture" (as the term is defined under 18 U.S.C. §2340 and Cal. Penal Code §206) of Plaintiff, administered throughout the day-and-night, as Plaintiff attempts to live his life (i.e. work, gym, relationships) domestically, within the United States.

180.    The gravamen of this Complaint is for the ongoing course-of-conduct harassment, stalking, complete deprivations of and intentional violations of Plaintiff's fundamental rights, civil rights, and (most basic) human rights, which are inherent in the very intentional concealment and use of said technologies/weapons, by those running said technologies/weapons.

181.    Notably, a California State Court action was filed by California attorneys, on behalf of Plaintiff, for complete destruction of Plaintiff's personal property, which was all inside the room in which Plaintiff was living at the time of a building fire that occurred on February 07, 2020, as well as personal injury sustained by Plaintiff, as Plaintiff attempted flee the building as the entire building was engulfed in smoke and flames.

182.    Defendants, via the use of said technologies/weapons coordinated with Plaintiff's tangible physical surroundings, that Plaintiff was living in the building at the time of said fire, said lawsuit being one which Plaintiff repeatedly told the California attorneys who filed it that it could not be properly filed in California State Court, as the gravamen of (this) Plaintiff's instant Complaint before this court are/were the actual legal bases for any civil action Plaintiff had at the time of the building fire.

183.    Following the building fire on February 07, 2020, Plaintiff relocated to a

COMPLAINT

short-term apartment located in San Pedro, California.

184.    A property directly across the street from Plaintiff's short-term apartment set up loudspeakers and hosted parties with individuals who became extremely rowdy, setting off M-80 style explosives which would set off car alarms in the surrounding neighborhood, smashing glass bottles, and carrying on loudly into overnight hours – it bears repeating, Plaintiff has continued being heavily controlled via the directed energy technologies weapons since before the time of the fire through the time of Plaintiff filing this instant Complaint with this court.

185.    Several of the cars regularly parked around and near the home where the parties were held had stickers displaying military branches (i.e. Marines, Air Force, etc.).

186.    Plaintiff called the local police department several times asking for the police to come by to ask the neighbors to turn the music down as it was in violation of municipal codes, but police never responded.

187.    On January 31, 2021, Plaintiff felt himself controlled but could not prevent the exertion of the control over Plaintiff as he walked down to the street and yelled across the street, asking for the neighbors to turn the music down.

188.    One individual came across the street, as Plaintiff was recording the scene with Plaintiff's cell phone, grabbed Plaintiff's cell phone from Plaintiff's hands, and threw Plaintiff to the ground as Plaintiff bent down to pick up the cell phone – Plaintiff felt himself controlled by said technologies/weapons as Plaintiff could not react/respond.

189.    Plaintiff had a picture of the individual who attacked Plaintiff, and Plaintiff filed a police report that night, as Plaintiff's knee was injured when Plaintiff was thrown to the ground.

190.    Upon contacting Detective Jacinto Zavala, who Plaintiff learned was investigating the attack on Plaintiff, Plaintiff fully disclosed the illegal/unconstitutional use of said technologies/weapons upon Plaintiff, learned

the Detective Zavala had a military background as well and (when asked about said technologies/weapons) Detective Zavala would not say that he did not know of them.

191.    Plaintiff sent several emails, photos, videos, supporting Plaintiff's side of the matter to Detective Zavala to no avail, as Plaintiff wanted to learn the identity of the attacker for purposes of a civil lawsuit as well as to investigate (this) Plaintiff's instant federal cause of action with this court.

192.    Detective Zavala never located the attacker, even with a close-up photograph Plaintiff provided to Detective Zavala of the individual.

193.    Plaintiff emailed Detective Zavala's supervisor and received no response.

194.    The attack on Plaintiff on January 31, 2021, was entirely staged, and the Los Angeles Police Department Detective assigned to it intentionally disregarded it.

195.    Those running said technologies/weapons have actively attempted to provide legal cover for themselves by manipulating Plaintiff (who is a law school graduate), allowing Plaintiff to communicate and/or initiate some form of legal proceedings and/or correspondence(s) with federal, state, and local departments/agencies/entities but then using said technologies/weapons to literally prevent Plaintiff from timely pursuing the initial communications/notices Plaintiff communicated, thereby (apparently) attempting to avoid legal repercussions by asserting claims that statutes of limitations have expired, despite those running said technologies/weapons actually (based upon their very conduct/actions) equitably tolling the statutes of limitations, as those running said technologies/weapons use said technologies/weapons to (very literally) mentally incapacitate and control Plaintiff to prevent Plaintiff from timely following up.

196.    On-or-about March 19, 2022, Plaintiff mailed letters to three California State Court judges: Judge Barbara Scheper, Judge Cynthia Ulfig, and Judge Daniel Feldstern, each of which had roles in the fabrications/orchestrations of those running said technologies/weapons fabricating/orchestrating scenarios in

Plaintiff's life during the year 2006 and 2007, at times when Plaintiff was fully aware that Plaintiff was being falsely framed in fabricated/orchestrated scenarios but did not know of and/or suspect the intentional existence and use of said technologies/weapons on U.S. citizens/civilians at that time - none of these parties responded to Plaintiff's correspondence.

197.    Plaintiff is domiciled in Los Angeles County California and the gravamen of this Complaint are for the acts directed at Plaintiff, predominantly occurring in and around Los Angeles County, California, where Plaintiff originally moved in 1996.

198.    Continuity of the overarching level of coordination within the government extended to acts/conduct coordinated with and directed against Plaintiff in Michigan, New York, New Mexico, and (upon returning after a brief three-plus (3+) year period in the foregoing locations, beginning in October 2016 through to the present time the ongoing/continuing acts/conduct directed against Plaintiff have (again) occurred predominantly within Los Angeles County, California.

199.    In the years prior to Plaintiff moving to Michigan for law school in January 2013, the acts directed at Plaintiff occurred primarily in Los Angeles County, California, where Plaintiff resided and was domiciled from 1996 through 2000, moving (briefly) during the year 2000 to San Diego, California, before returning to Los Angeles County from 2000 through 2013, when Plaintiff then left California to attend law school in Michigan, returning again to California in October 2016, where Plaintiff has remained since that time and is presently located.

200.    Each of the named Defendants as well as unknown officers, agents, and/or employees acting under the direction of the named Defendants and any DOES discovered to be acting in coordination with Defendants have carried out the vast majority of acts/conduct directed against Plaintiff in Los Angeles County, California, the coordination of Plaintiff's life combined with the illegal/unconstitutional control over Plaintiff exerted using said technologies/weapons support that Defendant's conduct against Plaintiff extends

back throughout the entire time that Plaintiff has resided in California, beginning in 1996.

201.    On-or-about March 11, 2018, Plaintiff mailed letters notifying each agency/entity contacted of the illegal/unconstitutional use of said technologies/weapons, further ordering that they instruct personnel working within their department(s)/agency/ies to immediately cease and desist from the ongoing use and/or coordination/complicity in the use of said technologies/weapons upon Plaintiff. Those letters were sent to the following: General David L. Goldfein, Air Force Chief of Staff; General Mark A. Milley, Army Chief of Staff; General Joseph L. Lengyel, Chief, National Guard Bureau; General Robert B. Neller, Commandant of the Marine Corps; Patrick M. Shanahan, Deputy Secretary of Defense; Dr. Heather Wilson, Secretary of the Air Force; Dr. Mark Esper, Secretary of the Army; General Joseph N. Dunford, Jr., Chairman of the Joint Chiefs of Staff; General James N. Mattis, Secretary of Defense; General Paul J. Selva, Vice Chairman of the Joint Chiefs of Staff; Admiral John M. Richardson, Chief of Naval Operations; Richard Spencer, Secretary of the Navy; John C. Rood, Under Secretary of Defense (Policy) - none of these parties responded to Plaintiff's correspondence.

202.    On-or-about January 21, 2019, Plaintiff emailed correspondence to the office of (then) Senator of California, Kamala Harris, the subject of which stated "Complaint/request for assistance to Kamala Harris," the content of which disclosed the illegal/unconstitutional attacks on Plaintiff with said directed/energy mind/body control brain-computer interface technologies/weapons.

203.    On-or-about January 30, 2019, an email from Kamala D. Harris was sent to Plaintiff, expounding upon Senator Harris's acts to defend civil rights during her time as Attorney General of California, further expounding upon (then) Senator Harris's acknowledgement of "mounting threats to our constitutional rights" but addressing nothing of the actual context to Plaintiff's initial email to (then) Senator

Harris.

204.    On-or-about January 24, 2022, Plaintiff mailed certified letters to twenty-four (24) federal and state departments/agencies Plaintiff had reason to believe to be involved in the direct use of said technologies/weapons and/or to have oversight over those operating said technologies/weapons domestically, in which Plaintiff requested each department/agency of the illegal/unconstitutional use of said directed energy technologies/weapons, further requesting that they cease and desist in the use of the same on Plaintiff and noticing each that Plaintiff would file a lawsuit(s) for the same if the conduct persisted. The letters were mailed to the following: Gavin Newsom, Governor of the State of California; Rob Bonta, Attorney General for the State of California; Michelle Lujan, Governor of the State of New Mexico; Gretchen Whitmer, Governor of the State of Michigan; Hector Balderas, Attorney for the State of New Mexico; Dana Nessel, Attorney General for the State of Michigan; David Baldwin, Adjutant General for the State of California; Kenneth Nava, Adjutant General for the State of New Mexico; Paul Rogers, Adjutant General for the State of Michigan; Alex Villanueva, (then) Los Angeles County Sheriff; Michael Moore, Los Angeles City Chief of Police; Merrick Garland, U.S. Attorney General; Caroline Krauss, General Counsel at the Department of Defense; Ariane Cerlenko, General Counsel at the National Security Agency (NSA); Jason Jones, General Counsel at the Federal Bureau of Investigations (FBI); Courtney Ellwood, General Counsel at the Central Intelligence Agency (CIA); Chief Justice Tani G. Cantil-Sakauye, in her role with the Judicial Council of California; Vanessa Lynne Holton, General Counsel for the State Bar of California; Edward Hendrie, Chief Counsel for the Drug Enforcement Agency (DEA); Craig Smith, General Counsel for the Air Force; Carri Ricci, General Counsel for the Department of the Army; Sean Coffey, General Counsel for the Department of the Navy; Jonathan Meyer, General Counsel for the U.S. Department of Homeland Security, none of which sent a response to Plaintiff's

COMPLAINT

correspondence.

205.    Defendants' continuous and ongoing use of said directed-energy technologies/weapons to control the thoughts and/or actions of any un-consenting U.S. citizen (including Plaintiff) on U.S. soil, with the intent being to neuromodulate, substitute/imbue/replace the thoughts in their minds and/or manipulate the physical conditions and functions of their bodies, with the intent being to fabricate/orchestrate artificial paths/realties in the lives of those individuals (including Plaintiff), does not fall under any protected national security interest, nor do the ongoing use of the same technologies/weapons constitute a quick, instantaneous, and/or limited use of the same to address an exigent circumstance for a brief period until proper legal channels can be engaged to address whatever purported legal justification those running said technologies/weapons claim as their legal necessity for their use of the same to deprive Plaintiff of Plaintiff's constitutional rights and to attack Plaintiff - the ongoing deprivations of Plaintiff's rights are unwarranted and unacceptable given the exact nature of the use and function of said technologies/weapons upon Plaintiff.

206.    State and local level government defendants intentionally, knowingly, and willfully participate in the illegal/unconstitutional ongoing use of said technologies/weapons, thereby intentionally, knowingly, and willfully violating the fundamental, civil, and (basic) human rights of U.S. citizens (including Plaintiff) and further prevent, hinder, and/or delay the ability of U.S. citizens (including Plaintiff) of relief from the same in legitimate courts of the United States. Related state law causes of action sounding in tort and conspiracy have been filed in a separate state court lawsuit against parties acting in concert with the actions alleged herein but for which relief is sought for wholly (aside from 42 U.S.C. §1985, asserted there as well as within this Complaint) state law causes of action resulting from state and local level actors acting in concert with the federal

COMPLAINT

and state actors over which this court has jurisdiction for the claims Plaintiff asserts herein.

207.    The capabilities, use of, and source(s) of the use of the directed energy mind/body control brain-computer interface technologies/weapons was (for many years) and continues to be intentionally, knowingly, and willfully concealed by Defendants.

208.    State and local level government defendants intentionally, knowingly, and willfully participate in the illegal/unconstitutional ongoing use of said technologies/weapons, thereby intentionally, knowingly, and willfully violating the fundamental, civil, and (basic) human rights of U.S. citizens (including Plaintiff) and further prevent, hinder, and/or delay the ability of U.S. citizens (including Plaintiff) of relief from the same in legitimate courts of the United States.

209.    The identities of those running said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons on Plaintiff, working for/with Defendants remains deliberately concealed from Plaintiff while the attacks upon Plaintiff using the same persist.

210.    The response to Plaintiff's resistance to go along with the illegal/unconstitutional use of said technologies/weapons by those running said technologies/weapons has been a full scale, ongoing, twenty-four (24) hour-a-day, seven-day-a-week, ongoing series of attacks using the directed energy technologies/weapons to inflict intentional and ongoing harm and suffering unto Plaintiff. The attacks have been ongoing since 2016.

211.    Those running said technologies/weapons intentionally impair Plaintiff's ability to think, thereby intentionally harming Plaintiff in all areas of life, personal and professional.

212.    Those running said technologies/weapons have and continue to impair/inhibit Plaintiff's ability to cognitively reason and to act upon Plaintiff's own volition,

thereby (for literally years) intentionally preventing Plaintiff from legitimately pursuing legal and equitable redress for the same from the courts.

213.    Those running said technologies/weapons have allowed Plaintiff to file and/or communicate about the illegal/unconstitutional use of said technologies/weapons upon Plaintiff while simultaneously then preventing Plaintiff from taking any further action(s) to address the ongoing illegal/unconstitutional use of said technologies/weapons upon Plaintiff. Those running said technologies/weapons have effectuated this outcome by (very literally) targeting Plaintiff's head/mind and turning the directed energy technologies/weapons up to the point when Plaintiff can literally not function cognitively and/or make volitional choices to take action in one way or another. Thereby, those running said technologies/weapons upon Plaintiff have attempted to keep Plaintiff confined within the parameters of the current link in the chain of total immersion scenarios to prevent themselves from answering for the legal consequences of their actions, all while simultaneously, relentlessly attacking Plaintiff with the microwave weapons-style use of said technologies/weapons to criminally stalk, criminally harass, and (very literally) 'torture' (as the term is defined under both federal and state law) Plaintiff as he attempts to go about his life.

214.    Defendants have attempted to keep Plaintiff confined within the parameters of the current link in the chain of total immersion scenarios to prevent themselves from answering for the legal consequences of their actions, all while simultaneously, relentlessly attacking Plaintiff with the microwave weapons-style use of said technologies/weapons to criminally stalk, criminally harass, and (very literally) 'torture' (as the term is defined under both federal and state law) Plaintiff as he attempts to go about his life.

215.    Defendants' use of threats directed at Plaintiff are combined with Defendants' active deprivations of Plaintiff's fundamental rights, in which Defendants actively prevent Plaintiff from progressing in and/or enjoying every area of Plaintiff's life,

including but not limited to professional endeavors, personal relationships, recreational activities, essentially deprivation of all of Plaintiff's civil liberties and fundamental rights without due process in an ongoing course of conduct by Defendants to cover for the illegal/unconstitutional use of said directed energy technologies/weapons on Plaintiff, not only presently but extending back over the vast majority of Plaintiff's life, done with the purpose to attempt to fabricate/orchestrate/engineer and entire path through Plaintiff's life, including assigning an artificial persona to Plaintiff, a fabricated persona that would comport with the fabricated/orchestrated scenarios but which is not Plaintiff's genuine persona.

216.   Defendants attempt to embed Defendants' wrongful use of said technologies/weapons upon Plaintiff into tangible scenarios and events that are carried out at the level of and within the physical surroundings in which Plaintiff functions, those being the towns, cities, states, school environments, work environments, and social environments in which Plaintiff is moved through and functions in, thereby Defendants rely upon the constitutional rights of the States' sovereign immunity while thereby attempting to confound those who are attacked (as is Plaintiff) in their attempts to address and/or remedy the illegal/unconstitutional course of action which are the gravamen of (this) Plaintiff's Complaint, as the fabrications/orchestrations engineered at the federal level are incorporated into the State, local, and community level with individuals who are not all (if any are) 'government actors' in the legal sense of that term, which is one method by which Defendants attempt to confound those upon whom said technologies/weapons are used, as concealment of the source of the use of said technologies/weapons with the end result being manifest in the very lives individuals, including Plaintiff, are moved through (and believe they are leading), is designed to both confound the individuals upon whom said technologies/weapons are used as well as to attempt to create jurisdictional issues

(legally) for those individuals, including Plaintiff, upon whom said technologies/weapons are being illegally/unconstitutionally used.

217.    Defendants at the level of State and local governments, as well as those Defendants who are not government actors but who are U.S. citizens and/or civilians are thereby directly made a function of Defendants' fabrications/orchestrations/manipulations, (again) as a method by which Defendants attempt to both confound the individuals upon whom said technologies/weapons are used as well as to attempt to create jurisdictional issues (legally) for those individuals, including Plaintiff, upon whom said technologies/weapons are being illegally/unconstitutionally used.

218.    Defendants attempt to embed Defendants' wrongful use of said technologies/weapons upon Plaintiff into tangible scenarios and events that are carried out at the level of and within the physical surroundings in which Plaintiff functions, those being the towns, cities, states, school environments, work environments, and social environments in which Plaintiff is moved through and functions in, thereby Defendants rely upon the constitutional rights of the States' sovereign immunity while thereby attempting to confound those who are attacked (as is Plaintiff) in their attempts to address and/or remedy the illegal/unconstitutional course of action which are the gravamen of (this) Plaintiff's Complaint, as the fabrications/orchestrations engineered at the federal level are incorporated into the State, local, and community level with individuals who are not all (if any are) 'government actors' in the legal sense of that term, which is one method by which Defendants attempt to confound those upon whom said technologies/weapons are used, as concealment of the source of the use of said technologies/weapons with the end result being manifest in the very lives individuals, including Plaintiff, are moved through (and believe they are leading), is designed to both confound the individuals upon whom said technologies/weapons are used as well as to attempt to create jurisdictional issues

(legally) for those individuals, including Plaintiff, upon whom said technologies/weapons are being illegally/unconstitutionally used.

219.    Defendants at the level of State and local governments, as well as those Defendants who are not government actors but who are U.S. citizens and/or civilians are thereby directly made a function of Defendants' fabrications/orchestrations/manipulations and/or some State and local governments and individuals work in concert with the federal orchestrations/fabrications to frame false social and/or political narratives at the state and/or local levels, (again) as a method by which Defendants attempt to both confound the individuals upon whom said technologies/weapons are used as well as to attempt to create jurisdictional issues (legally) for those individuals, including Plaintiff, upon whom said technologies/weapons are being illegally/unconstitutionally used.

220.    Plaintiff has resisted the force/coercion of those running said technologies/weapons which has resulted in those running the same increasing the level of harms directed at Plaintiff, (apparently) as attempts to force/coerce Plaintiff to capitulate to and align with the illegal/unconstitutional conduct/acts of those running said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons, ultimately resulting in those running said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons inflicting ongoing/perpetual harms to Plaintiff which has resulted in both serious bodily injury to Plaintiff, as well as mimicking serious bodily injury to Plaintiff, as well as intentionally depriving Plaintiff of protected constitutional right, liberties, and equal protection of the laws, furthering resulting in ongoing acts that amount to literal 'torture' of Plaintiff, as that term is defined in both federal and California State laws, via the illegal/unconstitutional attacks upon Plaintiff with directed/energy technologies/weapons.

221.    Plaintiff was not provided with notice of, nor did Plaintiff participate in any

COMPLAINT

formal hearing(s) during which the use of said technologies/weapons upon Plaintiff were either ordered (the constitutionality of which would automatically be in question as well) and/or agreed upon by Plaintiff.

222.    Plaintiff has never consented to the use of said technologies/weapons upon Plaintiff.

223.    Plaintiff's location has at all times relevant to this lawsuit been known to those individuals running said technologies/weapons.

224.    Plaintiff has at all times relevant to this lawsuit been and remains in the jurisdiction of the fully functioning United States Federal and State Court systems.

225.    At no time during the entirety of Plaintiff's life, during times when said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons have been used upon Plaintiff, has martial law been declared by the United State government.

226.    Those running said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons have attempted and continue attempting to trap Plaintiff within Plaintiff's own life, depriving Plaintiff of fundamental rights, asserting (via thoughts imbued to Plaintiff via use of said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons) that those running said technologies/weapons will further harm and attempt to discredit and defame Plaintiff, going so far as to engage in acts amounting to 'torture' (as that term is defined under federal and state law) Plaintiff as Plaintiff attempts to engage in activities of daily life (i.e. while attempting to eat, sleep, exercise, work (interfering with Plaintiff's ability to think and make decisions at work), preventing Plaintiff from being able to prepare for and pass the California State Bar Examination (Plaintiff is literally prevented from being able to read bar review materials), preventing Plaintiff from meeting a woman/women for a personal relationship(s) and affecting Plaintiff's ability to interact with others via deliberate attacks on Plaintiff's mind), the implication being that if Plaintiff capitulates to and

82

acts in concert with Defendants' illegal/unconstitutional use of said technologies/weapons then Plaintiff will be given the opportunity to enjoy all of the foregoing and a life in which Plaintiff is not actively attacked twenty (24) hours-a-day, seven (7) days-a-week, at least for so long as Plaintiff continues to acquiesce to and go along with the illegal/unconstitutional use of said technologies/weapons, which (thereby, as stated previously in (this) Plaintiff's Complaint) requires Plaintiff to accept all prior fabrications/orchestrations while simultaneously (thereby) consenting to all future fabrications/orchestrations, which are in complete contravention to Plaintiff's (most basic) human, civil, and fundamental rights. Capitulation by Plaintiff simply does not make sense and would be a decision that would make Plaintiff a co-conspirator in Defendants' illegal/unconstitutional use of said mind/body control brain-computer interface technologies/weapons upon the civilian population domestically within the United States.

227.    Plaintiff is seeking to recover compensatory damages: general damages including loss of enjoyment, emotional distress, pain and suffering in amounts to be proven at trial, special damages in amounts to be proven at trial including Plaintiff's debt (including student loan debt) that has been forced to remain unpaid while accumulating additional interest) during such time as Plaintiff continues being held in the ongoing scenarios and prevented from advancing professionally, also including cost for medical services to address and treat the injuries and harms done to Plaintiff with said directed energy technologies/weapons in an amount Plaintiff is in the process of investigating and determining, for loss of income, for loss of personal property, for out of pocket expenses, for attorney's fees (Plaintiff's time spent in Pro per), for prejudgment interest for according to proof, for punitive and exemplary damages in an amount to be ascertained at trial, for injunctive relief to stop the current use and prevent future/ongoing use of said technologies/weapons, and for such other relief as the court deems appropriate.

## FOURTH CAUSE OF ACTION
### 42 U.S.C. 1985
### (Against all defendants)

228.    The inextricable intertwinement of the federal, state, and local level government resources involved in the ongoing use of said technologies/weapons to deliberately keep Plaintiff confined within the ongoing links in the chain of fabricated/orchestrated scenarios through which Plaintiff is moved, moving Plaintiff across state lines and keeping Plaintiff confined within individual links in the ongoing chain of scenarios in several different states, including but not limited to California, New Mexico, Michigan, New York, and all points in between, has resulted in the ongoing, twenty-four (24) hour-a-day, seven (7) day-a-week criminal harassment, criminal stalking, and literal "torture" (as the term is defined under federal and state law) of Plaintiff as Plaintiff has attempted to live his life, graduating from law school in 2016 and heavily harassed before, during, and after – Plaintiff needs this court to intervene to break the ongoing chain for Plaintiff.

229.    Remote directed energy technologies/weapons are being (and have, for many years, been) used to control and manipulate Plaintiff's thoughts and actions, impairing and/or augmenting Plaintiff's cognitive abilities and mimicking volitional choice(s) by imbuing and/or neuromodulating Plaintiff's unadulterated thoughts using electrical brain stimulation techniques remotely administered using directed energy technologies/weapons.

230.    Use of the directed-energy mind/body control brain-computer interface technologies/weapons upon Plaintiff have been and continue to be coordinated with the tangible physical surroundings and tangible events occurring in Plaintiff's life, thereby creating a series of linked ongoing tangible physical environments that are coordinated using the remote administration/application of said directed-

COMPLAINT

energy technologies/weapons upon Plaintiff and other individuals in those physical environments to create environments in which the parameters and the individuals therein are thereby synchronized with said technologies/weapons to fabricate/orchestrate entirely staged scenarios that simultaneously misrepresent Plaintiff's true persona, intellect, cognition, and volition while imbuing thoughts and controlling/regulating bodily and mental functions of Plaintiff, thereby fully depriving Plaintiff of protected fundamental (civil) rights, freedoms, and liberties, while continuously moving Plaintiff from one scenario to the next without ever breaking the control exerted over Plaintiff via the directed-energy mind/body control brain-computer interface technologies/weapons.

231. Attempts to substitute the fabrications/orchestrations (created by those running said technologies/weapons) for Plaintiff's unadulterated (without the use of said technologies/weapons) 'reality'/life have been unsuccessful.

232. Plaintiff has been (and continues being) attacked by those running said technologies/weapons and severely limited in all areas of Plaintiff's life, personally and professionally, physically and mentally by those running said technologies/weapons as they to attempt to create leverage against Plaintiff, to force/coerce Plaintiff into acceptance of the fabrications/orchestrations those running said technologies/weapons have attempted to create.

233. On-or-about March 19, 2022, Plaintiff mailed letters to three California State Court judges: Judge Barbara Scheper, Judge Cynthia Ulfig, and Judge Daniel Feldstern, each of which had roles in the fabrications/orchestrations of those running said technologies/weapons fabricating/orchestrating scenarios in Plaintiff's life during the year 2006 and 2007, at times when Plaintiff was fully aware that Plaintiff was being falsely framed in fabricated/orchestrated scenarios but did not know of and/or suspect the intentional existence and use of said technologies/weapons on U.S. citizens/civilians at that time - none of these parties

85

responded to Plaintiff's correspondence.

234.    Plaintiff is domiciled in Los Angeles County California and the gravamen of this Complaint are for the acts directed at Plaintiff, predominantly occurring in and around Los Angeles County, California, where Plaintiff originally moved in 1996.

235.    Continuity of the overarching level of coordination within the government extended to acts/conduct coordinated with and directed against Plaintiff in Michigan, New York, New Mexico, and (upon returning after a brief three-plus (3+) year period in the foregoing locations, beginning in October 2016 through to the present time the ongoing/continuing acts/conduct directed against Plaintiff have (again) occurred predominantly within Los Angeles County, California.

236.    In the years prior to Plaintiff moving to Michigan for law school in January 2013, the acts directed at Plaintiff occurred primarily in Los Angeles County, California, where Plaintiff resided and was domiciled from 1996 through 2000, moving (briefly) during the year 2000 to San Diego, California, before returning to Los Angeles County from 2000 through 2013, when Plaintiff then left California to attend law school in Michigan, returning again to California in October 2016, where Plaintiff has remained since that time and is presently located.

237.    Each of the named Defendants as well as unknown officers, agents, and/or employees acting under the direction of the named Defendants and any DOES discovered to be acting in coordination with Defendants have carried out the vast majority of acts/conduct directed against Plaintiff in Los Angeles County, California, the coordination of Plaintiff's life combined with the illegal/unconstitutional control over Plaintiff exerted using said technologies/weapons support that Defendant's conduct against Plaintiff extends back throughout the entire time that Plaintiff has resided in California, beginning in 1996.

238.    The ongoing conduct of those running said technologies/weapons and Plaintiff's resistance thereto, have resulted in those running said

---

technologies/weapons using the same to engage in conduct that has resulted in literal "torture" (as the term is defined under 18 U.S.C. §2340 and Cal. Penal Code §206) of Plaintiff, administered throughout the day-and-night, as Plaintiff attempts to live his life (i.e. work, gym, relationships) domestically, within the United States.

239.    The gravamen of this Complaint is for the ongoing course-of-conduct harassment, stalking, complete deprivations of and intentional violations of Plaintiff's fundamental rights, civil rights, and (most basic) human rights, which are inherent in the very intentional concealment and use of said technologies/weapons, by those running said technologies/weapons.

240.    Notably, a California State Court action was filed by California attorneys, on behalf of Plaintiff, for complete destruction of Plaintiff's personal property, which was all inside the room in which Plaintiff was living at the time of a building fire that occurred on February 07, 2020, as well as personal injury sustained by Plaintiff, as Plaintiff attempted flee the building as the entire building was engulfed in smoke and flames.

241.    Defendants, via the use of said technologies/weapons coordinated with Plaintiff's tangible physical surroundings, that Plaintiff was living in the building at the time of said fire, said lawsuit being one which Plaintiff repeatedly told the California attorneys who filed it that it could not be properly filed in California State Court, as the gravamen of (this) Plaintiff's instant Complaint before this court are/were the actual legal bases for any civil action Plaintiff had at the time of the building fire.

242.    Following the building fire on February 07, 2020, Plaintiff relocated to a short-term apartment located in San Pedro, California.

243.    A property directly across the street from Plaintiff's short-term apartment set up loudspeakers and hosted parties with individuals who became extremely rowdy, setting off M-80 style explosives which would set off car alarms in the surrounding

87

COMPLAINT

neighborhood, smashing glass bottles, and carrying on loudly into overnight hours – it bears repeating, Plaintiff has continued being heavily controlled via the directed energy technologies weapons since before the time of the fire through the time of Plaintiff filing this instant Complaint with this court.

244.    Several of the cars regularly parked around and near the home where the parties were held had stickers displaying military branches (i.e. Marines, Air Force, etc.).

245.    Plaintiff called the local police department several times asking for the police to come by to ask the neighbors to turn the music down as it was in violation of municipal codes, but police never responded.

246.    On January 31, 2021, Plaintiff felt himself controlled but could not prevent the exertion of the control over Plaintiff as he walked down to the street and yelled across the street, asking for the neighbors to turn the music down.

247.    One individual came across the street, as Plaintiff was recording the scene with Plaintiff's cell phone, grabbed Plaintiff's cell phone from Plaintiff's hands, and threw Plaintiff to the ground as Plaintiff bent down to pick up the cell phone – Plaintiff felt himself controlled by said technologies/weapons as Plaintiff could not react/respond.

248.    Plaintiff had a picture of the individual who attacked Plaintiff, and Plaintiff filed a police report that night, as Plaintiff's knee was injured when Plaintiff was thrown to the ground.

249.    Upon contacting Detective Jacinto Zavala, who Plaintiff learned was investigating the attack on Plaintiff, Plaintiff fully disclosed the illegal/unconstitutional use of said technologies/weapons upon Plaintiff, learned the Detective Zavala had a military background as well and (when asked about said technologies/weapons) Detective Zavala would not say that he did not know of them.

250.    Plaintiff sent several emails, photos, videos, supporting Plaintiff's side of the

matter to Detective Zavala to no avail, as Plaintiff wanted to learn the identity of the attacker for purposes of a civil lawsuit as well as to investigate (this) Plaintiff's instant federal cause of action with this court.

251.   Detective Zavala never located the attacker, even with a close-up photograph Plaintiff provided to Detective Zavala of the individual.

252.   Plaintiff emailed Detective Zavala's supervisor and received no response.

253.   The attack on Plaintiff on January 31, 2021, was entirely staged, and the Los Angeles Police Department Detective assigned to it intentionally disregarded it.

254.   Said technologies/weapons affect Plaintiff's mental processes by intercepting and neuromodulating (i.e. changing, augmenting, impairing, impeding, truncating, replacing, embellishing upon) Plaintiff's thoughts, thereby exerting direct control over Plaintiff's cognitive and volitional mental functions, all while (based upon the totality of the circumstances, evidence, information and belief) using the same technologies/weapons to literally view what Plaintiff sees through Plaintiff's eyes as a function of the same interception of Plaintiff's brain signals, while simultaneously controlling Plaintiff's body via the same neuromodulation of Plaintiff's brain waves, the coordinated effects/affects of which fully deprive Plaintiff of the protections of U.S. Constitution, including the Amendments therein for which courts have previously granted relief under Bivens analysis, as well as a novel Bivens claim for serious violations of Plaintiff's First Amendment rights for which Congress has not acted but for which constitutional protections are necessary.

255.   Those running said technologies/weapons have actively attempted to provide legal cover for themselves by manipulating Plaintiff (who is a law school graduate), allowing Plaintiff to communicate and/or initiate some form of legal proceedings and/or correspondence(s) with federal, state, and local departments/agencies/entities but then using said technologies/weapons to literally prevent Plaintiff from timely pursuing the initial communications/notices Plaintiff

COMPLAINT

communicated, thereby (apparently) attempting to avoid legal repercussions by asserting claims that statutes of limitations have expired, despite those running said technologies/weapons actually (based upon their very conduct/actions) equitably tolling the statutes of limitations, as those running said technologies/weapons use said technologies/weapons to (very literally) mentally incapacitate and control Plaintiff to prevent Plaintiff from timely following up.

256.    Plaintiff's ability to follow-up on each prior communication with the several federal, state, and local government agencies/entities has been interfered with and prevented by those running said technologies/weapons, preventing Plaintiff from timely follow-up immediately following the initial communication(s) made by Plaintiff.

257.    On-or-about March 19, 2022, Plaintiff mailed letters to three California State Court judges: Judge Barbara Scheper, Judge Cynthia Ulfig, and Judge Daniel Feldstern, each of which had roles in the fabrications/orchestrations of those running said technologies/weapons fabricating/orchestrating scenarios in Plaintiff's life during the year 2006 and 2007, at times when Plaintiff was fully aware that Plaintiff was being falsely framed in fabricated/orchestrated scenarios but did not know of and/or suspect the intentional existence and use of said technologies/weapons on U.S. citizens/civilians at that time - none of these parties responded to Plaintiff's correspondence.

258.    On-or-about March 11, 2018, Plaintiff mailed letters notifying each agency/entity contacted of the illegal/unconstitutional use of said technologies/weapons, further ordering that they instruct personnel working within their department(s)/agency/ies to immediately cease and desist from the ongoing use and/or coordination/complicity in the use of said technologies/weapons upon Plaintiff. Those letters were sent to the following: General David L. Goldfein, Air Force Chief of Staff; General Mark A. Milley, Army Chief of Staff; General Joseph L. Lengyel, Chief, National Guard Bureau; General Robert B. Neller, Commandant

of the Marine Corps; Patrick M. Shanahan, Deputy Secretary of Defense; Dr. Heather Wilson, Secretary of the Air Force; Dr. Mark Esper, Secretary of the Army; General Joseph N. Dunford, Jr., Chairman of the Joint Chiefs of Staff; General James N. Mattis, Secretary of Defense; General Paul J. Selva, Vice Chairman of the Joint Chiefs of Staff; Admiral John M. Richardson, Chief of Naval Operations; Richard Spencer, Secretary of the Navy; John C. Rood, Under Secretary of Defense (Policy) - none of these parties responded to Plaintiff's correspondence.

259.    On-or-about January 21, 2019, Plaintiff emailed correspondence to the office of (then) Senator of California, Kamala Harris, the subject of which stated "Complaint/request for assistance to Kamala Harris," the content of which disclosed the illegal/unconstitutional attacks on Plaintiff with said directed/energy mind/body control brain-computer interface technologies/weapons.

260.    On-or-about January 30, 2019, an email from Kamala D. Harris was sent to Plaintiff, expounding upon Senator Harris's acts to defend civil rights during her time as Attorney General of California, further expounding upon (then) Senator Harris's acknowledgement of "mounting threats to our constitutional rights" but addressing nothing of the actual context to Plaintiff's initial email to (then) Senator Harris.

261.    On-or-about January 24, 2022, Plaintiff mailed certified letters to twenty-four (24) federal and state departments/agencies Plaintiff had reason to believe to be involved in the direct use of said technologies/weapons and/or to have oversight over those operating said technologies/weapons domestically, in which Plaintiff requested each department/agency of the illegal/unconstitutional use of said directed energy technologies/weapons, further requesting that they cease and desist in the use of the same on Plaintiff and noticing each that Plaintiff would file a lawsuit(s) for the same if the conduct persisted. The letters were mailed to the following: Gavin Newsom, Governor of the State of California; Rob Bonta,

Attorney General for the State of California; Michelle Lujan, Governor of the State of New Mexico; Gretchen Whitmer, Governor of the State of Michigan; Hector Balderas, Attorney for the State of New Mexico; Dana Nessel, Attorney General for the State of Michigan; David Baldwin, Adjutant General for the State of California; Kenneth Nava, Adjutant General for the State of New Mexico; Paul Rogers, Adjutant General for the State of Michigan; Alex Villanueva, (then) Los Angeles County Sheriff; Michael Moore, Los Angeles City Chief of Police; Merrick Garland, U.S. Attorney General; Caroline Krauss, General Counsel at the Department of Defense; Ariane Cerlenko, General Counsel at the National Security Agency (NSA); Jason Jones, General Counsel at the Federal Bureau of Investigations (FBI); Courtney Ellwood, General Counsel at the Central Intelligence Agency (CIA); Chief Justice Tani G. Cantil-Sakauye, in her role with the Judicial Council of California; Vanessa Lynne Holton, General Counsel for the State Bar of California; Edward Hendrie, Chief Counsel for the Drug Enforcement Agency (DEA); Craig Smith, General Counsel for the Air Force; Carri Ricci, General Counsel for the Department of the Army; Sean Coffey, General Counsel for the Department of the Navy; Jonathan Meyer, General Counsel for the U.S. Department of Homeland Security, none of which sent a response to Plaintiff's correspondence.

262.   On-or-about June 15, 2022, Plaintiff sent notices (including SF-95 forms) for recovery of damages for the negligent and intentional harms done to Plaintiff by those running said technologies/weapons upon Plaintiff, as well as notices under the related state tort claims act laws for each of the states in which harm has been done to Plaintiff by those running said technologies/weapons. Those notices were sent to the following: Gavin Newsom, Governor of the State of California; Rob Bonta, Attorney General for the State of California; Michelle Lujan, Governor of the State of New Mexico; Gretchen Whitmer, Governor of the State of Michigan; Hector Balderas, Attorney for the State of New Mexico; Dana Nessel, Attorney

92

General for the State of Michigan; David Baldwin, Adjutant General for the State of California; Kenneth Nava, Adjutant General for the State of New Mexico; Paul Rogers, Adjutant General for the State of Michigan; Alex Villanueva, (then) Los Angeles County Sheriff; Michael Moore, Los Angeles City Chief of Police; Merrick Garland, U.S. Attorney General; Caroline Krauss, General Counsel at the Department of Defense; Ariane Cerlenko, General Counsel at the National Security Agency (NSA); Jason Jones, General Counsel at the Federal Bureau of Investigations (FBI); Courtney Ellwood, General Counsel at the Central Intelligence Agency (CIA); Chief Justice Tani G. Cantil-Sakauye, in her role with the Judicial Council of California; Vanessa Lynne Holton, General Counsel for the State Bar of California; Edward Hendrie, Chief Counsel for the Drug Enforcement Agency (DEA); Craig Smith, General Counsel for the Air Force; Carri Ricci, General Counsel for the Department of the Army; Sean Coffey, General Counsel for the Department of the Navy; Jonathan Meyer, General Counsel for the U.S. Department of Homeland Security; Richard C. Visek, Office of the Legal Adviser of the U.S. Department of State; Kathy Hochul, Governor of the State of New York; Letitia James, Attorney General for the State of New York; Major General Raymond Shields, Adjutant General for the State of New York; the clerk for the Los Angeles County Board of Supervisors; City Clerk for the City of Los Angeles; Keith Manes, Clerk or Authorized Agent for the County Board of Commissioners of Lea County, New Mexico; Barb Byrum, Clerk or Authorized Agent for the County Board of Commissioners of Ingham County, Michigan; Lawrence Kestenbaum, Clerk or Authorized Agent for the County Board of Commissioners of Washtenaw County; Chief August Fons, City of Hobbs, New Mexico Police Department; Jan Fletcher, City Clerk for the City of Hobbs, NM; the Risk Management Division for the State of New Mexico; the Department of General Services for the State of California; Clerks of the Courts of Claims of the third and fourth districts of Michigan; the Judicial Tenure Commission in the State of

93

Michigan; Diane Luce, District Attorney for Lea County, New Mexico; Government Claims Program in West Sacramento, California.

263.    In response to the notices sent by Plaintiff to those in the preceding paragraph, Plaintiff received the following responses: (1) On-or-about October 19, 2022, the Department of the Air Force issued a letter denying Plaintiff's tort claim; (2) August 30, 2022, Plaintiff received a notice from the U.S. Department of Justice, asserting that the U.S. Department of Justice would be "handling" Plaintiff's claim. On-or-about September 12, 2022, Plaintiff mailed a certified correspondence to the Civil Division, Torts Branch Paralegal who signed off on the letter to August 30, 2022, letter to Plaintiff, in which Plaintiff requested contact details to communicate directly with the Civil Division to resolve Plaintiff's tort claims with the Department, to which Plaintiff has received no response; (3) Some days following the date on which the letter is dated, that being June 21, 2022, Plaintiff received a notice of denial of Plaintiff's tort claim from the State Bar of California; (4) some days after the date on which the letter is dated, that being June 30, 2022, Plaintiff received a denial of Plaintiff's tort claim from the City of Los Angeles; (5) some days following the date on which the letter is dated, that being August 02, 2022, Plaintiff received a notice of denial of Plaintiff's tort claim from the Federal Bureau of Investigation; (6) some days following the date on which the letter is dated, that being July 07, 2022, Plaintiff received a notice of denial of Plaintiff's tort claim from the Department of the Army; following that initial notice of denial, (7) some days following the dates of subsequent letters sent from the Department of Army, dated September 08, 2022, and September 13, 2022, Plaintiff received notices of denial of Plaintiff's tort claim (again) from the Department of Army; (8) some days after the date on which the correspondence is dated, that being June 21, 2022, Plaintiff received acknowledgement that Plaintiff's tort claim submitted to the Court of Claims for the State of Michigan had been received and assigned a tracking number of 22-200126-o, the District of the Court responding is not

---

included on the response; (9) some days after the date on which the correspondence is dated, that being June 24, 2022, Plaintiff received acknowledgement that Plaintiff's tort claim submitted to the Court of Claims for the State of Michigan had been received and assigned a tracking number of 22-200133-o, the District of the Court responding is not included on the response; (10) some days after the date on which the postage stamp on the envelope is dated, that being September 13, 2022, Plaintiff received a letter with a salutation to a "Ms. Patterson," denying Plaintiff's tort claim that was submitted to the Drug Enforcement Agency, asserting that Plaintiff had not submitted an SF-95, which is incorrect – this was not an effective denial of Plaintiff's claim as letter is addressed to a Ms. Patterson and does not properly state the facts of Plaintiff's SF-95 submission, as Plaintiff properly submitted an SF-95 with Plaintiff's Federal Tort Claims Act notice; (11) some days after the date on which the correspondence is dated, that being June 27, 2022, Plaintiff received a general denial, based on the timing of Plaintiff's tort claim(s), for the Los Angeles County Board of Supervisors. On-or-about July 18, 2022, Plaintiff mailed an additional correspondence to the Los Angeles County Board of Supervisors, expressing the deliberate interference with Plaintiff discovering the source of the harms done to Plaintiff as well as the equitable tolling required as a result of said interference. Some days after the date on which the correspondence is dated, that being August 01, 2022, Plaintiff (again) received a general denial, based on the timing of Plaintiff's tort claim(s), from the Los Angeles County Board of Supervisors. (12) Some days after the date on which the correspondence is dated, that being July 14, 2022, Plaintiff received a denial of Plaintiff's tort claims, from the Department of Army on behalf of the State of Michigan National Guard, citing case law which had not relevance to the claim that Plaintiff submitted and further attempting to require an exact timeline when the facts of Plaintiff's claim(s) clearly allege the entire course-of-conduct (harassment/stalking) and literal control over Plaintiff's mind and body by those

95

intentionally preventing Plaintiff from pursuing legal recourse. The letter further erroneously states that Plaintiff's claim was "defective." On August 01, 2022, Plaintiff emailed the Army personnel who drafted the July 14, 2022, letter to Plaintiff. In that email, Plaintiff reasserted the justice obstructing tactics being used by those running said technologies/weapons, the fraudulent concealment those running said technologies/weapons are guilty of, Plaintiff provided the actual United States Code, Code of Federal regulations, as well as case law supporting that Plaintiff's claim was not defective and met the requirements. Plaintiff has received no further correspondence back from the individual with the Department of Army who corresponded on behalf of the Michigan National Guard – note (6) and (7) in this paragraph, as the Department of Army denied Plaintiff's tort claim(s).

264.   Defendants' continuous and ongoing use of said directed-energy technologies/weapons to control the thoughts and/or actions of any un-consenting U.S. citizen (including Plaintiff) on U.S. soil, with the intent being to neuromodulate, substitute/imbue/replace the thoughts in their minds and/or manipulate the physical conditions and functions of their bodies, with the intent being to fabricate/orchestrate artificial paths/realties in the lives of those individuals (including Plaintiff), does not fall under any protected national security interest, nor do the ongoing use of the same technologies/weapons constitute a quick, instantaneous, and/or limited use of the same to address an exigent circumstance for a brief period until proper legal channels can be engaged to address whatever purported legal justification those running said technologies/weapons claim as their legal necessity for their use of the same to deprive Plaintiff of Plaintiff's constitutional rights and to attack Plaintiff - the ongoing deprivations of Plaintiff's rights are unwarranted and unacceptable given the exact nature of the use and function of said technologies/weapons upon Plaintiff.

265.   State and local level government defendants intentionally, knowingly, and willfully participate in the illegal/unconstitutional ongoing use of said technologies/weapons, thereby intentionally, knowingly, and willfully violating the fundamental, civil, and (basic) human rights of U.S. citizens (including Plaintiff) and further prevent, hinder, and/or delay the ability of U.S. citizens (including Plaintiff) of relief from the same in legitimate courts of the United States. Related state law causes of action sounding in tort and conspiracy have been filed in a separate state court lawsuit against parties acting in concert with the actions alleged herein but for which relief is sought for wholly (aside from 42 U.S.C. §1985, asserted there as well as within this Complaint) state law causes of action resulting from state and local level actors acting in concert with the federal and state actors over which this court has jurisdiction for the claims Plaintiff asserts herein.

266.   The capabilities, use of, and source(s) of the use of the directed energy mind/body control brain-computer interface technologies/weapons was (for many years) and continues to be intentionally, knowingly, and willfully concealed by Defendants.

267.   State and local level government defendants intentionally, knowingly, and willfully participate in the illegal/unconstitutional ongoing use of said technologies/weapons, thereby intentionally, knowingly, and willfully violating the fundamental, civil, and (basic) human rights of U.S. citizens (including Plaintiff) and further prevent, hinder, and/or delay the ability of U.S. citizens (including Plaintiff) of relief from the same in legitimate courts of the United States.

268.   The identities of those running said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons on Plaintiff, working for/with Defendants remains deliberately concealed from Plaintiff while the attacks upon Plaintiff using the same persist.

269.    The response by those running said technologies/weapons has been a full scale, ongoing, twenty-four (24) hour-a-day, seven-day-a-week, ongoing series of attacks using the directed energy technologies/weapons to inflict intentional and ongoing harm and suffering unto Plaintiff. The attacks have been ongoing since 2016.

270.    Those running said technologies/weapons intentionally impair Plaintiff's ability to think, thereby intentionally harming Plaintiff in all areas of life, personal and professional.

271.    Those running said technologies/weapons have and continue to impair/inhibit Plaintiff's ability to cognitively reason and to act upon Plaintiff's own volition, thereby (for literally years) intentionally preventing Plaintiff from legitimately pursuing legal and equitable redress for the same from the courts.

272.    Those running said technologies/weapons have allowed Plaintiff to file and/or communicate about the illegal/unconstitutional use of said technologies/weapons upon Plaintiff while simultaneously then preventing Plaintiff from taking any further action(s) to address the ongoing illegal/unconstitutional use of said technologies/weapons upon Plaintiff. Those running said technologies/weapons have effectuated this outcome by (very literally) targeting Plaintiff's head/mind and turning the directed energy technologies/weapons up to the point when Plaintiff can literally not function cognitively and/or make volitional choices to take action in one way or another. Thereby, those running said technologies/weapons upon Plaintiff have attempted to keep Plaintiff confined within the parameters of the current link in the chain of total immersion scenarios to prevent themselves from answering for the legal consequences of their actions, all while simultaneously, relentlessly attacking Plaintiff with the microwave weapons-style use of said technologies/weapons to criminally stalk, criminally harass, and (very literally) 'torture' (as the term is defined under both federal and state law) Plaintiff as he attempts to go about his life.

273.     Defendants have attempted to keep Plaintiff confined within the parameters of the current link in the chain of total immersion scenarios to prevent themselves from answering for the legal consequences of their actions, all while simultaneously, relentlessly attacking Plaintiff with the microwave weapons-style use of said technologies/weapons to criminally stalk, criminally harass, and (very literally) 'torture' (as the term is defined under both federal and state law) Plaintiff as he attempts to go about his life.

274.     Since the time when Defendants revealed (at least in part) the existence of, capabilities of, and active use of said technologies/weapons upon Plaintiff at the end of 2016/beginning of 2017, the exact identities of those running said technologies/weapons still being concealed from Plaintiff at the time when Defendants revealed the same, Defendants have engaged in twenty-four (24) hour-a-day, seven (7)-day-a-week, intentional interference with every aspect of Plaintiff's life, including cognitive and volitional functions, to actively prevent Plaintiff from filing and seeing through legal action against those running said technologies/weapons.

275.     Defendants attempt to embed Defendants' wrongful use of said technologies/weapons upon Plaintiff into tangible scenarios and events that are carried out at the level of and within the physical surroundings in which Plaintiff functions, those being the towns, cities, states, school environments, work environments, and social environments in which Plaintiff is moved through and functions in, thereby Defendants rely upon the constitutional rights of the States' sovereign immunity while thereby attempting to confound those who are attacked (as is Plaintiff) in their attempts to address and/or remedy the illegal/unconstitutional course of action which are the gravamen of (this) Plaintiff's Complaint, as the fabrications/orchestrations engineered at the federal level are incorporated into the State, local, and community level with individuals who are not all (if any are) 'government actors' in the legal sense of that term, which is one

COMPLAINT

method by which Defendants attempt to confound those upon whom said technologies/weapons are used, as concealment of the source of the use of said technologies/weapons with the end result being manifest in the very lives individuals, including Plaintiff, are moved through (and believe they are leading), is designed to both confound the individuals upon whom said technologies/weapons are used as well as to attempt to create jurisdictional issues (legally) for those individuals, including Plaintiff, upon whom said technologies/weapons are being illegally/unconstitutionally used.

276.    Defendants at the level of State and local governments, as well as those Defendants who are not government actors but who are U.S. citizens and/or civilians are thereby directly made a function of Defendants' fabrications/orchestrations/manipulations, (again) as a method by which Defendants attempt to both confound the individuals upon whom said technologies/weapons are used as well as to attempt to create jurisdictional issues (legally) for those individuals, including Plaintiff, upon whom said technologies/weapons are being illegally/unconstitutionally used.

277.    Defendants attempt to embed Defendants' wrongful use of said technologies/weapons upon Plaintiff into tangible scenarios and events that are carried out at the level of and within the physical surroundings in which Plaintiff functions, those being the towns, cities, states, school environments, work environments, and social environments in which Plaintiff is moved through and functions in, thereby Defendants rely upon the constitutional rights of the States' sovereign immunity while thereby attempting to confound those who are attacked (as is Plaintiff) in their attempts to address and/or remedy the illegal/unconstitutional course of action which are the gravamen of (this) Plaintiff's Complaint, as the fabrications/orchestrations engineered at the federal level are incorporated into the State, local, and community level with individuals who are not all (if any are) 'government actors' in the legal sense of that term, which is one

method by which Defendants attempt to confound those upon whom said technologies/weapons are used, as concealment of the source of the use of said technologies/weapons with the end result being manifest in the very lives individuals, including Plaintiff, are moved through (and believe they are leading), is designed to both confound the individuals upon whom said technologies/weapons are used as well as to attempt to create jurisdictional issues (legally) for those individuals, including Plaintiff, upon whom said technologies/weapons are being illegally/unconstitutionally used.

278.    Defendants at the level of State and local governments, as well as those Defendants who are not government actors but who are U.S. citizens and/or civilians are thereby directly made a function of Defendants' fabrications/orchestrations/manipulations and/or some State and local governments and individuals work in concert with the federal orchestrations/fabrications to frame false social and/or political narratives at the state and/or local levels, (again) as a method by which Defendants attempt to both confound the individuals upon whom said technologies/weapons are used as well as to attempt to create jurisdictional issues (legally) for those individuals, including Plaintiff, upon whom said technologies/weapons are being illegally/unconstitutionally used.

279.    Plaintiff has resisted the force/coercion of those running said technologies/weapons which has resulted in those running the same increasing the level of harms directed at Plaintiff, (apparently) as attempts to force/coerce Plaintiff to capitulate to and align with the illegal/unconstitutional conduct/acts of those running said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons, ultimately resulting in those running said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons inflicting ongoing/perpetual harms to Plaintiff which has resulted in both serious bodily injury to Plaintiff, as well as mimicking serious bodily injury to Plaintiff, as well

as intentionally depriving Plaintiff of protected constitutional right, liberties, and equal protection of the laws, furthering resulting in ongoing acts that amount to literal 'torture' of Plaintiff, as that term is defined in both federal and California State laws, via the illegal/unconstitutional attacks upon Plaintiff with directed/energy technologies/weapons.

280.    Plaintiff was not provided with notice of, nor did Plaintiff participate in any formal hearing(s) during which the use of said technologies/weapons upon Plaintiff were either ordered (the constitutionality of which would automatically be in question as well) and/or agreed upon by Plaintiff.

281.    Plaintiff has never consented to the use of said technologies/weapons upon Plaintiff.

282.    Plaintiff's location has at all times relevant to this lawsuit been known to those individuals running said technologies/weapons.

283.    Plaintiff has at all times relevant to this lawsuit been and remains in the jurisdiction of the fully functioning United States Federal and State Court systems.

284.    At no time during the entirety of Plaintiff's life, during times when said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons have been used upon Plaintiff, has martial law been declared by the United State government.

285.    Those running said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons have attempted and continue attempting to trap Plaintiff within Plaintiff's own life, depriving Plaintiff of fundamental rights, asserting (via thoughts imbued to Plaintiff via use of said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons) that those running said technologies/weapons will further harm and attempt to discredit and defame Plaintiff, going so far as to engage in acts amounting to 'torture' (as that term is defined under federal and state law) Plaintiff as Plaintiff attempts to engage in activities of daily life (i.e. while attempting to eat, sleep, exercise, work

102

(interfering with Plaintiff's ability to think and make decisions at work), preventing Plaintiff from being able to prepare for and pass the California State Bar Examination (Plaintiff is literally prevented from being able to read bar review materials), preventing Plaintiff from meeting a woman/women for a personal relationship(s) and affecting Plaintiff's ability to interact with others via deliberate attacks on Plaintiff's mind), the implication being that if Plaintiff capitulates to and acts in concert with Defendants' illegal/unconstitutional use of said technologies/weapons then Plaintiff will be given the opportunity to enjoy all of the foregoing and a life in which Plaintiff is not actively attacked twenty (24) hours-a-day, seven (7) days-a-week, at least for so long as Plaintiff continues to acquiesce to and go along with the illegal/unconstitutional use of said technologies/weapons, which (thereby, as stated previously in (this) Plaintiff's Complaint) requires Plaintiff to accept all prior fabrications/orchestrations while simultaneously (thereby) consenting to all future fabrications/orchestrations, which are in complete contravention to Plaintiff's (most basic) human, civil, and fundamental rights. Capitulation by Plaintiff simply does not make sense and would be a decision that would make Plaintiff a co-conspirator in Defendants' illegal/unconstitutional use of said mind/body control brain-computer interface technologies/weapons upon the civilian population domestically within the United States.

286.    Plaintiff is seeking to recover compensatory damages: general damages including loss of enjoyment, emotional distress, pain and suffering in amounts to be proven at trial, special damages in amounts to be proven at trial including Plaintiff's debt (including student loan debt) that has been forced to remain unpaid while accumulating additional interest) during such time as Plaintiff continues being held in the ongoing scenarios and prevented from advancing professionally, also including cost for medical services to address and treat the injuries and harms done to Plaintiff with said directed energy technologies/weapons in an amount

Plaintiff is in the process of investigating and determining, for loss of income, for loss of personal property, for out of pocket expenses, for attorney's fees (Plaintiff's time spent in Pro per), for prejudgment interest for according to proof, for punitive and exemplary damages in an amount to be ascertained at trial, for injunctive relief to stop the current use and prevent future/ongoing use of said technologies/weapons, and for such other relief as the court deems appropriate.

## FIFTH CAUSE OF ACTION
### FRAUDULENT CONCEALMENT
### (Against all defendants)

287.    The exact identities of the perpetrators of the tortious harms done to Plaintiff, those who sit at the controls of said directed energy technologies/weapons and use them to inflict serious bodily injury (including mimicking serious bodily (and mental) injury) to Plaintiff have been and continue to be deliberately fraudulently concealed from discovery by Plaintiff – Plaintiff will name DOE Defendants who are personally culpable for the intentional harms done to Plaintiff with said technologies/weapons at the soonest possible time as Defendants and the government's attorneys make required disclosures and discovery enables Plaintiff to discover the exact identities of those who remain sequestered and remotely, ongoingly harm and attack Plaintiff with said directed energy technologies/weapons.

288.    Remote directed energy technologies/weapons are being (and have, for many years, been) used to control and manipulate Plaintiff's thoughts and actions, impairing and/or augmenting Plaintiff's cognitive abilities and mimicking volitional choice(s) by imbuing and/or neuromodulating Plaintiff's unadulterated thoughts using electrical brain stimulation techniques remotely administered using directed energy technologies/weapons.

289.    Use of the directed-energy mind/body control brain-computer interface

COMPLAINT

technologies/weapons upon Plaintiff have been and continue to be coordinated with the tangible physical surroundings and tangible events occurring in Plaintiff's life, thereby creating a series of linked ongoing tangible physical environments that are coordinated using the remote administration/application of said directed-energy technologies/weapons upon Plaintiff and other individuals in those physical environments to create environments in which the parameters and the individuals therein are thereby synchronized with said technologies/weapons to fabricate/orchestrate entirely staged scenarios that simultaneously misrepresent Plaintiff's true persona, intellect, cognition, and volition while imbuing thoughts and controlling/regulating bodily and mental functions of Plaintiff, thereby fully depriving Plaintiff of protected fundamental (civil) rights, freedoms, and liberties, while continuously moving Plaintiff from one scenario to the next without ever breaking the control exerted over Plaintiff via the directed-energy mind/body control brain-computer interface technologies/weapons.

290.   Attempts to substitute the fabrications/orchestrations (created by those running said technologies/weapons) for Plaintiff's unadulterated (without the use of said technologies/weapons) 'reality'/life have been unsuccessful.

291.   Plaintiff has been (and continues being) attacked by those running said technologies/weapons and severely limited in all areas of Plaintiff's life, personally and professionally, physically and mentally by those running said technologies/weapons as they to attempt to create leverage against Plaintiff, to force/coerce Plaintiff into acceptance of the fabrications/orchestrations those running said technologies/weapons have attempted to create.

292.   The ongoing conduct of those running said technologies/weapons and Plaintiff's resistance thereto, have resulted in those running said technologies/weapons using the same to engage in conduct that has resulted in literal "torture" (as the term is defined under 18 U.S.C. §2340 and Cal. Penal Code §206) of Plaintiff, administered throughout the day-and-night, as Plaintiff attempts

to live his life (i.e. work, gym, relationships) domestically, within the United States.

293.  The gravamen of this Complaint is for the ongoing course-of-conduct harassment, stalking, complete deprivations of and intentional violations of Plaintiff's fundamental rights, civil rights, and (most basic) human rights, which are inherent in the very intentional concealment and use of said technologies/weapons, by those running said technologies/weapons.

294.  Notably, a California State Court action was filed by California attorneys, on behalf of Plaintiff, for complete destruction of Plaintiff's personal property, which was all inside the room in which Plaintiff was living at the time of a building fire that occurred on February 07, 2020, as well as personal injury sustained by Plaintiff, as Plaintiff attempted flee the building as the entire building was engulfed in smoke and flames.

295.  Defendants, via the use of said technologies/weapons coordinated with Plaintiff's tangible physical surroundings, that Plaintiff was living in the building at the time of said fire, said lawsuit being one which Plaintiff repeatedly told the California attorneys who filed it that it could not be properly filed in California State Court, as the gravamen of (this) Plaintiff's instant Complaint before this court are/were the actual legal bases for any civil action Plaintiff had at the time of the building fire.

296.  Following the building fire on February 07, 2020, Plaintiff relocated to a short-term apartment located in San Pedro, California.

297.  A property directly across the street from Plaintiff's short-term apartment set up loudspeakers and hosted parties with individuals who became extremely rowdy, setting off M-80 style explosives which would set off car alarms in the surrounding neighborhood, smashing glass bottles, and carrying on loudly into overnight hours – it bears repeating, Plaintiff has continued being heavily controlled via the directed energy technologies weapons since before the time of the fire through the

COMPLAINT

time of Plaintiff filing this instant Complaint with this court.

298.    Several of the cars regularly parked around and near the home where the parties were held had stickers displaying military branches (i.e. Marines, Air Force, etc.).

299.    Plaintiff called the local police department several times asking for the police to come by to ask the neighbors to turn the music down as it was in violation of municipal codes, but police never responded.

300.    On January 31, 2021, Plaintiff felt himself controlled but could not prevent the exertion of the control over Plaintiff as he walked down to the street and yelled across the street, asking for the neighbors to turn the music down.

301.    One individual came across the street, as Plaintiff was recording the scene with Plaintiff's cell phone, grabbed Plaintiff's cell phone from Plaintiff's hands, and threw Plaintiff to the ground as Plaintiff bent down to pick up the cell phone – Plaintiff felt himself controlled by said technologies/weapons as Plaintiff could not react/respond.

302.    Plaintiff had a picture of the individual who attacked Plaintiff, and Plaintiff filed a police report that night, as Plaintiff's knee was injured when Plaintiff was thrown to the ground.

303.    Upon contacting Detective Jacinto Zavala, who Plaintiff learned was investigating the attack on Plaintiff, Plaintiff fully disclosed the illegal/unconstitutional use of said technologies/weapons upon Plaintiff, learned the Detective Zavala had a military background as well and (when asked about said technologies/weapons) Detective Zavala would not say that he did not know of them.

304.    Plaintiff sent several emails, photos, videos, supporting Plaintiff's side of the matter to Detective Zavala to no avail, as Plaintiff wanted to learn the identity of the attacker for purposes of a civil lawsuit as well as to investigate (this) Plaintiff's instant federal cause of action with this court.

305.    Detective Zavala never located the attacker, even with a close-up photograph Plaintiff provided to Detective Zavala of the individual.

306.    Plaintiff emailed Detective Zavala's supervisor and received no response.

307.    The attack on Plaintiff on January 31, 2021, was entirely staged, and the Los Angeles Police Department Detective assigned to it intentionally disregarded it.

308.    Based upon evidence, information and belief, Plaintiff's family's connections to and work with(in) the government, notably the Department of Defense (DoD) and/or intelligence community domestically created a set of conditions in which Plaintiff's family members were told they were to keep the use of said technologies/weapons concealed (a secret) from Plaintiff, which facilitated the direct use of said technologies/weapons upon Plaintiff while providing a barrier of protection for those running said technologies/weapons upon Plaintiff, as Plaintiff's immediate family were thereby incorporated into the use of said technologies/weapons upon Plaintiff and would not raise issue with the use of said technologies/weapons upon Plaintiff, as Plaintiff's family members either intentionally, knowingly, and willfully participate(d) in the use of said technologies/weapons upon Plaintiff or Plaintiff's family members were led to believe a false set of conditions which led them to believe that there was/is some legitimate legal justification for the deprivation of Plaintiff's rights without affording Plaintiff protections of fundamental rights and civil rights.

309.    Those running said technologies/weapons have actively attempted to provide legal cover for themselves by manipulating Plaintiff (who is a law school graduate), allowing Plaintiff to communicate and/or initiate some form of legal proceedings and/or correspondence(s) with federal, state, and local departments/agencies/entities but then using said technologies/weapons to literally prevent Plaintiff from timely pursuing the initial communications/notices Plaintiff communicated, thereby (apparently) attempting to avoid legal repercussions by asserting claims that statutes of limitations have expired, despite those running said

108

COMPLAINT

technologies/weapons actually (based upon their very conduct/actions) equitably tolling the statutes of limitations, as those running said technologies/weapons use said technologies/weapons to (very literally) mentally incapacitate and control Plaintiff to prevent Plaintiff from timely following up.

310.    Plaintiff's ability to follow-up on each prior communication with the several federal, state, and local government agencies/entities has been interfered with and prevented by those running said technologies/weapons, preventing Plaintiff from timely follow-up immediately following the initial communication(s) made by Plaintiff.

311.    On-or-about March 19, 2022, Plaintiff mailed letters to three California State Court judges: Judge Barbara Scheper, Judge Cynthia Ulfig, and Judge Daniel Feldstern, each of which had roles in the fabrications/orchestrations of those running said technologies/weapons fabricating/orchestrating scenarios in Plaintiff's life during the year 2006 and 2007, at times when Plaintiff was fully aware that Plaintiff was being falsely framed in fabricated/orchestrated scenarios but did not know of and/or suspect the intentional existence and use of said technologies/weapons on U.S. citizens/civilians at that time - none of these parties responded to Plaintiff's correspondence.

312.    On-or-about March 11, 2018, Plaintiff mailed letters notifying each agency/entity contacted of the illegal/unconstitutional use of said technologies/weapons, further ordering that they instruct personnel working within their department(s)/agency/ies to immediately cease and desist from the ongoing use and/or coordination/complicity in the use of said technologies/weapons upon Plaintiff. Those letters were sent to the following: General David L. Goldfein, Air Force Chief of Staff; General Mark A. Milley, Army Chief of Staff; General Joseph L. Lengyel, Chief, National Guard Bureau; General Robert B. Neller, Commandant of the Marine Corps; Patrick M. Shanahan, Deputy Secretary of Defense; Dr. Heather Wilson, Secretary of the Air Force; Dr. Mark Esper, Secretary of the

COMPLAINT

Army; General Joseph N. Dunford, Jr., Chairman of the Joint Chiefs of Staff; General James N. Mattis, Secretary of Defense; General Paul J. Selva, Vice Chairman of the Joint Chiefs of Staff; Admiral John M. Richardson, Chief of Naval Operations; Richard Spencer, Secretary of the Navy; John C. Rood, Under Secretary of Defense (Policy) - none of these parties responded to Plaintiff's correspondence.

313.   On-or-about January 21, 2019, Plaintiff emailed correspondence to the office of (then) Senator of California, Kamala Harris, the subject of which stated "Complaint/request for assistance to Kamala Harris," the content of which disclosed the illegal/unconstitutional attacks on Plaintiff with said directed/energy mind/body control brain-computer interface technologies/weapons.

314.   On-or-about January 30, 2019, an email from Kamala D. Harris was sent to Plaintiff, expounding upon Senator Harris's acts to defend civil rights during her time as Attorney General of California, further expounding upon (then) Senator Harris's acknowledgement of "mounting threats to our constitutional rights" but addressing nothing of the actual context to Plaintiff's initial email to (then) Senator Harris.

315.   On-or-about January 24, 2022, Plaintiff mailed certified letters to twenty-four (24) federal and state departments/agencies Plaintiff had reason to believe to be involved in the direct use of said technologies/weapons and/or to have oversight over those operating said technologies/weapons domestically, in which Plaintiff requested each department/agency of the illegal/unconstitutional use of said directed energy technologies/weapons, further requesting that they cease and desist in the use of the same on Plaintiff and noticing each that Plaintiff would file a lawsuit(s) for the same if the conduct persisted. The letters were mailed to the following: Gavin Newsom, Governor of the State of California; Rob Bonta, Attorney General for the State of California; Michelle Lujan, Governor of the State of New Mexico; Gretchen Whitmer, Governor of the State of Michigan; Hector

Balderas, Attorney for the State of New Mexico; Dana Nessel, Attorney General for the State of Michigan; David Baldwin, Adjutant General for the State of California; Kenneth Nava, Adjutant General for the State of New Mexico; Paul Rogers, Adjutant General for the State of Michigan; Alex Villanueva, (then) Los Angeles County Sheriff; Michael Moore, Los Angeles City Chief of Police; Merrick Garland, U.S. Attorney General; Caroline Krauss, General Counsel at the Department of Defense; Ariane Cerlenko, General Counsel at the National Security Agency (NSA); Jason Jones, General Counsel at the Federal Bureau of Investigations (FBI); Courtney Ellwood, General Counsel at the Central Intelligence Agency (CIA); Chief Justice Tani G. Cantil-Sakauye, in her role with the Judicial Council of California; Vanessa Lynne Holton, General Counsel for the State Bar of California; Edward Hendrie, Chief Counsel for the Drug Enforcement Agency (DEA); Craig Smith, General Counsel for the Air Force; Carri Ricci, General Counsel for the Department of the Army; Sean Coffey, General Counsel for the Department of the Navy; Jonathan Meyer, General Counsel for the U.S. Department of Homeland Security, none of which sent a response to Plaintiff's correspondence.

316.    On-or-about June 15, 2022, Plaintiff sent notices (including SF-95 forms) for recovery of damages for the negligent and intentional harms done to Plaintiff by those running said technologies/weapons upon Plaintiff, as well as notices under the related state tort claims act laws for each of the states in which harm has been done to Plaintiff by those running said technologies/weapons. Those notices were sent to the following: Gavin Newsom, Governor of the State of California; Rob Bonta, Attorney General for the State of California; Michelle Lujan, Governor of the State of New Mexico; Gretchen Whitmer, Governor of the State of Michigan; Hector Balderas, Attorney for the State of New Mexico; Dana Nessel, Attorney General for the State of Michigan; David Baldwin, Adjutant General for the State of California; Kenneth Nava, Adjutant General for the State of New Mexico; Paul

111

Rogers, Adjutant General for the State of Michigan; Alex Villanueva, (then) Los Angeles County Sheriff; Michael Moore, Los Angeles City Chief of Police; Merrick Garland, U.S. Attorney General; Caroline Krauss, General Counsel at the Department of Defense; Ariane Cerlenko, General Counsel at the National Security Agency (NSA); Jason Jones, General Counsel at the Federal Bureau of Investigations (FBI); Courtney Ellwood, General Counsel at the Central Intelligence Agency (CIA); Chief Justice Tani G. Cantil-Sakauye, in her role with the Judicial Council of California; Vanessa Lynne Holton, General Counsel for the State Bar of California; Edward Hendrie, Chief Counsel for the Drug Enforcement Agency (DEA); Craig Smith, General Counsel for the Air Force; Carri Ricci, General Counsel for the Department of the Army; Sean Coffey, General Counsel for the Department of the Navy; Jonathan Meyer, General Counsel for the U.S. Department of Homeland Security; Richard C. Visek, Office of the Legal Adviser of the U.S. Department of State; Kathy Hochul, Governor of the State of New York; Letitia James, Attorney General for the State of New York; Major General Raymond Shields, Adjutant General for the State of New York; the clerk for the Los Angeles County Board of Supervisors; City Clerk for the City of Los Angeles; Keith Manes, Clerk or Authorized Agent for the County Board of Commissioners of Lea County, New Mexico; Barb Byrum, Clerk or Authorized Agent for the County Board of Commissioners of Ingham County, Michigan; Lawrence Kestenbaum, Clerk or Authorized Agent for the County Board of Commissioners of Washtenaw County; Chief August Fons, City of Hobbs, New Mexico Police Department; Jan Fletcher, City Clerk for the City of Hobbs, NM; the Risk Management Division for the State of New Mexico; the Department of General Services for the State of California; Clerks of the Courts of Claims of the third and fourth districts of Michigan; the Judicial Tenure Commission in the State of Michigan; Diane Luce, District Attorney for Lea County, New Mexico; Government Claims Program in West Sacramento, California.

317.     In response to the notices sent by Plaintiff to those in the preceding paragraph, Plaintiff received the following responses: (1) On-or-about October 19, 2022, the Department of the Air Force issued a letter denying Plaintiff's tort claim; (2) August 30, 2022, Plaintiff received a notice from the U.S. Department of Justice, asserting that the U.S. Department of Justice would be "handling" Plaintiff's claim. On-or-about September 12, 2022, Plaintiff mailed a certified correspondence to the Civil Division, Torts Branch Paralegal who signed off on the letter to August 30, 2022, letter to Plaintiff, in which Plaintiff requested contact details to communicate directly with the Civil Division to resolve Plaintiff's tort claims with the Department, to which Plaintiff has received no response; (3) Some days following the date on which the letter is dated, that being June 21, 2022, Plaintiff received a notice of denial of Plaintiff's tort claim from the State Bar of California; (4) some days after the date on which the letter is dated, that being June 30, 2022, Plaintiff received a denial of Plaintiff's tort claim from the City of Los Angeles; (5) some days following the date on which the letter is dated, that being August 02, 2022, Plaintiff received a notice of denial of Plaintiff's tort claim from the Federal Bureau of Investigation; (6) some days following the date on which the letter is dated, that being July 07, 2022, Plaintiff received a notice of denial of Plaintiff's tort claim from the Department of the Army; following that initial notice of denial, (7) some days following the dates of subsequent letters sent from the Department of Army, dated September 08, 2022, and September 13, 2022, Plaintiff received notices of denial of Plaintiff's tort claim (again) from the Department of Army; (8) some days after the date on which the correspondence is dated, that being June 21, 2022, Plaintiff received acknowledgement that Plaintiff's tort claim submitted to the Court of Claims for the State of Michigan had been received and assigned a tracking number of 22-200126-o, the District of the Court responding is not included on the response; (9) some days after the date on which the correspondence is dated, that being June 24, 2022, Plaintiff received acknowledgement that

Plaintiff's tort claim submitted to the Court of Claims for the State of Michigan
had been received and assigned a tracking number of 22-200133-o, the District of
the Court responding is not included on the response; (10) some days after the date
on which the postage stamp on the envelope is dated, that being September 13,
2022, Plaintiff received a letter with a salutation to a "Ms. Patterson," denying
Plaintiff's tort claim that was submitted to the Drug Enforcement Agency,
asserting that Plaintiff had not submitted an SF-95, which is incorrect – this was
not an effective denial of Plaintiff's claim as letter is addressed to a Ms. Patterson
and does not properly state the facts of Plaintiff's SF-95 submission, as Plaintiff
properly submitted an SF-95 with Plaintiff's Federal Tort Claims Act notice; (11)
some days after the date on which the correspondence is dated, that being June 27,
2022, Plaintiff received a general denial, based on the timing of Plaintiff's tort
claim(s), for the Los Angeles County Board of Supervisors. On-or-about July 18,
2022, Plaintiff mailed an additional correspondence to the Los Angeles County
Board of Supervisors, expressing the deliberate interference with Plaintiff
discovering the source of the harms done to Plaintiff as well as the equitable tolling
required as a result of said interference. Some days after the date on which the
correspondence is dated, that being August 01, 2022, Plaintiff (again) received a
general denial, based on the timing of Plaintiff's tort claim(s), from the Los
Angeles County Board of Supervisors. (12) Some days after the date on which the
correspondence is dated, that being July 14, 2022, Plaintiff received a denial of
Plaintiff's tort claims, from the Department of Army on behalf of the State of
Michigan National Guard, citing case law which had not relevance to the claim
that Plaintiff submitted and further attempting to require an exact timeline when
the facts of Plaintiff's claim(s) clearly allege the entire course-of-conduct
(harassment/stalking) and literal control over Plaintiff's mind and body by those
intentionally preventing Plaintiff from pursuing legal recourse. The letter further
erroneously states that Plaintiff's claim was "defective." On August 01, 2022,

COMPLAINT

Plaintiff emailed the Army personnel who drafted the July 14, 2022, letter to Plaintiff. In that email, Plaintiff reasserted the justice obstructing tactics being used by those running said technologies/weapons, the fraudulent concealment those running said technologies/weapons are guilty of, Plaintiff provided the actual United States Code, Code of Federal regulations, as well as case law supporting that Plaintiff's claim was not defective and met the requirements. Plaintiff has received no further correspondence back from the individual with the Department of Army who corresponded on behalf of the Michigan National Guard – note (6) and (7) in this paragraph, as the Department of Army denied Plaintiff's tort claim(s).

318.    Defendants and/or contractors working therefor have operated said technologies/weapons to control Plaintiff, who, until those running said technologies/weapons deliberately revealed the same to Plaintiff at the end of 2016, beginning of 2017) had no knowledge of the (full) capabilities of said technologies/weapons, while the full capabilities, existence and use of said technologies/weapons are now and have been for several decades concealed from Plaintiff and the general public (U.S. citizens living on U.S. soil), as use of the same technologies/weapons are not discussed in the mainstream media, their use being such an egregious violation of constitutional protections that it shocks the conscience of unsuspecting U.S. citizens that the same are being secretly used by Defendants and other federal and state government entities, on U.S. citizens (including Plaintiff), on U.S. soil, in direct contravention to the U.S. Constitution as a form of unspoken government manipulation, control, and literally a system of government run by unelected, administrative government personnel, the system being one which is not ratified by the individual states and of which the general population has no knowledge.

319.    The capabilities, use of, and source(s) of the use of the directed energy mind/body control brain-computer interface technologies/weapons was (for many

years) and continues to be intentionally, knowingly, and willfully concealed by Defendants.

320.    State and local level government defendants intentionally, knowingly, and willfully participate in the illegal/unconstitutional ongoing use of said technologies/weapons, thereby intentionally, knowingly, and willfully violating the fundamental, civil, and (basic) human rights of U.S. citizens (including Plaintiff) and further prevent, hinder, and/or delay the ability of U.S. citizens (including Plaintiff) of relief from the same in legitimate courts of the United States.

321.    The identities of those running said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons on Plaintiff, working for/with Defendants remains deliberately concealed from Plaintiff while the attacks upon Plaintiff using the same persist.

322.    The response by those running said technologies/weapons has been a full scale, ongoing, twenty-four (24) hour-a-day, seven-day-a-week, ongoing series of attacks using the directed energy technologies/weapons to inflict intentional and ongoing harm and suffering unto Plaintiff. The attacks have been ongoing since 2016.

323.    Those running said technologies/weapons intentionally impair Plaintiff's ability to think, thereby intentionally harming Plaintiff in all areas of life, personal and professional.

324.    Those running said technologies/weapons have and continue to impair/inhibit Plaintiff's ability to cognitively reason and to act upon Plaintiff's own volition, thereby (for literally years) intentionally preventing Plaintiff from legitimately pursuing legal and equitable redress for the same from the courts.

325.    Those running said technologies/weapons have allowed Plaintiff to file and/or communicate about the illegal/unconstitutional use of said technologies/weapons upon Plaintiff while simultaneously then preventing Plaintiff from taking any

further action(s) to address the ongoing illegal/unconstitutional use of said technologies/weapons upon Plaintiff. Those running said technologies/weapons have effectuated this outcome by (very literally) targeting Plaintiff's head/mind and turning the directed energy technologies/weapons up to the point when Plaintiff can literally not function cognitively and/or make volitional choices to take action in one way or another. Thereby, those running said technologies/weapons upon Plaintiff have attempted to keep Plaintiff confined within the parameters of the current link in the chain of total immersion scenarios to prevent themselves from answering for the legal consequences of their actions, all while simultaneously, relentlessly attacking Plaintiff with the microwave weapons-style use of said technologies/weapons to criminally stalk, criminally harass, and (very literally) 'torture' (as the term is defined under both federal and state law) Plaintiff as he attempts to go about his life.

326.    Defendants have attempted to keep Plaintiff confined within the parameters of the current link in the chain of total immersion scenarios to prevent themselves from answering for the legal consequences of their actions, all while simultaneously, relentlessly attacking Plaintiff with the microwave weapons-style use of said technologies/weapons to criminally stalk, criminally harass, and (very literally) 'torture' (as the term is defined under both federal and state law) Plaintiff as he attempts to go about his life.

327.    Defendants deliberately concealed the use of said technologies/weapons from discovery by Plaintiff for many years while simultaneously attempting to make Plaintiff believe that the effects/affects of said mind/body control brain-computer interface technologies/weapons upon him were natural physiological conditions Plaintiff was experiencing.

328.    Since the time when Defendants revealed (at least in part) the existence of, capabilities of, and active use of said technologies/weapons upon Plaintiff at the end of 2016/beginning of 2017, the exact identities of those running said

117

technologies/weapons still being concealed from Plaintiff at the time when Defendants revealed the same, Defendants have engaged in twenty-four (24) hour-a-day, seven (7)-day-a-week, intentional interference with every aspect of Plaintiff's life, including cognitive and volitional functions, to actively prevent Plaintiff from filing and seeing through legal action against those running said technologies/weapons.

329.    Defendants' continue using directed energy brain-computer interface technologies/weapons with capabilities that Defendants would have the general population believe are outside the realm of the possibilities with current technological capabilities, while the same technologies/weapons are the very source of harms done to Plaintiff, as well as (based upon evidence, information, and belief) the widespread use of the same on the civilian population of the United States with intentional sequestering of said technologies/weapons despite the direct control of persons minds and bodies, as they live their day-to-day lives, notably not as a matter of  true "necessity" and/or in furtherance of a national security interest but actually a course of conduct requiring deliberate, intentional, and ongoing violations, by Defendants, of Plaintiff's and every individual upon whom said technologies/weapons are being actively used, as Defendants are running the technologies/weapons domestically on Plaintiff and other non-consenting civilians on U.S. soil.

330.    Defendants have taken technologies/weapons under the control of agencies that are simultaneously tasked with protecting the national security interests in the United States, and Defendants have used a capability of those technologies/weapons for wholly unconstitutional purposes, directing their use on Plaintiff and the civilian population of the United States domestically to not only frame social and political narratives but to actively augment/impair and fully control the lives that individuals actually experience and lead, thereby attempting to not just shape social and political narratives but to actually control which

individuals participate in which roles within society, culture, and government within the United States, thereby stripping away true individuality for the purpose of fabricating/orchestrating an artificial reality, inherent in which is a full deprivation of the constitutional rights of those upon whom the technologies/weapons are used.

331.    Defendants attempt to embed Defendants' wrongful use of said technologies/weapons upon Plaintiff into tangible scenarios and events that are carried out at the level of and within the physical surroundings in which Plaintiff functions, those being the towns, cities, states, school environments, work environments, and social environments in which Plaintiff is moved through and functions in, thereby Defendants rely upon the constitutional rights of the States' sovereign immunity while thereby attempting to confound those who are attacked (as is Plaintiff) in their attempts to address and/or remedy the illegal/unconstitutional course of action which are the gravamen of (this) Plaintiff's Complaint, as the fabrications/orchestrations engineered at the federal level are incorporated into the State, local, and community level with individuals who are not all (if any are) 'government actors' in the legal sense of that term, which is one method by which Defendants attempt to confound those upon whom said technologies/weapons are used, as concealment of the source of the use of said technologies/weapons with the end result being manifest in the very lives individuals, including Plaintiff, are moved through (and believe they are leading), is designed to both confound the individuals upon whom said technologies/weapons are used as well as to attempt to create jurisdictional issues (legally) for those individuals, including Plaintiff, upon whom said technologies/weapons are being illegally/unconstitutionally used.

332.    Defendants at the level of State and local governments, as well as those Defendants who are not government actors but who are U.S. citizens and/or civilians are thereby directly made a function of Defendants'

fabrications/orchestrations/manipulations, (again) as a method by which Defendants attempt to both confound the individuals upon whom said technologies/weapons are used as well as to attempt to create jurisdictional issues (legally) for those individuals, including Plaintiff, upon whom said technologies/weapons are being illegally/unconstitutionally used.

333.    Plaintiff has never consented to the use of said technologies/weapons upon Plaintiff.

334.    Plaintiff's location has at all times relevant to this lawsuit been known to those individuals running said technologies/weapons.

335.    Plaintiff has at all times relevant to this lawsuit been and remains in the jurisdiction of the fully functioning United States Federal and State Court systems.

336.    At no time during the entirety of Plaintiff's life, during times when said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons have been used upon Plaintiff, has martial law been declared by the United State government.

337.    Individuals working for Defendants who run said technologies/weapons hide in a sequestered location, out of the purview of Plaintiff and the general public, with the link between Plaintiff and Defendants and/or Defendant's computer(s) being established by a variety of different wavelength technologies/weapons including directed energy, radar, microwave, radio-frequency, and varying wavelengths, all of which rely upon government infrastructure to maintain continuity of their use across the various States in which Plaintiff has lived, including California, New Mexico, Michigan, New York, and all points in between.

338.    Those running said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons have attempted and continue attempting to trap Plaintiff within Plaintiff's own life, depriving Plaintiff of fundamental rights, asserting (via thoughts imbued to Plaintiff via use of said directed energy

Mind/Body Control Brain-Computer Interface Technologies/Weapons) that those running said technologies/weapons will further harm and attempt to discredit and defame Plaintiff, going so far as to engage in acts amounting to 'torture' (as that term is defined under federal and state law) Plaintiff as Plaintiff attempts to engage in activities of daily life (i.e. while attempting to eat, sleep, exercise, work (interfering with Plaintiff's ability to think and make decisions at work), preventing Plaintiff from being able to prepare for and pass the California State Bar Examination (Plaintiff is literally prevented from being able to read bar review materials), preventing Plaintiff from meeting a woman/women for a personal relationship(s) and affecting Plaintiff's ability to interact with others via deliberate attacks on Plaintiff's mind), the implication being that if Plaintiff capitulates to and acts in concert with Defendants' illegal/unconstitutional use of said technologies/weapons then Plaintiff will be given the opportunity to enjoy all of the foregoing and a life in which Plaintiff is not actively attacked twenty (24) hours-a-day, seven (7) days-a-week, at least for so long as Plaintiff continues to acquiesce to and go along with the illegal/unconstitutional use of said technologies/weapons, which (thereby, as stated previously in (this) Plaintiff's Complaint) requires Plaintiff to accept all prior fabrications/orchestrations while simultaneously (thereby) consenting to all future fabrications/orchestrations, which are in complete contravention to Plaintiff's (most basic) human, civil, and fundamental rights. Capitulation by Plaintiff simply does not make sense and would be a decision that would make Plaintiff a co-conspirator in Defendants' illegal/unconstitutional use of said mind/body control brain-computer interface technologies/weapons upon the civilian population domestically within the United States.

339.   Plaintiff is seeking to recover compensatory damages: general damages including loss of enjoyment, emotional distress, pain and suffering in amounts to be proven at trial, special damages in amounts to be proven at trial including

Plaintiff's debt (including student loan debt) that has been forced to remain unpaid while accumulating additional interest) during such time as Plaintiff continues being held in the ongoing scenarios and prevented from advancing professionally, also including cost for medical services to address and treat the injuries and harms done to Plaintiff with said directed energy technologies/weapons in an amount Plaintiff is in the process of investigating and determining, for loss of income, for loss of personal property, for out of pocket expenses, for attorney's fees (Plaintiff's time spent in Pro per), for prejudgment interest for according to proof, for punitive and exemplary damages in an amount to be ascertained at trial, for injunctive relief to stop the current use and prevent future/ongoing use of said technologies/weapons, and for such other relief as the court deems appropriate.

## SIXTH CAUSE OF ACTION
### 28 U.S.C. 1346 -FEDERAL JURISDICTION OVER TORT CLAIMS
**(Against Defendants United States of America; United States Department of Defense (Unknown Officers, Agents, and Employees Acting Under the Direction Thereof); National Security Agency (NSA) (Unknown Officers, Agents, and Employees Acting Under the Direction Thereof); Central Intelligence Agency (CIA) (Unknown Officers, Agents, and Employees Acting Under the Direction Thereof); and Drug Enforcement Administration (DEA) (Unknown Officers, Agents, and Employees Acting Under the Direction Thereof); and DOES 1 to 10, inclusive)**

340.    The exact identities of the perpetrators of the tortious harms done to Plaintiff, those who sit at the controls of said directed energy technologies/weapons and use them to inflict serious bodily injury (including mimicking serious bodily (and mental) injury) to Plaintiff have been and continue to be deliberately fraudulently concealed from discovery by Plaintiff – Plaintiff will name DOE Defendants who are personally culpable for the intentional harms done to Plaintiff with said technologies/weapons at the soonest possible time as Defendants and the government's attorneys make required disclosures and discovery enables Plaintiff to discover the exact identities of those who remain sequestered and remotely, ongoingly harm and attack Plaintiff with said directed energy

technologies/weapons.

341.    Remote directed energy technologies/weapons are being (and have, for many years, been) used to control and manipulate Plaintiff's thoughts and actions, impairing and/or augmenting Plaintiff's cognitive abilities and mimicking volitional choice(s) by imbuing and/or neuromodulating Plaintiff's unadulterated thoughts using electrical brain stimulation techniques remotely administered using directed energy technologies/weapons.

342.    Use of the directed-energy mind/body control brain-computer interface technologies/weapons upon Plaintiff have been and continue to be coordinated with the tangible physical surroundings and tangible events occurring in Plaintiff's life, thereby creating a series of linked ongoing tangible physical environments that are coordinated using the remote administration/application of said directed-energy technologies/weapons upon Plaintiff and other individuals in those physical environments to create environments in which the parameters and the individuals therein are thereby synchronized with said technologies/weapons to fabricate/orchestrate entirely staged scenarios that simultaneously misrepresent Plaintiff's true persona, intellect, cognition, and volition while imbuing thoughts and controlling/regulating bodily and mental functions of Plaintiff, thereby fully depriving Plaintiff of protected fundamental (civil) rights, freedoms, and liberties, while continuously moving Plaintiff from one scenario to the next without ever breaking the control exerted over Plaintiff via the directed-energy mind/body control brain-computer interface technologies/weapons.

343.    Attempts to substitute the fabrications/orchestrations (created by those running said technologies/weapons) for Plaintiff's unadulterated (without the use of said technologies/weapons) 'reality'/life have been unsuccessful.

344.    Plaintiff has been (and continues being) attacked by those running said technologies/weapons and severely limited in all areas of Plaintiff's life, personally and professionally, physically and mentally by those running said

123

technologies/weapons as they to attempt to create leverage against Plaintiff, to force/coerce Plaintiff into acceptance of the fabrications/orchestrations those running said technologies/weapons have attempted to create.

345.    The ongoing conduct of those running said technologies/weapons and Plaintiff's resistance thereto, have resulted in those running said technologies/weapons using the same to engage in conduct that has resulted in literal "torture" (as the term is defined under 18 U.S.C. §2340 and Cal. Penal Code §206) of Plaintiff, administered throughout the day-and-night, as Plaintiff attempts to live his life (i.e. work, gym, relationships) domestically, within the United States.

346.    The gravamen of this Complaint is for the ongoing course-of-conduct harassment, stalking, complete deprivations of and intentional violations of Plaintiff's fundamental rights, civil rights, and (most basic) human rights, which are inherent in the very intentional concealment and use of said technologies/weapons, by those running said technologies/weapons.

347.    Plaintiff's ability to follow-up on each prior communication with the several federal, state, and local government agencies/entities has been interfered with and prevented by those running said technologies/weapons, preventing Plaintiff from timely follow-up immediately following the initial communication(s) made by Plaintiff.

348.    On-or-about June 15, 2022, Plaintiff sent notices (including SF-95 forms) for recovery of damages for the negligent and intentional harms done to Plaintiff by those running said technologies/weapons upon Plaintiff, as well as notices under the related state tort claims act laws for each of the states in which harm has been done to Plaintiff by those running said technologies/weapons. Those notices were sent to the following: Gavin Newsom, Governor of the State of California; Rob Bonta, Attorney General for the State of California; Michelle Lujan, Governor of the State of New Mexico; Gretchen Whitmer, Governor of the State of Michigan;

Hector Balderas, Attorney for the State of New Mexico; Dana Nessel, Attorney General for the State of Michigan; David Baldwin, Adjutant General for the State of California; Kenneth Nava, Adjutant General for the State of New Mexico; Paul Rogers, Adjutant General for the State of Michigan; Alex Villanueva, (then) Los Angeles County Sheriff; Michael Moore, Los Angeles City Chief of Police; Merrick Garland, U.S. Attorney General; Caroline Krauss, General Counsel at the Department of Defense; Ariane Cerlenko, General Counsel at the National Security Agency (NSA); Jason Jones, General Counsel at the Federal Bureau of Investigations (FBI); Courtney Ellwood, General Counsel at the Central Intelligence Agency (CIA); Chief Justice Tani G. Cantil-Sakauye, in her role with the Judicial Council of California; Vanessa Lynne Holton, General Counsel for the State Bar of California; Edward Hendrie, Chief Counsel for the Drug Enforcement Agency (DEA); Craig Smith, General Counsel for the Air Force; Carri Ricci, General Counsel for the Department of the Army; Sean Coffey, General Counsel for the Department of the Navy; Jonathan Meyer, General Counsel for the U.S. Department of Homeland Security; Richard C. Visek, Office of the Legal Adviser of the U.S. Department of State; Kathy Hochul, Governor of the State of New York; Letitia James, Attorney General for the State of New York; Major General Raymond Shields, Adjutant General for the State of New York; the clerk for the Los Angeles County Board of Supervisors; City Clerk for the City of Los Angeles; Keith Manes, Clerk or Authorized Agent for the County Board of Commissioners of Lea County, New Mexico; Barb Byrum, Clerk or Authorized Agent for the County Board of Commissioners of Ingham County, Michigan; Lawrence Kestenbaum, Clerk or Authorized Agent for the County Board of Commissioners of Washtenaw County; Chief August Fons, City of Hobbs, New Mexico Police Department; Jan Fletcher, City Clerk for the City of Hobbs, NM; the Risk Management Division for the State of New Mexico; the Department of General Services for the State of California; Clerks of the Courts of Claims of the third and

fourth districts of Michigan; the Judicial Tenure Commission in the State of Michigan; Diane Luce, District Attorney for Lea County, New Mexico; Government Claims Program in West Sacramento, California.

349.     In response to the notices sent by Plaintiff to those in the preceding paragraph, Plaintiff received the following responses: (1) On-or-about October 19, 2022, the Department of the Air Force issued a letter denying Plaintiff's tort claim; (2) August 30, 2022, Plaintiff received a notice from the U.S. Department of Justice, asserting that the U.S. Department of Justice would be "handling" Plaintiff's claim. On-or-about September 12, 2022, Plaintiff mailed a certified correspondence to the Civil Division, Torts Branch Paralegal who signed off on the letter to August 30, 2022, letter to Plaintiff, in which Plaintiff requested contact details to communicate directly with the Civil Division to resolve Plaintiff's tort claims with the Department, to which Plaintiff has received no response; (3) Some days following the date on which the letter is dated, that being June 21, 2022, Plaintiff received a notice of denial of Plaintiff's tort claim from the State Bar of California; (4) some days after the date on which the letter is dated, that being June 30, 2022, Plaintiff received a denial of Plaintiff's tort claim from the City of Los Angeles; (5) some days following the date on which the letter is dated, that being August 02, 2022, Plaintiff received a notice of denial of Plaintiff's tort claim from the Federal Bureau of Investigation; (6) some days following the date on which the letter is dated, that being July 07, 2022, Plaintiff received a notice of denial of Plaintiff's tort claim from the Department of the Army; following that initial notice of denial, (7) some days following the dates of subsequent letters sent from the Department of Army, dated September 08, 2022, and September 13, 2022, Plaintiff received notices of denial of Plaintiff's tort claim (again) from the Department of Army; (8) some days after the date on which the correspondence is dated, that being June 21, 2022, Plaintiff received acknowledgement that Plaintiff's tort claim submitted to the Court of Claims for the State of Michigan had been received and assigned a

tracking number of 22-200126-o, the District of the Court responding is not included on the response; (9) some days after the date on which the correspondence is dated, that being June 24, 2022, Plaintiff received acknowledgement that Plaintiff's tort claim submitted to the Court of Claims for the State of Michigan had been received and assigned a tracking number of 22-200133-o, the District of the Court responding is not included on the response; (10) some days after the date on which the postage stamp on the envelope is dated, that being September 13, 2022, Plaintiff received a letter with a salutation to a "Ms. Patterson," denying Plaintiff's tort claim that was submitted to the Drug Enforcement Agency, asserting that Plaintiff had not submitted an SF-95, which is incorrect – this was not an effective denial of Plaintiff's claim as letter is addressed to a Ms. Patterson and does not properly state the facts of Plaintiff's SF-95 submission, as Plaintiff properly submitted an SF-95 with Plaintiff's Federal Tort Claims Act notice; (11) some days after the date on which the correspondence is dated, that being June 27, 2022, Plaintiff received a general denial, based on the timing of Plaintiff's tort claim(s), for the Los Angeles County Board of Supervisors. On-or-about July 18, 2022, Plaintiff mailed an additional correspondence to the Los Angeles County Board of Supervisors, expressing the deliberate interference with Plaintiff discovering the source of the harms done to Plaintiff as well as the equitable tolling required as a result of said interference. Some days after the date on which the correspondence is dated, that being August 01, 2022, Plaintiff (again) received a general denial, based on the timing of Plaintiff's tort claim(s), from the Los Angeles County Board of Supervisors. (12) Some days after the date on which the correspondence is dated, that being July 14, 2022, Plaintiff received a denial of Plaintiff's tort claims, from the Department of Army on behalf of the State of Michigan National Guard, citing case law which had not relevance to the claim that Plaintiff submitted and further attempting to require an exact timeline when the facts of Plaintiff's claim(s) clearly allege the entire course-of-conduct

(harassment/stalking) and literal control over Plaintiff's mind and body by those intentionally preventing Plaintiff from pursuing legal recourse. The letter further erroneously states that Plaintiff's claim was "defective." On August 01, 2022, Plaintiff emailed the Army personnel who drafted the July 14, 2022, letter to Plaintiff. In that email, Plaintiff reasserted the justice obstructing tactics being used by those running said technologies/weapons, the fraudulent concealment those running said technologies/weapons are guilty of, Plaintiff provided the actual United States Code, Code of Federal regulations, as well as case law supporting that Plaintiff's claim was not defective and met the requirements. Plaintiff has received no further correspondence back from the individual with the Department of Army who corresponded on behalf of the Michigan National Guard – note (6) and (7) in this paragraph, as the Department of Army denied Plaintiff's tort claim(s).

350.    Complete relief to Plaintiff cannot be granted under administrative proceedings for Federal Tort Claims Act ("FTCA") relief, as the fraudulent concealment of the capabilities, use of, and source of said technologies/weapons to cause harm to Plaintiff, coordinated with doctors and attorneys as well, make it impossible for Plaintiff to fully present the entire scope of the harms done to Plaintiff in administrative proceedings for FTCA claims – such FTCA claims are a direct result of the conduct of Defendants giving rise to the *Bivens*, 42 U.S.C. §1983, and 42 U.S.C. §1985 causes of action.

351.    Defendants have attempted to keep Plaintiff confined within the parameters of the current link in the chain of total immersion scenarios to prevent themselves from answering for the legal consequences of their actions, all while simultaneously, relentlessly attacking Plaintiff with the microwave weapons-style use of said technologies/weapons to criminally stalk, criminally harass, and (very literally) 'torture' (as the term is defined under both federal and state law) Plaintiff as he attempts to go about his life.

352.    During the month of June 2022, Plaintiff filed Federal Tort Claims Act
("FTCA") notices with each named Defendant to this lawsuit, as well as several
other federal departments and agencies whose coordination and/or complicity in
the ongoing use of said technologies/weapons are required, without which those
running/operating said technologies/weapons would be stopped and held to answer
legally for the illegal/unconstitutional use of said technologies/weapons upon
Plaintiff as well as the domestic civilian population. The harms done to Plaintiff,
including the affects/effects of said technologies/weapons upon Plaintiff are
elaborated on and expressed more completely therein. A copy of one such notice
is attached hereto as Exhibit "A".

353.    Body parts reported in Plaintiff's FTCA notices include Plaintiff's
brain/mind, head (everything other than the brain/mind), teeth and gums, left
shoulder (permanent shoulder injury), chest/lungs, breathing/respiratory, heartrate,
abdomen including effects/affects on internal organs, genitalia, legs, knees,
ankles/feet, entire body muscloskeletal system, as well as skin conditions
(including those staging tangible scenarios using rodents and insects released in
Plaintiff's residence as a form of harassment/stalking).

354.    Prior to disclosure of the capabilities of said technologies/weapons,
Defendants used said technologies/weapons to create symptoms mimicking
legitimate medical conditions for which Plaintiff would then see a doctor(s), being
prescribed medication(s) for the actual medical conditions that Defendants
mimicked via the remote targeting and manipulations of Plaintiff's mind and body
via said technologies/weapons.

355.    Defendants used said technologies/weapons to induce false neurological
symptoms, using the mind/body control brain-computer interface
technologies/weapons to mimic symptoms of Post-Traumatic Stress Disorder
("PTSD"), during the years 2007 through 2016,, anxiety, depression, problems
with memory, cognition, volition, for which doctors prescribed medication.

COMPLAINT

Defendants continue using said technologies/weapons to actively engage and interfere with Plaintiff's cognition and volitional abilities, which is the very means by which Defendants have prevented Plaintiff from filing the lawsuit and pursuing it prior to now.

356.    Defendants used said technologies/weapons to induce a false condition, using the mind/body control brain-computer interface technologies/weapons to mimic symptoms, of Attention-Deficit Hyperactivity Disorder ("ADHD"), during the years 2013 through 2016, for which doctors both diagnosed the mimicked symptoms as such and prescribed Plaintiff medications for the conditions.

357.    Plaintiff is seeking to recover compensatory damages: general damages including loss of enjoyment, emotional distress, pain and suffering in amounts to be proven at trial, special damages in amounts to be proven at trial including Plaintiff's debt (including student loan debt) that has been forced to remain unpaid while accumulating additional interest) during such time as Plaintiff continues being held in the ongoing scenarios and prevented from advancing professionally, also including cost for medical services to address and treat the injuries and harms done to Plaintiff with said directed energy technologies/weapons in an amount Plaintiff is in the process of investigating and determining, and for such other relief as the court deems appropriate.

## SEVENTH CAUSE OF ACTION
### 28 U.S.C. §1346 FEDERAL TORT CLAIMS ACT
**(Against Defendants United States of America; United States Department of Defense (Unknown Officers, Agents, and Employees Acting Under the Direction Thereof); National Security Agency (NSA) (Unknown Officers, Agents, and Employees Acting Under the Direction Thereof); Central Intelligence Agency (CIA) (Unknown Officers, Agents, and Employees Acting Under the Direction Thereof); and Drug Enforcement Administration (DEA) (Unknown Officers, Agents, and Employees Acting Under the Direction Thereof); and DOES 1 to 10, inclusive)**

358.    The exact identities of the perpetrators of the tortious harms done to Plaintiff, those who sit at the controls of said directed energy technologies/weapons and use

COMPLAINT

them to inflict serious bodily injury (including mimicking serious bodily (and mental) injury) to Plaintiff have been and continue to be deliberately fraudulently concealed from discovery by Plaintiff – Plaintiff will name DOE Defendants who are personally culpable for the intentional harms done to Plaintiff with said technologies/weapons at the soonest possible time as Defendants and the government's attorneys make required disclosures and discovery enables Plaintiff to discover the exact identities of those who remain sequestered and remotely, ongoingly harm and attack Plaintiff with said directed energy technologies/weapons.

359.    Remote directed energy technologies/weapons are being (and have, for many years, been) used to control and manipulate Plaintiff's thoughts and actions, impairing and/or augmenting Plaintiff's cognitive abilities and mimicking volitional choice(s) by imbuing and/or neuromodulating Plaintiff's unadulterated thoughts using electrical brain stimulation techniques remotely administered using directed energy technologies/weapons.

360.    Use of the directed-energy mind/body control brain-computer interface technologies/weapons upon Plaintiff have been and continue to be coordinated with the tangible physical surroundings and tangible events occurring in Plaintiff's life, thereby creating a series of linked ongoing tangible physical environments that are coordinated using the remote administration/application of said directed-energy technologies/weapons upon Plaintiff and other individuals in those physical environments to create environments in which the parameters and the individuals therein are thereby synchronized with said technologies/weapons to fabricate/orchestrate entirely staged scenarios that simultaneously misrepresent Plaintiff's true persona, intellect, cognition, and volition while imbuing thoughts and controlling/regulating bodily and mental functions of Plaintiff, thereby fully depriving Plaintiff of protected fundamental (civil) rights, freedoms, and liberties, while continuously moving Plaintiff from one scenario to the next without ever

breaking the control exerted over Plaintiff via the directed-energy mind/body control brain-computer interface technologies/weapons.

361.    Attempts to substitute the fabrications/orchestrations (created by those running said technologies/weapons) for Plaintiff's unadulterated (without the use of said technologies/weapons) 'reality'/life have been unsuccessful.

362.    Plaintiff has been (and continues being) attacked by those running said technologies/weapons and severely limited in all areas of Plaintiff's life, personally and professionally, physically and mentally by those running said technologies/weapons as they to attempt to create leverage against Plaintiff, to force/coerce Plaintiff into acceptance of the fabrications/orchestrations those running said technologies/weapons have attempted to create.

363.    The ongoing conduct of those running said technologies/weapons and Plaintiff's resistance thereto, have resulted in those running said technologies/weapons using the same to engage in conduct that has resulted in literal "torture" (as the term is defined under 18 U.S.C. §2340 and Cal. Penal Code §206) of Plaintiff, administered throughout the day-and-night, as Plaintiff attempts to live his life (i.e. work, gym, relationships) domestically, within the United States.

364.    The gravamen of this Complaint is for the ongoing course-of-conduct harassment, stalking, complete deprivations of and intentional violations of Plaintiff's fundamental rights, civil rights, and (most basic) human rights, which are inherent in the very intentional concealment and use of said technologies/weapons, by those running said technologies/weapons.

365.    Notably, a California State Court action was filed by California attorneys, on behalf of Plaintiff, for complete destruction of Plaintiff's personal property, which was all inside the room in which Plaintiff was living at the time of a building fire that occurred on February 07, 2020, as well as personal injury sustained by Plaintiff, as Plaintiff attempted flee the building as the entire building was engulfed

COMPLAINT

in smoke and flames.

366.    Defendants, via the use of said technologies/weapons coordinated with Plaintiff's tangible physical surroundings, that Plaintiff was living in the building at the time of said fire, said lawsuit being one which Plaintiff repeatedly told the California attorneys who filed it that it could not be properly filed in California State Court, as the gravamen of (this) Plaintiff's instant Complaint before this court are/were the actual legal bases for any civil action Plaintiff had at the time of the building fire.

367.    Following the building fire on February 07, 2020, Plaintiff relocated to a short-term apartment located in San Pedro, California.

368.    A property directly across the street from Plaintiff's short-term apartment set up loudspeakers and hosted parties with individuals who became extremely rowdy, setting off M-80 style explosives which would set off car alarms in the surrounding neighborhood, smashing glass bottles, and carrying on loudly into overnight hours – it bears repeating, Plaintiff has continued being heavily controlled via the directed energy technologies weapons since before the time of the fire through the time of Plaintiff filing this instant Complaint with this court.

369.    Several of the cars regularly parked around and near the home where the parties were held had stickers displaying military branches (i.e. Marines, Air Force, etc.).

370.    Plaintiff called the local police department several times asking for the police to come by to ask the neighbors to turn the music down as it was in violation of municipal codes, but police never responded.

371.    On January 31, 2021, Plaintiff felt himself controlled but could not prevent the exertion of the control over Plaintiff as he walked down to the street and yelled across the street, asking for the neighbors to turn the music down.

372.    One individual came across the street, as Plaintiff was recording the scene with Plaintiff's cell phone, grabbed Plaintiff's cell phone from Plaintiff's hands,

and threw Plaintiff to the ground as Plaintiff bent down to pick up the cell phone – Plaintiff felt himself controlled by said technologies/weapons as Plaintiff could not react/respond.

373.     Plaintiff had a picture of the individual who attacked Plaintiff, and Plaintiff filed a police report that night, as Plaintiff's knee was injured when Plaintiff was thrown to the ground.

374.     Upon contacting Detective Jacinto Zavala, who Plaintiff learned was investigating the attack on Plaintiff, Plaintiff fully disclosed the illegal/unconstitutional use of said technologies/weapons upon Plaintiff, learned the Detective Zavala had a military background as well and (when asked about said technologies/weapons) Detective Zavala would not say that he did not know of them.

375.     Plaintiff sent several emails, photos, videos, supporting Plaintiff's side of the matter to Detective Zavala to no avail, as Plaintiff wanted to learn the identity of the attacker for purposes of a civil lawsuit as well as to investigate (this) Plaintiff's instant federal cause of action with this court.

376.     Detective Zavala never located the attacker, even with a close-up photograph Plaintiff provided to Detective Zavala of the individual.

377.     Plaintiff emailed Detective Zavala's supervisor and received no response.

378.     The attack on Plaintiff on January 31, 2021, was entirely staged, and the Los Angeles Police Department Detective assigned to it intentionally disregarded it.

379.     Plaintiff's ability to follow-up on each prior communication with the several federal, state, and local government agencies/entities has been interfered with and prevented by those running said technologies/weapons, preventing Plaintiff from timely follow-up immediately following the initial communication(s) made by Plaintiff.

380.     On-or-about June 15, 2022, Plaintiff sent notices (including SF-95 forms) for recovery of damages for the negligent and intentional harms done to Plaintiff by

those running said technologies/weapons upon Plaintiff, as well as notices under the related state tort claims act laws for each of the states in which harm has been done to Plaintiff by those running said technologies/weapons. Those notices were sent to the following: Gavin Newsom, Governor of the State of California; Rob Bonta, Attorney General for the State of California; Michelle Lujan, Governor of the State of New Mexico; Gretchen Whitmer, Governor of the State of Michigan; Hector Balderas, Attorney for the State of New Mexico; Dana Nessel, Attorney General for the State of Michigan; David Baldwin, Adjutant General for the State of California; Kenneth Nava, Adjutant General for the State of New Mexico; Paul Rogers, Adjutant General for the State of Michigan; Alex Villanueva, (then) Los Angeles County Sheriff; Michael Moore, Los Angeles City Chief of Police; Merrick Garland, U.S. Attorney General; Caroline Krauss, General Counsel at the Department of Defense; Ariane Cerlenko, General Counsel at the National Security Agency (NSA); Jason Jones, General Counsel at the Federal Bureau of Investigations (FBI); Courtney Ellwood, General Counsel at the Central Intelligence Agency (CIA); Chief Justice Tani G. Cantil-Sakauye, in her role with the Judicial Council of California; Vanessa Lynne Holton, General Counsel for the State Bar of California; Edward Hendrie, Chief Counsel for the Drug Enforcement Agency (DEA); Craig Smith, General Counsel for the Air Force; Carri Ricci, General Counsel for the Department of the Army; Sean Coffey, General Counsel for the Department of the Navy; Jonathan Meyer, General Counsel for the U.S. Department of Homeland Security; Richard C. Visek, Office of the Legal Adviser of the U.S. Department of State; Kathy Hochul, Governor of the State of New York; Letitia James, Attorney General for the State of New York; Major General Raymond Shields, Adjutant General for the State of New York; the clerk for the Los Angeles County Board of Supervisors; City Clerk for the City of Los Angeles; Keith Manes, Clerk or Authorized Agent for the County Board of Commissioners of Lea County, New Mexico; Barb Byrum, Clerk or Authorized Agent for the

County Board of Commissioners of Ingham County, Michigan; Lawrence Kestenbaum, Clerk or Authorized Agent for the County Board of Commissioners of Washtenaw County; Chief August Fons, City of Hobbs, New Mexico Police Department; Jan Fletcher, City Clerk for the City of Hobbs, NM; the Risk Management Division for the State of New Mexico; the Department of General Services for the State of California; Clerks of the Courts of Claims of the third and fourth districts of Michigan; the Judicial Tenure Commission in the State of Michigan; Diane Luce, District Attorney for Lea County, New Mexico; Government Claims Program in West Sacramento, California.

381.     In response to the notices sent by Plaintiff to those in the preceding paragraph, Plaintiff received the following responses: (1) On-or-about October 19, 2022, the Department of the Air Force issued a letter denying Plaintiff's tort claim; (2) August 30, 2022, Plaintiff received a notice from the U.S. Department of Justice, asserting that the U.S. Department of Justice would be "handling" Plaintiff's claim. On-or-about September 12, 2022, Plaintiff mailed a certified correspondence to the Civil Division, Torts Branch Paralegal who signed off on the letter to August 30, 2022, letter to Plaintiff, in which Plaintiff requested contact details to communicate directly with the Civil Division to resolve Plaintiff's tort claims with the Department, to which Plaintiff has received no response; (3) Some days following the date on which the letter is dated, that being June 21, 2022, Plaintiff received a notice of denial of Plaintiff's tort claim from the State Bar of California; (4) some days after the date on which the letter is dated, that being June 30, 2022, Plaintiff received a denial of Plaintiff's tort claim from the City of Los Angeles; (5) some days following the date on which the letter is dated, that being August 02, 2022, Plaintiff received a notice of denial of Plaintiff's tort claim from the Federal Bureau of Investigation; (6) some days following the date on which the letter is dated, that being July 07, 2022, Plaintiff received a notice of denial of Plaintiff's tort claim from the Department of the Army; following that initial notice of denial, (7) some

136

COMPLAINT

days following the dates of subsequent letters sent from the Department of Army, dated September 08, 2022, and September 13, 2022, Plaintiff received notices of denial of Plaintiff's tort claim (again) from the Department of Army; (8) some days after the date on which the correspondence is dated, that being June 21, 2022, Plaintiff received acknowledgement that Plaintiff's tort claim submitted to the Court of Claims for the State of Michigan had been received and assigned a tracking number of 22-200126-o, the District of the Court responding is not included on the response; (9) some days after the date on which the correspondence is dated, that being June 24, 2022, Plaintiff received acknowledgement that Plaintiff's tort claim submitted to the Court of Claims for the State of Michigan had been received and assigned a tracking number of 22-200133-o, the District of the Court responding is not included on the response; (10) some days after the date on which the postage stamp on the envelope is dated, that being September 13, 2022, Plaintiff received a letter with a salutation to a "Ms. Patterson," denying Plaintiff's tort claim that was submitted to the Drug Enforcement Agency, asserting that Plaintiff had not submitted an SF-95, which is incorrect – this was not an effective denial of Plaintiff's claim as letter is addressed to a Ms. Patterson and does not properly state the facts of Plaintiff's SF-95 submission, as Plaintiff properly submitted an SF-95 with Plaintiff's Federal Tort Claims Act notice; (11) some days after the date on which the correspondence is dated, that being June 27, 2022, Plaintiff received a general denial, based on the timing of Plaintiff's tort claim(s), for the Los Angeles County Board of Supervisors. On-or-about July 18, 2022, Plaintiff mailed an additional correspondence to the Los Angeles County Board of Supervisors, expressing the deliberate interference with Plaintiff discovering the source of the harms done to Plaintiff as well as the equitable tolling required as a result of said interference. Some days after the date on which the correspondence is dated, that being August 01, 2022, Plaintiff (again) received a general denial, based on the timing of Plaintiff's tort claim(s), from the Los

Angeles County Board of Supervisors. (12) Some days after the date on which the correspondence is dated, that being July 14, 2022, Plaintiff received a denial of Plaintiff's tort claims, from the Department of Army on behalf of the State of Michigan National Guard, citing case law which had not relevance to the claim that Plaintiff submitted and further attempting to require an exact timeline when the facts of Plaintiff's claim(s) clearly allege the entire course-of-conduct (harassment/stalking) and literal control over Plaintiff's mind and body by those intentionally preventing Plaintiff from pursuing legal recourse. The letter further erroneously states that Plaintiff's claim was "defective." On August 01, 2022, Plaintiff emailed the Army personnel who drafted the July 14, 2022, letter to Plaintiff. In that email, Plaintiff reasserted the justice obstructing tactics being used by those running said technologies/weapons, the fraudulent concealment those running said technologies/weapons are guilty of, Plaintiff provided the actual United States Code, Code of Federal regulations, as well as case law supporting that Plaintiff's claim was not defective and met the requirements. Plaintiff has received no further correspondence back from the individual with the Department of Army who corresponded on behalf of the Michigan National Guard – note (6) and (7) in this paragraph, as the Department of Army denied Plaintiff's tort claim(s).

382. The identities of those running said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons on Plaintiff, working for/with Defendants remains deliberately concealed from Plaintiff while the attacks upon Plaintiff using the same persist.

383. The response by those running said technologies/weapons has been a full scale, ongoing, twenty-four (24) hour-a-day, seven-day-a-week, ongoing series of attacks using the directed energy technologies/weapons to inflict intentional and ongoing harm and suffering unto Plaintiff. The attacks have been ongoing since 2016.

384.    Defendants have attempted to keep Plaintiff confined within the parameters of the current link in the chain of total immersion scenarios to prevent themselves from answering for the legal consequences of their actions, all while simultaneously, relentlessly attacking Plaintiff with the microwave weapons-style use of said technologies/weapons to criminally stalk, criminally harass, and (very literally) 'torture' (as the term is defined under both federal and state law) Plaintiff as he attempts to go about his life.

385.    During the month of June 2022, Plaintiff filed Federal Tort Claims Act ("FTCA") notices with each named Defendant to this lawsuit, as well as several other federal departments and agencies whose coordination and/or complicity in the ongoing use of said technologies/weapons are required, without which those running/operating said technologies/weapons would be stopped and held to answer legally for the illegal/unconstitutional use of said technologies/weapons upon Plaintiff as well as the domestic civilian population.  The harms done to Plaintiff, including the affects/effects of said technologies/weapons upon Plaintiff are elaborated on and expressed more completely therein. A copy of one such notice is attached hereto as Exhibit "A".

386.    Body parts reported in Plaintiff's FTCA notices include Plaintiff's brain/mind, head (everything other than the brain/mind), teeth and gums, left shoulder (permanent shoulder injury), chest/lungs, breathing/respiratory, heartrate, abdomen including effects/affects on internal organs, genitalia, legs, knees, ankles/feet, entire body muscloskeletal system, as well as skin conditions (including those staging tangible scenarios using rodents and insects released in Plaintiff's residence as a form of harassment/stalking).

387.    Prior to disclosure of the capabilities of said technologies/weapons, Defendants used said technologies/weapons to create symptoms mimicking legitimate medical conditions for which Plaintiff would then see a doctor(s), being prescribed medication(s) for the actual medical conditions that Defendants

COMPLAINT

mimicked via the remote targeting and manipulations of Plaintiff's mind and body via said technologies/weapons.

388.   Defendants used said technologies/weapons to induce false neurological symptoms, using the mind/body control brain-computer interface technologies/weapons to mimic symptoms of Post-Traumatic Stress Disorder ("PTSD"), during the years 2007 through 2016, anxiety, depression, problems with memory, cognition, volition, for which doctors prescribed medication. Defendants continue using said technologies/weapons to actively engage and interfere with Plaintiff's cognition and volitional abilities, which is the very means by which Defendants have prevented Plaintiff from filing the lawsuit and pursuing it prior to now.

389.   Defendants used said technologies/weapons to induce a false condition, using the mind/body control brain-computer interface technologies/weapons to mimic symptoms, of Attention-Deficit Hyperactivity Disorder ("ADHD"), during the years 2013 through 2016, for which doctors both diagnosed the mimicked symptoms as such and prescribed Plaintiff medications for the conditions.

390.   Notably, a California State Court action was filed by California attorneys, on behalf of Plaintiff, for complete destruction of Plaintiff's personal property, which was all inside the room in which Plaintiff was living at the time of a building fire that occurred on February 07, 2020, as well as personal injury sustained by Plaintiff, as Plaintiff attempted flee the building as the entire building was engulfed in smoke and flames.

391.   Defendants, via the use of said technologies/weapons coordinated with Plaintiff's tangible physical surroundings, that Plaintiff was living in the building at the time of said fire, said lawsuit being one which Plaintiff repeatedly told the California attorneys who filed it that it could not be properly filed in California State Court, as the gravamen of (this) Plaintiff's instant Complaint before this court are/were the actual legal bases for any civil action Plaintiff had at the time of the

building fire.

392.    Plaintiff has resisted the force/coercion of those running said
technologies/weapons which has resulted in those running the same increasing the
level of harms directed at Plaintiff, (apparently) as attempts to force/coerce
Plaintiff to capitulate to and align with the illegal/unconstitutional conduct/acts of
those running said directed energy Mind/Body Control Brain-Computer Interface
Technologies/Weapons, ultimately resulting in those running said directed energy
Mind/Body Control Brain-Computer Interface Technologies/Weapons inflicting
ongoing/perpetual harms to Plaintiff which has resulted in both serious bodily
injury to Plaintiff, as well as mimicking serious bodily injury to Plaintiff, as well
as intentionally depriving Plaintiff of protected constitutional right, liberties, and
equal protection of the laws, furthering resulting in ongoing acts that amount to
literal 'torture' of Plaintiff, as that term is defined in both federal and California
State laws, via the illegal/unconstitutional attacks upon Plaintiff with
directed/energy technologies/weapons.

393.    Plaintiff has never consented to the use of said technologies/weapons upon
Plaintiff.

394.    Plaintiff's location has at all times relevant to this lawsuit been known to those
individuals running said technologies/weapons.

395.    Plaintiff has at all times relevant to this lawsuit been and remains in the
jurisdiction of the fully functioning United States Federal and State Court systems.

396.    At no time during the entirety of Plaintiff's life, during times when said
directed energy Mind/Body Control Brain-Computer Interface
Technologies/Weapons have been used upon Plaintiff, has martial law been
declared by the United State government.

397.    Those running said directed energy Mind/Body Control Brain-Computer
Interface Technologies/Weapons have attempted and continue attempting to trap
Plaintiff within Plaintiff's own life, depriving Plaintiff of fundamental rights,

COMPLAINT

asserting (via thoughts imbued to Plaintiff via use of said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons) that those running said technologies/weapons will further harm and attempt to discredit and defame Plaintiff, going so far as to engage in acts amounting to 'torture' (as that term is defined under federal and state law) Plaintiff as Plaintiff attempts to engage in activities of daily life (i.e. while attempting to eat, sleep, exercise, work (interfering with Plaintiff's ability to think and make decisions at work), preventing Plaintiff from being able to prepare for and pass the California State Bar Examination (Plaintiff is literally prevented from being able to read bar review materials), preventing Plaintiff from meeting a woman/women for a personal relationship(s) and affecting Plaintiff's ability to interact with others via deliberate attacks on Plaintiff's mind), the implication being that if Plaintiff capitulates to and acts in concert with Defendants' illegal/unconstitutional use of said technologies/weapons then Plaintiff will be given the opportunity to enjoy all of the foregoing and a life in which Plaintiff is not actively attacked twenty (24) hours-a-day, seven (7) days-a-week, at least for so long as Plaintiff continues to acquiesce to and go along with the illegal/unconstitutional use of said technologies/weapons, which (thereby, as stated previously in (this) Plaintiff's Complaint) requires Plaintiff to accept all prior fabrications/orchestrations while simultaneously (thereby) consenting to all future fabrications/orchestrations, which are in complete contravention to Plaintiff's (most basic) human, civil, and fundamental rights. Capitulation by Plaintiff simply does not make sense and would be a decision that would make Plaintiff a co-conspirator in Defendants' illegal/unconstitutional use of said mind/body control brain-computer interface technologies/weapons upon the civilian population domestically within the United States.

398.   Plaintiff is seeking to recover compensatory damages: general damages including loss of enjoyment, emotional distress, pain and suffering in amounts to

be proven at trial, special damages in amounts to be proven at trial including Plaintiff's debt (including student loan debt) that has been forced to remain unpaid while accumulating additional interest) during such time as Plaintiff continues being held in the ongoing scenarios and prevented from advancing professionally, also including cost for medical services to address and treat the injuries and harms done to Plaintiff with said directed energy technologies/weapons in an amount Plaintiff is in the process of investigating and determining, and for such other relief as the court deems appropriate.

## EIGHTH CAUSE OF ACTION
### 28 U.S.C. §2680 EXCEPTIONS – INTENTIONAL TORTS OF INVESTIGATIVE OR LAW ENFORCEMENT OFFICERS OF THE UNITED STATES GOVERNMENT
**(Against Defendants United States of America; United States Department of Defense (Unknown Officers, Agents, and Employees Acting Under the Direction Thereof); National Security Agency (NSA) (Unknown Officers, Agents, and Employees Acting Under the Direction Thereof); Central Intelligence Agency (CIA) (Unknown Officers, Agents, and Employees Acting Under the Direction Thereof); and Drug Enforcement Administration (DEA) (Unknown Officers, Agents, and Employees Acting Under the Direction Thereof); and DOES 1 to 10, inclusive)**

399.     The exact identities of the perpetrators of the tortious harms done to Plaintiff, those who sit at the controls of said directed energy technologies/weapons and use them to inflict serious bodily injury (including mimicking serious bodily (and mental) injury) to Plaintiff have been and continue to be deliberately fraudulently concealed from discovery by Plaintiff – Plaintiff will name DOE Defendants who are personally culpable for the intentional harms done to Plaintiff with said technologies/weapons at the soonest possible time as Defendants and the government's attorneys make required disclosures and discovery enables Plaintiff to discover the exact identities of those who remain sequestered and remotely, ongoingly harm and attack Plaintiff with said directed energy technologies/weapons.

400.     Remote directed energy technologies/weapons are being (and have, for many

years, been) used to control and manipulate Plaintiff's thoughts and actions, impairing and/or augmenting Plaintiff's cognitive abilities and mimicking volitional choice(s) by imbuing and/or neuromodulating Plaintiff's unadulterated thoughts using electrical brain stimulation techniques remotely administered using directed energy technologies/weapons.

401.    Use of the directed-energy mind/body control brain-computer interface technologies/weapons upon Plaintiff have been and continue to be coordinated with the tangible physical surroundings and tangible events occurring in Plaintiff's life, thereby creating a series of linked ongoing tangible physical environments that are coordinated using the remote administration/application of said directed-energy technologies/weapons upon Plaintiff and other individuals in those physical environments to create environments in which the parameters and the individuals therein are thereby synchronized with said technologies/weapons to fabricate/orchestrate entirely staged scenarios that simultaneously misrepresent Plaintiff's true persona, intellect, cognition, and volition while imbuing thoughts and controlling/regulating bodily and mental functions of Plaintiff, thereby fully depriving Plaintiff of protected fundamental (civil) rights, freedoms, and liberties, while continuously moving Plaintiff from one scenario to the next without ever breaking the control exerted over Plaintiff via the directed-energy mind/body control brain-computer interface technologies/weapons.

402.    Attempts to substitute the fabrications/orchestrations (created by those running said technologies/weapons) for Plaintiff's unadulterated (without the use of said technologies/weapons) 'reality'/life have been unsuccessful.

403.    Plaintiff has been (and continues being) attacked by those running said technologies/weapons and severely limited in all areas of Plaintiff's life, personally and professionally, physically and mentally by those running said technologies/weapons as they to attempt to create leverage against Plaintiff, to force/coerce Plaintiff into acceptance of the fabrications/orchestrations those

144

running said technologies/weapons have attempted to create.

404.    The ongoing conduct of those running said technologies/weapons and Plaintiff's resistance thereto, have resulted in those running said technologies/weapons using the same to engage in conduct that has resulted in literal "torture" (as the term is defined under 18 U.S.C. §2340 and Cal. Penal Code §206) of Plaintiff, administered throughout the day-and-night, as Plaintiff attempts to live his life (i.e. work, gym, relationships) domestically, within the United States.

405.    The gravamen of this Complaint is for the ongoing course-of-conduct harassment, stalking, complete deprivations of and intentional violations of Plaintiff's fundamental rights, civil rights, and (most basic) human rights, which are inherent in the very intentional concealment and use of said technologies/weapons, by those running said technologies/weapons.

406.    Notably, a California State Court action was filed by California attorneys, on behalf of Plaintiff, for complete destruction of Plaintiff's personal property, which was all inside the room in which Plaintiff was living at the time of a building fire that occurred on February 07, 2020, as well as personal injury sustained by Plaintiff, as Plaintiff attempted flee the building as the entire building was engulfed in smoke and flames.

407.    Defendants, via the use of said technologies/weapons coordinated with Plaintiff's tangible physical surroundings, that Plaintiff was living in the building at the time of said fire, said lawsuit being one which Plaintiff repeatedly told the California attorneys who filed it that it could not be properly filed in California State Court, as the gravamen of (this) Plaintiff's instant Complaint before this court are/were the actual legal bases for any civil action Plaintiff had at the time of the building fire.

408.    Following the building fire on February 07, 2020, Plaintiff relocated to a short-term apartment located in San Pedro, California.

409.    A property directly across the street from Plaintiff's short-term apartment set up loudspeakers and hosted parties with individuals who became extremely rowdy, setting off M-80 style explosives which would set off car alarms in the surrounding neighborhood, smashing glass bottles, and carrying on loudly into overnight hours – it bears repeating, Plaintiff has continued being heavily controlled via the directed energy technologies weapons since before the time of the fire through the time of Plaintiff filing this instant Complaint with this court.

410.    Several of the cars regularly parked around and near the home where the parties were held had stickers displaying military branches (i.e. Marines, Air Force, etc.).

411.    Plaintiff called the local police department several times asking for the police to come by to ask the neighbors to turn the music down as it was in violation of municipal codes, but police never responded.

412.    On January 31, 2021, Plaintiff felt himself controlled but could not prevent the exertion of the control over Plaintiff as he walked down to the street and yelled across the street, asking for the neighbors to turn the music down.

413.    One individual came across the street, as Plaintiff was recording the scene with Plaintiff's cell phone, grabbed Plaintiff's cell phone from Plaintiff's hands, and threw Plaintiff to the ground as Plaintiff bent down to pick up the cell phone – Plaintiff felt himself controlled by said technologies/weapons as Plaintiff could not react/respond.

414.    Plaintiff had a picture of the individual who attacked Plaintiff, and Plaintiff filed a police report that night, as Plaintiff's knee was injured when Plaintiff was thrown to the ground.

415.    Upon contacting Detective Jacinto Zavala, who Plaintiff learned was investigating the attack on Plaintiff, Plaintiff fully disclosed the illegal/unconstitutional use of said technologies/weapons upon Plaintiff, learned the Detective Zavala had a military background as well and (when asked about said

COMPLAINT

technologies/weapons) Detective Zavala would not say that he did not know of them.

416.    Plaintiff sent several emails, photos, videos, supporting Plaintiff's side of the matter to Detective Zavala to no avail, as Plaintiff wanted to learn the identity of the attacker for purposes of a civil lawsuit as well as to investigate (this) Plaintiff's instant federal cause of action with this court.

417.    Detective Zavala never located the attacker, even with a close-up photograph Plaintiff provided to Detective Zavala of the individual.

418.    Plaintiff emailed Detective Zavala's supervisor and received no response.

419.    The attack on Plaintiff on January 31, 2021, was entirely staged, and the Los Angeles Police Department Detective assigned to it intentionally disregarded it.

420.    Plaintiff's ability to follow-up on each prior communication with the several federal, state, and local government agencies/entities has been interfered with and prevented by those running said technologies/weapons, preventing Plaintiff from timely follow-up immediately following the initial communication(s) made by Plaintiff.

421.    On-or-about June 15, 2022, Plaintiff sent notices (including SF-95 forms) for recovery of damages for the negligent and intentional harms done to Plaintiff by those running said technologies/weapons upon Plaintiff, as well as notices under the related state tort claims act laws for each of the states in which harm has been done to Plaintiff by those running said technologies/weapons. Those notices were sent to the following: Gavin Newsom, Governor of the State of California; Rob Bonta, Attorney General for the State of California; Michelle Lujan, Governor of the State of New Mexico; Gretchen Whitmer, Governor of the State of Michigan; Hector Balderas, Attorney for the State of New Mexico; Dana Nessel, Attorney General for the State of Michigan; David Baldwin, Adjutant General for the State of California; Kenneth Nava, Adjutant General for the State of New Mexico; Paul Rogers, Adjutant General for the State of Michigan; Alex Villanueva, (then) Los

Angeles County Sheriff; Michael Moore, Los Angeles City Chief of Police; Merrick Garland, U.S. Attorney General; Caroline Krauss, General Counsel at the Department of Defense; Ariane Cerlenko, General Counsel at the National Security Agency (NSA); Jason Jones, General Counsel at the Federal Bureau of Investigations (FBI); Courtney Ellwood, General Counsel at the Central Intelligence Agency (CIA); Chief Justice Tani G. Cantil-Sakauye, in her role with the Judicial Council of California; Vanessa Lynne Holton, General Counsel for the State Bar of California; Edward Hendrie, Chief Counsel for the Drug Enforcement Agency (DEA); Craig Smith, General Counsel for the Air Force; Carri Ricci, General Counsel for the Department of the Army; Sean Coffey, General Counsel for the Department of the Navy; Jonathan Meyer, General Counsel for the U.S. Department of Homeland Security; Richard C. Visek, Office of the Legal Adviser of the U.S. Department of State; Kathy Hochul, Governor of the State of New York; Letitia James, Attorney General for the State of New York; Major General Raymond Shields, Adjutant General for the State of New York; the clerk for the Los Angeles County Board of Supervisors; City Clerk for the City of Los Angeles; Keith Manes, Clerk or Authorized Agent for the County Board of Commissioners of Lea County, New Mexico; Barb Byrum, Clerk or Authorized Agent for the County Board of Commissioners of Ingham County, Michigan; Lawrence Kestenbaum, Clerk or Authorized Agent for the County Board of Commissioners of Washtenaw County; Chief August Fons, City of Hobbs, New Mexico Police Department; Jan Fletcher, City Clerk for the City of Hobbs, NM; the Risk Management Division for the State of New Mexico; the Department of General Services for the State of California; Clerks of the Courts of Claims of the third and fourth districts of Michigan; the Judicial Tenure Commission in the State of Michigan; Diane Luce, District Attorney for Lea County, New Mexico; Government Claims Program in West Sacramento, California.

422.    In response to the notices sent by Plaintiff to those in the preceding paragraph,

COMPLAINT

Plaintiff received the following responses: (1) On-or-about October 19, 2022, the Department of the Air Force issued a letter denying Plaintiff's tort claim; (2) August 30, 2022, Plaintiff received a notice from the U.S. Department of Justice, asserting that the U.S. Department of Justice would be "handling" Plaintiff's claim. On-or-about September 12, 2022, Plaintiff mailed a certified correspondence to the Civil Division, Torts Branch Paralegal who signed off on the letter to August 30, 2022, letter to Plaintiff, in which Plaintiff requested contact details to communicate directly with the Civil Division to resolve Plaintiff's tort claims with the Department, to which Plaintiff has received no response; (3) Some days following the date on which the letter is dated, that being June 21, 2022, Plaintiff received a notice of denial of Plaintiff's tort claim from the State Bar of California; (4) some days after the date on which the letter is dated, that being June 30, 2022, Plaintiff received a denial of Plaintiff's tort claim from the City of Los Angeles; (5) some days following the date on which the letter is dated, that being August 02, 2022, Plaintiff received a notice of denial of Plaintiff's tort claim from the Federal Bureau of Investigation; (6) some days following the date on which the letter is dated, that being July 07, 2022, Plaintiff received a notice of denial of Plaintiff's tort claim from the Department of the Army; following that initial notice of denial, (7) some days following the dates of subsequent letters sent from the Department of Army, dated September 08, 2022, and September 13, 2022, Plaintiff received notices of denial of Plaintiff's tort claim (again) from the Department of Army; (8) some days after the date on which the correspondence is dated, that being June 21, 2022, Plaintiff received acknowledgement that Plaintiff's tort claim submitted to the Court of Claims for the State of Michigan had been received and assigned a tracking number of 22-200126-o, the District of the Court responding is not included on the response; (9) some days after the date on which the correspondence is dated, that being June 24, 2022, Plaintiff received acknowledgement that Plaintiff's tort claim submitted to the Court of Claims for the State of Michigan

COMPLAINT

had been received and assigned a tracking number of 22-200133-o, the District of the Court responding is not included on the response; (10) some days after the date on which the postage stamp on the envelope is dated, that being September 13, 2022, Plaintiff received a letter with a salutation to a "Ms. Patterson," denying Plaintiff's tort claim that was submitted to the Drug Enforcement Agency, asserting that Plaintiff had not submitted an SF-95, which is incorrect – this was not an effective denial of Plaintiff's claim as letter is addressed to a Ms. Patterson and does not properly state the facts of Plaintiff's SF-95 submission, as Plaintiff properly submitted an SF-95 with Plaintiff's Federal Tort Claims Act notice; (11) some days after the date on which the correspondence is dated, that being June 27, 2022, Plaintiff received a general denial, based on the timing of Plaintiff's tort claim(s), for the Los Angeles County Board of Supervisors. On-or-about July 18, 2022, Plaintiff mailed an additional correspondence to the Los Angeles County Board of Supervisors, expressing the deliberate interference with Plaintiff discovering the source of the harms done to Plaintiff as well as the equitable tolling required as a result of said interference. Some days after the date on which the correspondence is dated, that being August 01, 2022, Plaintiff (again) received a general denial, based on the timing of Plaintiff's tort claim(s), from the Los Angeles County Board of Supervisors. (12) Some days after the date on which the correspondence is dated, that being July 14, 2022, Plaintiff received a denial of Plaintiff's tort claims, from the Department of Army on behalf of the State of Michigan National Guard, citing case law which had not relevance to the claim that Plaintiff submitted and further attempting to require an exact timeline when the facts of Plaintiff's claim(s) clearly allege the entire course-of-conduct (harassment/stalking) and literal control over Plaintiff's mind and body by those intentionally preventing Plaintiff from pursuing legal recourse. The letter further erroneously states that Plaintiff's claim was "defective." On August 01, 2022, Plaintiff emailed the Army personnel who drafted the July 14, 2022, letter to

Plaintiff. In that email, Plaintiff reasserted the justice obstructing tactics being used by those running said technologies/weapons, the fraudulent concealment those running said technologies/weapons are guilty of, Plaintiff provided the actual United States Code, Code of Federal regulations, as well as case law supporting that Plaintiff's claim was not defective and met the requirements. Plaintiff has received no further correspondence back from the individual with the Department of Army who corresponded on behalf of the Michigan National Guard – note (6) and (7) in this paragraph, as the Department of Army denied Plaintiff's tort claim(s).

423.   The identities of those running said directed energy Mind/Body Control Brain-Computer Interface Technologies/Weapons on Plaintiff, working for/with Defendants remains deliberately concealed from Plaintiff while the attacks upon Plaintiff using the same persist.

424.   The response by those running said technologies/weapons has been a full scale, ongoing, twenty-four (24) hour-a-day, seven-day-a-week, ongoing series of attacks using the directed energy technologies/weapons to inflict intentional and ongoing harm and suffering unto Plaintiff. The attacks have been ongoing since 2016.

425.   Defendants have attempted to keep Plaintiff confined within the parameters of the current link in the chain of total immersion scenarios to prevent themselves from answering for the legal consequences of their actions, all while simultaneously, relentlessly attacking Plaintiff with the microwave weapons-style use of said technologies/weapons to criminally stalk, criminally harass, and (very literally) 'torture' (as the term is defined under both federal and state law) Plaintiff as he attempts to go about his life.

426.   Plaintiff is seeking to recover compensatory damages: general damages including loss of enjoyment, emotional distress, pain and suffering in amounts to be proven at trial, special damages in amounts to be proven at trial including

Plaintiff's debt (including student loan debt) that has been forced to remain unpaid while accumulating additional interest) during such time as Plaintiff continues being held in the ongoing scenarios and prevented from advancing professionally, also including cost for medical services to address and treat the injuries and harms done to Plaintiff with said directed energy technologies/weapons in an amount Plaintiff is in the process of investigating and determining, and for such other relief as the court deems appropriate.

## NINTH CAUSE OF ACTION

**28 U.S.C. §2674 LIABILITY OF THE UNITED STATES – TORT CLAIMS (Against Defendants United States of America; United States Department of Defense (Unknown Officers, Agents, and Employees Acting Under the Direction Thereof); National Security Agency (NSA) (Unknown Officers, Agents, and Employees Acting Under the Direction Thereof); Central Intelligence Agency (CIA) (Unknown Officers, Agents, and Employees Acting Under the Direction Thereof); and Drug Enforcement Administration (DEA) (Unknown Officers, Agents, and Employees Acting Under the Direction Thereof); and DOES 1 to 10, inclusive)**

427.    The exact identities of the perpetrators of the tortious harms done to Plaintiff, those who sit at the controls of said directed energy technologies/weapons and use them to inflict serious bodily injury (including mimicking serious bodily (and mental) injury) to Plaintiff have been and continue to be deliberately fraudulently concealed from discovery by Plaintiff – Plaintiff will name DOE Defendants who are personally culpable for the intentional harms done to Plaintiff with said technologies/weapons at the soonest possible time as Defendants and the government's attorneys make required disclosures and discovery enables Plaintiff to discover the exact identities of those who remain sequestered and remotely, ongoingly harm and attack Plaintiff with said directed energy technologies/weapons.

428.    Remote directed energy technologies/weapons are being (and have, for many years, been) used to control and manipulate Plaintiff's thoughts and actions, impairing and/or augmenting Plaintiff's cognitive abilities and mimicking

COMPLAINT

volitional choice(s) by imbuing and/or neuromodulating Plaintiff's unadulterated thoughts using electrical brain stimulation techniques remotely administered using directed energy technologies/weapons.

429.   Use of the directed-energy mind/body control brain-computer interface technologies/weapons upon Plaintiff have been and continue to be coordinated with the tangible physical surroundings and tangible events occurring in Plaintiff's life, thereby creating a series of linked ongoing tangible physical environments that are coordinated using the remote administration/application of said directed-energy technologies/weapons upon Plaintiff and other individuals in those physical environments to create environments in which the parameters and the individuals therein are thereby synchronized with said technologies/weapons to fabricate/orchestrate entirely staged scenarios that simultaneously misrepresent Plaintiff's true persona, intellect, cognition, and volition while imbuing thoughts and controlling/regulating bodily and mental functions of Plaintiff, thereby fully depriving Plaintiff of protected fundamental (civil) rights, freedoms, and liberties, while continuously moving Plaintiff from one scenario to the next without ever breaking the control exerted over Plaintiff via the directed-energy mind/body control brain-computer interface technologies/weapons.

430.   Attempts to substitute the fabrications/orchestrations (created by those running said technologies/weapons) for Plaintiff's unadulterated (without the use of said technologies/weapons) 'reality'/life have been unsuccessful.

431.   Plaintiff has been (and continues being) attacked by those running said technologies/weapons and severely limited in all areas of Plaintiff's life, personally and professionally, physically and mentally by those running said technologies/weapons as they to attempt to create leverage against Plaintiff, to force/coerce Plaintiff into acceptance of the fabrications/orchestrations those running said technologies/weapons have attempted to create.

432.   The ongoing conduct of those running said technologies/weapons and

Plaintiff's resistance thereto, have resulted in those running said technologies/weapons using the same to engage in conduct that has resulted in literal "torture" (as the term is defined under 18 U.S.C. §2340 and Cal. Penal Code §206) of Plaintiff, administered throughout the day-and-night, as Plaintiff attempts to live his life (i.e. work, gym, relationships) domestically, within the United States.

433.    The gravamen of this Complaint is for the ongoing course-of-conduct harassment, stalking, complete deprivations of and intentional violations of Plaintiff's fundamental rights, civil rights, and (most basic) human rights, which are inherent in the very intentional concealment and use of said technologies/weapons, by those running said technologies/weapons.

434.    Plaintiff's ability to follow-up on each prior communication with the several federal, state, and local government agencies/entities has been interfered with and prevented by those running said technologies/weapons, preventing Plaintiff from timely follow-up immediately following the initial communication(s) made by Plaintiff.

435.    On-or-about June 15, 2022, Plaintiff sent notices (including SF-95 forms) for recovery of damages for the negligent and intentional harms done to Plaintiff by those running said technologies/weapons upon Plaintiff, as well as notices under the related state tort claims act laws for each of the states in which harm has been done to Plaintiff by those running said technologies/weapons. Those notices were sent to the following: Gavin Newsom, Governor of the State of California; Rob Bonta, Attorney General for the State of California; Michelle Lujan, Governor of the State of New Mexico; Gretchen Whitmer, Governor of the State of Michigan; Hector Balderas, Attorney for the State of New Mexico; Dana Nessel, Attorney General for the State of Michigan; David Baldwin, Adjutant General for the State of California; Kenneth Nava, Adjutant General for the State of New Mexico; Paul Rogers, Adjutant General for the State of Michigan; Alex Villanueva, (then) Los

154

COMPLAINT

Angeles County Sheriff; Michael Moore, Los Angeles City Chief of Police; Merrick Garland, U.S. Attorney General; Caroline Krauss, General Counsel at the Department of Defense; Ariane Cerlenko, General Counsel at the National Security Agency (NSA); Jason Jones, General Counsel at the Federal Bureau of Investigations (FBI); Courtney Ellwood, General Counsel at the Central Intelligence Agency (CIA); Chief Justice Tani G. Cantil-Sakauye, in her role with the Judicial Council of California; Vanessa Lynne Holton, General Counsel for the State Bar of California; Edward Hendrie, Chief Counsel for the Drug Enforcement Agency (DEA); Craig Smith, General Counsel for the Air Force; Carri Ricci, General Counsel for the Department of the Army; Sean Coffey, General Counsel for the Department of the Navy; Jonathan Meyer, General Counsel for the U.S. Department of Homeland Security; Richard C. Visek, Office of the Legal Adviser of the U.S. Department of State; Kathy Hochul, Governor of the State of New York; Letitia James, Attorney General for the State of New York; Major General Raymond Shields, Adjutant General for the State of New York; the clerk for the Los Angeles County Board of Supervisors; City Clerk for the City of Los Angeles; Keith Manes, Clerk or Authorized Agent for the County Board of Commissioners of Lea County, New Mexico; Barb Byrum, Clerk or Authorized Agent for the County Board of Commissioners of Ingham County, Michigan; Lawrence Kestenbaum, Clerk or Authorized Agent for the County Board of Commissioners of Washtenaw County; Chief August Fons, City of Hobbs, New Mexico Police Department; Jan Fletcher, City Clerk for the City of Hobbs, NM; the Risk Management Division for the State of New Mexico; the Department of General Services for the State of California; Clerks of the Courts of Claims of the third and fourth districts of Michigan; the Judicial Tenure Commission in the State of Michigan; Diane Luce, District Attorney for Lea County, New Mexico; Government Claims Program in West Sacramento, California.

436.    In response to the notices sent by Plaintiff to those in the preceding paragraph,

COMPLAINT

Plaintiff received the following responses: (1) On-or-about October 19, 2022, the Department of the Air Force issued a letter denying Plaintiff's tort claim; (2) August 30, 2022, Plaintiff received a notice from the U.S. Department of Justice, asserting that the U.S. Department of Justice would be "handling" Plaintiff's claim. On-or-about September 12, 2022, Plaintiff mailed a certified correspondence to the Civil Division, Torts Branch Paralegal who signed off on the letter to August 30, 2022, letter to Plaintiff, in which Plaintiff requested contact details to communicate directly with the Civil Division to resolve Plaintiff's tort claims with the Department, to which Plaintiff has received no response; (3) Some days following the date on which the letter is dated, that being June 21, 2022, Plaintiff received a notice of denial of Plaintiff's tort claim from the State Bar of California; (4) some days after the date on which the letter is dated, that being June 30, 2022, Plaintiff received a denial of Plaintiff's tort claim from the City of Los Angeles; (5) some days following the date on which the letter is dated, that being August 02, 2022, Plaintiff received a notice of denial of Plaintiff's tort claim from the Federal Bureau of Investigation; (6) some days following the date on which the letter is dated, that being July 07, 2022, Plaintiff received a notice of denial of Plaintiff's tort claim from the Department of the Army; following that initial notice of denial, (7) some days following the dates of subsequent letters sent from the Department of Army, dated September 08, 2022, and September 13, 2022, Plaintiff received notices of denial of Plaintiff's tort claim (again) from the Department of Army; (8) some days after the date on which the correspondence is dated, that being June 21, 2022, Plaintiff received acknowledgement that Plaintiff's tort claim submitted to the Court of Claims for the State of Michigan had been received and assigned a tracking number of 22-200126-o, the District of the Court responding is not included on the response; (9) some days after the date on which the correspondence is dated, that being June 24, 2022, Plaintiff received acknowledgement that Plaintiff's tort claim submitted to the Court of Claims for the State of Michigan

156

had been received and assigned a tracking number of 22-200133-o, the District of the Court responding is not included on the response; (10) some days after the date on which the postage stamp on the envelope is dated, that being September 13, 2022, Plaintiff received a letter with a salutation to a "Ms. Patterson," denying Plaintiff's tort claim that was submitted to the Drug Enforcement Agency, asserting that Plaintiff had not submitted an SF-95, which is incorrect – this was not an effective denial of Plaintiff's claim as letter is addressed to a Ms. Patterson and does not properly state the facts of Plaintiff's SF-95 submission, as Plaintiff properly submitted an SF-95 with Plaintiff's Federal Tort Claims Act notice; (11) some days after the date on which the correspondence is dated, that being June 27, 2022, Plaintiff received a general denial, based on the timing of Plaintiff's tort claim(s), for the Los Angeles County Board of Supervisors. On-or-about July 18, 2022, Plaintiff mailed an additional correspondence to the Los Angeles County Board of Supervisors, expressing the deliberate interference with Plaintiff discovering the source of the harms done to Plaintiff as well as the equitable tolling required as a result of said interference. Some days after the date on which the correspondence is dated, that being August 01, 2022, Plaintiff (again) received a general denial, based on the timing of Plaintiff's tort claim(s), from the Los Angeles County Board of Supervisors. (12) Some days after the date on which the correspondence is dated, that being July 14, 2022, Plaintiff received a denial of Plaintiff's tort claims, from the Department of Army on behalf of the State of Michigan National Guard, citing case law which had not relevance to the claim that Plaintiff submitted and further attempting to require an exact timeline when the facts of Plaintiff's claim(s) clearly allege the entire course-of-conduct (harassment/stalking) and literal control over Plaintiff's mind and body by those intentionally preventing Plaintiff from pursuing legal recourse. The letter further erroneously states that Plaintiff's claim was "defective." On August 01, 2022, Plaintiff emailed the Army personnel who drafted the July 14, 2022, letter to

Plaintiff. In that email, Plaintiff reasserted the justice obstructing tactics being used by those running said technologies/weapons, the fraudulent concealment those running said technologies/weapons are guilty of, Plaintiff provided the actual United States Code, Code of Federal regulations, as well as case law supporting that Plaintiff's claim was not defective and met the requirements. Plaintiff has received no further correspondence back from the individual with the Department of Army who corresponded on behalf of the Michigan National Guard – note (6) and (7) in this paragraph, as the Department of Army denied Plaintiff's tort claim(s).

437.    Complete relief to Plaintiff cannot be granted under administrative proceedings for Federal Tort Claims Act ("FTCA") relief, as the fraudulent concealment of the capabilities, use of, and source of said technologies/weapons to cause harm to Plaintiff, coordinated with doctors and attorneys as well, make it impossible for Plaintiff to fully present the entire scope of the harms done to Plaintiff in administrative proceedings for FTCA claims – such FTCA claims are a direct result of the conduct of Defendants giving rise to the *Bivens*, 42 U.S.C. §1983, and 42 U.S.C. §1985 causes of action.

438.    Defendants have attempted to keep Plaintiff confined within the parameters of the current link in the chain of total immersion scenarios to prevent themselves from answering for the legal consequences of their actions, all while simultaneously, relentlessly attacking Plaintiff with the microwave weapons-style use of said technologies/weapons to criminally stalk, criminally harass, and (very literally) 'torture' (as the term is defined under both federal and state law) Plaintiff as he attempts to go about his life.

439.    During the month of June 2022, Plaintiff filed Federal Tort Claims Act ("FTCA") notices with each named Defendant to this lawsuit, as well as several other federal departments and agencies whose coordination and/or complicity in the ongoing use of said technologies/weapons are required, without which those

running/operating said technologies/weapons would be stopped and held to answer legally for the illegal/unconstitutional use of said technologies/weapons upon Plaintiff as well as the domestic civilian population. The harms done to Plaintiff, including the affects/effects of said technologies/weapons upon Plaintiff are elaborated on and expressed more completely therein. A copy of one such notice is attached hereto as Exhibit "A".

440.    Body parts reported in Plaintiff's FTCA notices include Plaintiff's brain/mind, head (everything other than the brain/mind), teeth and gums, left shoulder (permanent shoulder injury), chest/lungs, breathing/respiratory, heartrate, abdomen including effects/affects on internal organs, genitalia, legs, knees, ankles/feet, entire body muscloskeletal system, as well as skin conditions (including those staging tangible scenarios using rodents and insects released in Plaintiff's residence as a form of harassment/stalking).

441.    Prior to disclosure of the capabilities of said technologies/weapons, Defendants used said technologies/weapons to create symptoms mimicking legitimate medical conditions for which Plaintiff would then see a doctor(s), being prescribed medication(s) for the actual medical conditions that Defendants mimicked via the remote targeting and manipulations of Plaintiff's mind and body via said technologies/weapons.

442.    Defendants used said technologies/weapons to induce false neurological symptoms, using the mind/body control brain-computer interface technologies/weapons to mimic symptoms of Post-Traumatic Stress Disorder ("PTSD"), during the years 2007 through 2016,, anxiety, depression, problems with memory, cognition, volition, for which doctors prescribed medication. Defendants continue using said technologies/weapons to actively engage and interfere with Plaintiff's cognition and volitional abilities, which is the very means by which Defendants have prevented Plaintiff from filing the lawsuit and pursuing it prior to now.

COMPLAINT

443.    Defendants used said technologies/weapons to induce a false condition, using the mind/body control brain-computer interface technologies/weapons to mimic symptoms, of Attention-Deficit Hyperactivity Disorder ("ADHD"), during the years 2013 through 2016, for which doctors both diagnosed the mimicked symptoms as such and prescribed Plaintiff medications for the conditions.

444.    Plaintiff is seeking to recover compensatory damages: general damages including loss of enjoyment, emotional distress, pain and suffering in amounts to be proven at trial, special damages in amounts to be proven at trial including Plaintiff's debt (including student loan debt) that has been forced to remain unpaid while accumulating additional interest) during such time as Plaintiff continues being held in the ongoing scenarios and prevented from advancing professionally, also including cost for medical services to address and treat the injuries and harms done to Plaintiff with said directed energy technologies/weapons in an amount Plaintiff is in the process of investigating and determining, and for such other relief as the court deems appropriate.

## 7. Demand for Jury Trial

Plaintiff requests a jury trial on all issues.

Respectfully submitted,

_12/14/22_
Date

Scott P. York
Plaintiff, in Propria Persona

COMPLAINT

EXHIBIT A

**SCOTT YORK**
32 Esperanza Ave, #204, Long Beach, CA 90802 | Tel. (323) 359-9336
Scott.york@live.com

Section numbers on this document correspond to the numbered boxes on Federal Form SF95-07a, "CLAIM FOR DAMAGE, INJURY, OR DEATH" for the initiation of claims filed under the Federal Tort Claims Act. Also being submitted with related state government tort claim filing(s) as the state and federal are inextricably intertwined. It should be noted at the outset, due to the ongoing nature and consistent/persistent use of the military-grade technologies/weapons upon the individual submitting this claim, as well as the course-of-conduct of those involved in running/operating said technologies/weapons, which is designed to force/coerce the person filing this claim to forego pursuing such a claim and/or to make it impossible for the person filing this claim to pursue such a claim, technologically induced mental and physical impairments continue being run/administered upon the person filing this claim as an attempt by those running said technologies/weapons to circumvent the legal rights and thereby the legal recourse due to the person filing this complaint. **Equitable tolling applies.**

May 24, 2022

**1. Appropriate Government Agency:**

General Counsel
Litigation Division
Office of the General Counsel
Central Intelligence Agency
Washington, D.C. 20505

**2. Name, address of claimant, and claimant's personal representative if any:**
Scott Philip York ("COMPLAINANT" or "CLAIMANT")
32 Esperanza Ave #204
Long Beach, CA 90802

**3. Type of Employment:**
Planitiff is employed as a non-governmental worker and is a U.S. citizen, civilian

**4. Date of Birth:**
April 30, 1974

**5. Marital Status:**
Single

**6. Date and Day of Accident; and 7. Time (A.M. or P.M.)**
The dates of the specific instances of harm span several states and have occurred at various actual locations within those several states over several decades resulting from the course of conduct engaged in by those running the individual segmented links which taken together create the continuous chain required to maintain the continuity (and thereby the (attempted) plausibility) of the fabricated storyline which is the government's attempt to fabricate an entire individual persona, false narratives, manufactured instances and occurrences, even manipulating thoughts, feelings, emotional responses, and relationships (personal, professional, intimate, etc.) in what has been an ongoing chain of links in that total immersion chain going back over more than forty (40)-years, starting during COMPLAINANT's childhood, with the apparent intent being the use of mind/body control brain-computer interface technologies/weapons to fabricate an entire storyline for COMPLAINANT's life. Mind/body control brain-computer interface

technologies/weapons ("weapons" as the components are military-grade components of
weapons systems, designed and developed with military needs and research funding behind the
elemental components) have been a core component of the attempted fabrication of the ongoing
total immersion timeline. Existence of such technologies/weapons have been intentionally and
deliberately concealed from COMPLAINANT throughout the many years of their use. Thereby,
the use of the technologies/weapons to control, impair, impede, modulate, replace, embellish
upon, and/or completely block COMPLAINANT's ability to think, act, and reason were
deliberately concealed from COMPLAINANT until 2016, following COMPLAINANT's
graduation from law school, when COMPLAINANT was brought back to Southern California
by those running said technologies/weapons.

A significant timeline of evidence exists establishing the ongoing chain of events and thereby
the overlay those running said technologies/weapons have attempted to fabricate, attempting to
frame COMPLAINANT with a false persona, a false set of personal characteristics, and
ultimately a completely fake storyline of COMPLAINANT's life via the use of said
technologies/weapons, coordinated further with the tangible environments through which
COMPLAINANT has been (and continues being) moved. The synchronization of the
mind/body control brain-computer interface technologies/weapons with the physical
environments/surroundings through which COMPLAINANT is moved, including other
individuals being controlled in those tangible environments via the same technologies/weapons,
create a completely fabricated set of conditions that are both designed and used for the purpose
of attempting to fabricate/orchestrate an entirely manufactured/fabricated set of conditions using
the real world, real people, and control over electronic devices in the world as the component
parts but controlling those component parts via a computerized queuing/management system
(an "internet of things" remotely running devices capable of interfacing with a computer(s)) as
well as several other computerized programs/systems to control/affect the minds, bodies,
communications and interactions of those within the controlled tangible environments.

Parties/government actors in those tangible environments know of and participate in the use of
said technologies/weapons but never disclosing or speaking of them directly with
COMPLAINANT. One outcome/result of such conduct is entrapping COMPLAINANT within
a tangible environment deliberately, knowingly, and recklessly designed to make
COMPLAINANT feel criminally stalked and criminally harassed.

Such controlled tangible environments have been used over the course of many years to attempt
to enmesh the fabricated actions of COMPLAINANT within a group of individuals who were
there to both facilitate and further the plausibility of the tangible environment while those
individuals thereby simultaneously were intended to and did appear to COMPLAINANT to be
"witnesses" to every act/action of COMPLAINANT, despite countless acts/actions of
COMPLAINANT being entirely fabricated or embellished upon to cause COMPLAINANT to
act, say, or do some thing or some things that would be COMPLAINANT's corporeal person
actually engaging in the action, words (spoken or written), or any other of an endless number of
possible acts/actions/activities a human being can engage in of their own volition but which
were done in COMPLAINANT's life by an overarching level of human operated military-grade
technologies/weapons with the deliberate intent being the fabrication of a false
persona/storyline/overlay onto COMPLAINANT's life, with (again) the apparent intent being
the fabrication of an entirely fake path through COMPLAINANT's life. The obvious question is
"why would the government do this?" The obvious answer thereto being the exercise of control

over social and political issues the development and use of such technologies/weapons would give to a country with such capabilities to address and resolve conflicts. The problem with that motive and the basis of COMPLAINANT's standing to file and receive relief is that the use of the technologies/weapons and those running them fabricated scenarios in COMPLAINANT's actual life, over many years, as both their attempt to accomplish their goal of creating an entirely fabricated storyline in a human being's life while simultaneously working to develop the storyline in such a way as to attempt to explain away the illegal use of the technologies/weapons on COMPLAINANT or at the very least appear so daunting for COMPLAINANT to overcome that COMPLAINANT would not want to and/or would not be able to (based upon the relentlessness of those running said technologies/weapons) file and pursue legal redress for the wrongful conduct and illegal/unconstitutional actions of those running said technologies/weapons. The legal question to be asked at this juncture of understanding being 'is it reasonably foreseeable that such a scheme would result in physical harm to Complainant?' The answer to that being, it is not only reasonably foreseeable but a certainty that harm would be done to Complainant given the design and intended use of such technologies/weapons. The result has been that over the last six plus (6+) years, since January 2016, COMPLAINANT has been and continues being criminally stalked, criminally harassed, physically and psychologically (literally) tortured, by those running/operating said technologies/weapons who attempted to fabricate the overlay/storyline going back more than forty (40) years in COMPLAINANT's life. COMPLAINANT is a U.S. citizen, whose family, both maternal and paternal, have been U.S. citizens for multiple generations. Thereby, COMPLAINANT claim no allegiance to any other country, and COMPLAINANT has always supported the U.S. government as well as the U.S. Constitution. The set of conditions COMPLAINANT is seeking relief from are those persons and entities acting within the United States, at the federal, state, local, and community levels whose conduct/actions therein are the conduct/actions of violent extremists using government resources domestically to circumvent the order of law, violate the U.S. Constitution, and engage in acts of violent extremism relying upon their current and past (going back forty-plus (40+)-years) roles in government as unsupported legal justifications for their illegal conduct/actions. Beyond the civil damages COMPLAINANT is claiming, there are countless individuals who would have been and are needed to carry on the illegal conduct/actions directed at and imposed upon COMPLAINANT over the entirety that the same has been running on COMPLAINANT and destroying his life. Thus, criminal investigations are warranted and necessary to ensure the same is not being done to others. Complainant needs to be (as a matter of rights/liberties) permitted to live his life without is being directed by individuals running brain-computer interface technologies/weapons who continue trying to force/coerce Complainant to accept their fabrications/orchestrations upon Complainant's life. Those running said technologies/weapons on Complainant are violent extremists, seditious conspirators, and/or domestic terrorists.

The timeline extends back many years. The most recent chain in the link of ongoing total immersion links in the timeline of COMPLAINANT's life is the link beginning in October 2016 and running through the present time in the timeline/table that follows in this document. Upon COMPLAINTANT driving back across the state line into the State of California in October 2016, as those running the technologies/weapons coordinated to happen, those running the technologies/weapons made it very clear to COMPLAINANT that they were operating the technologies/weapons that have the capabilities to control every aspect of COMPLAINANT's mind and body. As soon as the use of said technologies/weapons were revealed to COMPLAINANT, the prior events that were fabricated in COMPLAINANT's life, to

COMPLAINAINT's detriment, all fell into place and made sense. When the deliberate
concealment of the source of the damages in COMPLAINANT's life were revealed, those
matters became ripe for adjudication, despite some of them happening many years beyond the
date(s) when the statutes of limitations would have run, had the use of said
technologies/weapons been known to COMPLAINAINT at the times said damages occurred
and if those running said technologies/weapon had not (in actuality) been running them to
deliberately create those damages to COMPLAINAINT's life at those times. Thus, revealing (to
COMPLAINANT) the existence and use of the technologies/weapons and the capabilities of the
same, COMPLAINANT instantly recognized the effects/affects of said technologies/weapons as
the source of multiple instances of past damages in COMPLAINANT's life. Those running the
technologies/weapons in 2016, revealed them to COMPLAINANT with ongoing harsh and
deliberate targeted remote attacks on COMPLAINANT's mind and body, the exact nature of
which will be discussed in a bit more detail in the "BASIS OF CLAIM" section that follows in
this SF95-07a Federal Tort Claims Act (FTCA) notice of claim. Those attacks have persisted
daily/nightly every day and night, all day and night, through the time of this Notice, with said
attacks abating briefly enough for me to compose and send this Notice. Notably, each link in the
total timeline relied upon the orchestrations/fabrications in the preceding link. Such continuity
of the overall attempt to frame a false overlay/persona unto COMPLAINANT and thereby
attempt to frame an entirely false overlay/persona of COMPLAINANT as to his entire life,
required ongoing continuity at an overarching level of coordination with access to government
resources and at a level at which the participation of individuals in various locations could be
retained with certainty while those running the scenarios also have unlimited access to the
government infrastructure, technologies/weapons, resources and the apparent authority to
engender the trust and support of those needed to coordinate the technologies/weapons. Control
over the foregoing resources has been combined with the ability to limit the information that
COMPLAINANT has been allowed access to, thereby intentionally preventing
COMPLAINANT's discovery of the source of the technologies/weapons and thereby
attempting to convince COMPLAINANT that the false persona and the results thereof were/are
legitimate results of COMPLAINANT having been the sole volitional cause of all events in
COMPLAINANT'S life, which (of course) was more an attempt to mentally brainwash
COMPLAINANT.  that the persona being overlaid unto COMPLAINANT's mind and body
(via the technologies/weapons) was/is COMPLAINANT's genuine, unaffected (by
technologies/weapons) disposition and persona, which (despite the manipulations and blocking
of COMPLAINANT's thoughts) COMPLAINANT knows and has always known (as a matter of
what seems to be an unresolvable issue of the technologies/weapons of trying to manipulate a
human's thoughts and actions via said technologies) who he is as a person versus the persona
those running, operating, and/or participating in the use of said technologies/weapons have
attempted to create. COMPLAINAINT has always recognized the persona, thoughts, emotions,
responses, etc. the technologies/weapons are/were being used to attempt to overlay were
somehow amiss, a "disconnect" was created in COMPLAINANT's life – the "disconnect"
being the actual volitional thoughts and persona of COMPLAINANT versus the thoughts and
persona projected onto COMPLAINANT's mind and body via the mind/body control brain-
computer interface technologies/weapons. Those running the technologies/weapons have
attempted to plausibly 'explain away' the 'disconnect' between the thoughts, actions, emotions,
responses, circumstances of COMPLAINANT's life by blaming the 'disconnect' on
"shortcomings" of COMPLAINANT's personal character. These issues are presented in this
section, "Date and Day of Accident" as there is a continuous chain of intentionally harmful
conduct done unto COMPLAINANT, over many years by the same entities/government actors

still running said technologies/weapons, which turned into daily/nightly, 24-hour-a-day, seven-day-a-week, unrelenting use of the technologies/weapons to physically, mentally, and emotionally attack COMPLAINANT, as those running said technologies/weapons seem to realize that failing to have COMPLAINANT capitulate to and accept the fabricated storylines they have attempted to create in COMPLAINANT'S life over the last forty-plus (40+)-years, **after** they deliberately (finally) revealed the use of said technologies/weapons to COMPLAINANT **in 2016**, draws the past damages created to the present (when the source was revealed) and has serious legal consequences for past instances for which statutes of limitations would have run but for the deliberate and intentional concealment of the technologies/weapons from being discovered by COMPLAINANT, which (such discovery by COMPLAINANT) finally occurred in 2016. The evidence shows, those running said technologies/weapons on COMPLAINANT since 2016, have been engaged in daily/nightly, 24-hour-a-day, seven-day-a-week, unrelenting use of the technologies/weapons to physically, mentally, and emotionally attack COMPLAINANT, which (at face value), without addressing the related *Bivens* claims for the same, (at a bare minimum) is a string of a countless number of aggravated criminal and civil batteries upon COMPLAINAINT, as he has attempted to work, live life, with the hopes (prior to being literally ongoingly tortured) of finding a wife to have kids with, all following several years of being criminally harassed and criminally stalked by the same government entities prior to law school. COMPLAINANT has been further prevented from filing the federal lawsuits for the same. Twenty-four (24) hour-a-day, seven (7)-day-a-week, monitoring of Complainant, in every moment of Complainant's life, by those running said technologies/weapons have been done consistently, which truncates COMPLAINANT's ability to properly notice and then follow through with all the subsequent required steps to see through the filing and litigation of federal lawsuits to address the same. Thereby, those running the technologies/weapons keep tolling all the statutes of limitations, for every illegal act they commit in attacking COMPLAINANT with said technologies/weapons, as they intentionally and deliberately create a mental inability/incapability for COMPLAINANT to pursue the legal issues, and they do so via the use of the technologies/weapons, thereby preventing COMPLAINANT's access to justice via force/coercion/attempted intimidation. The same tolling applies to the filing deadlines for an entire slew of past legal damages incurred by COMPLAINANT, as a result of the same technologies/weapons/government entities/actors, that were all drawn to the present in 2016, when the existence and use of said technologies were revealed to COMPLAINANT, as (again) since that time, those running said technologies/weapons on COMPLAINANT since 2016, have been engaged in daily/nightly, 24-hour-a-day, seven-day-a-week, unrelenting use of the technologies/weapons to physically, mentally, and emotionally attack COMPLAINANT. COMPLAINANT has been further prevented from filing and seeing through the federal lawsuits for the same. COMPLAINTANT has been prevented from finding legal representation to pursue the actual causes of action disclosed herein, as the coordination of said technologies/weapons is done to deliberately hold Complainant in an artificially created set of conditions, one purpose being to prevent and attempt to dissuade COMPLAINANT from seeking/pursuing legal relief/redress for the same. Twenty-four (24) hour-a-day, seven (7)-day-a-week, monitoring by those running said technologies/weapons are constant, which truncates COMPLAINANT's ability to properly notice and then follow through with all of the subsequent required steps to see through the filing and litigation of federal lawsuits to address the same. Those running the technologies/weapons set up a scenario in which they attempted to trap and overwhelm COMPLAINANT but have done those very things to themselves. If they allow me to continue pursuing this matter at this point, following this notice, I will (with 100% certainty) pursue it to recover the damages I am entitled to and thereafter press for criminal charges

against those who have sat at the controls and committed the criminal acts against me. The individuals are criminals on U.S. soil and their actions cannot, as a matter of precedent, be permitted and overlooked. If they interfere with my mental and physical capacities to continue pursuing the legal causes of action this notice is intended to initiate, which they have already done repeatedly with their most recent conduct being with letters that I was attempting to draft and send in December 2021/January 2022, they will again intentionally and deliberately truncate my ability to persist in seeking legal redress for damages, which will then (again) toll the deadlines on all of these legal issues. A cursory overview of the timeline is as follows:

| YEAR(S)<br>Each block of time can be viewed as one "LINK" in the chain of linked total immersion experiences COMPLAINANT references throughout this Complaint. | LOCATION |
| --- | --- |
| October 2016 through Present | Southern California, including but not limited to Los Angeles County, San Bernardino County, Riverside County, and San Diego County and all areas surrounding and between |
| January 2016 through September 2016 | New Mexico, including but not limited to Albuquerque (Bernalillo County), Hobbs (Lea County), Roswell (Chaves County), Carlsbad (Eddy County) and all areas surrounding and between. During the month of September 2016 and the beginning of October 2016: Western New York State, including but not limited to Buffalo (Erie County) and all areas surrounding and between |
| 2013 through 2016 | Michigan, including but not limited to Ann Arbor (Washtenaw County), Lansing (Eaton, Ingham and Clinton Counties) and all areas surrounding and between |
| 2001 through 2013 (Los Angeles)<br>2000 through 2001 (San Diego)<br>1996 through 2000 (Los Angeles) | Southern California, including but not limited to Los Angeles County, San Bernardino County, Riverside County, and San Diego County and all areas surrounding and between |
| 1994 through 1996 (Buffalo)<br>1992 through 1994 (Potsdam) | Western and Northern New York State, including but not limited to Potsdam (St. Lawrence County), Buffalo (Erie County) and all areas surrounding and between |
| 1974 (or sometime within the years thereafter) through 1992 | Western New York State, including but not limited to Buffalo (Erie County) and all areas surrounding and between |

**8. Basis of Claim:**

**Re: Multiple Causes of Action for Federal Lawsuits For both Injunctive Relief and Legal Damages for the Illegal/Unconstitutional Uses of Microwave (RF) and Related Technologies Domestically, on a U.S. Citizen (COMPLAINANT) on U.S. Soil, with the Intents and Purposes to Incorporate Federal, State, and Local Actors, in a Deliberate Interplay of**

**Federal Control Relying upon State Government Agencies/Entities as the Loci at Which the Federal Fabrications/Orchestrations Become Tangible Events in the Life of the Individual (COMPLAINANT) and Attempt to Form a Wholly Fabricated Path Through the Life of The Targeted Individual (COMPLAINANT), with Said Activities Now Having Culminated in ongoing acts of <u>Physical Torture of a U.S. Citizen on U.S. Soil</u> as a Direct Consequence of a Failure within the Aforementioned System to Convincingly Achieve the Attempted Fabrications and the Resistance of COMPLAINANT to Voluntarily Subjugate his Constitutional Rights to Those Entities Using Said Technologies Attempting to Force/Coerce COMPLAINANT to Capitulate to the Unconstitutional Scheme(s)/Agenda(s) Being Run via Said Technologies**

Pursuant to the Constitution of the United States of America, the federal laws thereunder, as well as state and local government laws, statutes, and ordinances, this document shall serve as Notice of both negligent and intentional acts of both federal and state officers, agents, employees, assigns, and parties acting under color of authority derived from the aforementioned, against the following:

"COMPLAINANT"/aggrieved party:  Scott Philip York ("COMPLAINANT")

COMPLAINANT's contact address:  32 Esperanza Ave #204, Long Beach, CA 90802

Date(s) of conduct complained of:
  1) Dates of the <u>most recent link</u> in the chain of sequenced scenarios, dating back multiple decades, include every day from approximately October 2016 through the date of this Notice, and continuing/persisting to the present time as an  ongoing course of conduct which has always possessed of acts of physical "torture"[1,2] of COMPLAINANT, a U.S. citizen on U.S. soil.
  2) Dates prior to October 2016, span back several decades, to approximately the early 1980's (equitable tolling applies).

**INTRODUCTION:**

Plaintiff has been and continues being targeted with directed energy, military-grade microwave (and other wavelength) radio-frequency (rf) technologies[3] paired with brain-computer interface[4] technologies, coordinated under the umbrella of multiple federal

---

[1] "(1) 'torture' means an act committed by a person acting under the color of law specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control;" 18 U.S.C. §2340

[2] Pen. Code 206.   Every person who, with the intent to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose, inflicts great bodily injury as defined in Section 12022.7 upon the person of another, is guilty of torture.

[3] FOIA Release: Case #614F-06, December 13, 2006, Department of the Army, United States Army Intelligence and Security Command, Freedom of Information/Privacy Office, Fort George G. Meade, Maryland 20755-5995
[4] United States Patent 3,951,134, Malech, Robert G., April 20, 1976, Apparatus and Method for Remotely Monitoring and Altering Brain Waves

departments and agencies (being operated by national/federal government military, national and state guard and administrative personnel, unelected administrative agency officials, as well as civilian level personnel, spanning to include both elected and unelected civic leaders within the community at-large). Said technologies are deliberately coordinated with and in reliance upon state and local government departments/agencies, which trickles down to those state and local departments'/agencies' relationships with community-level groups, clubs, organizations, and all community-based programs, as a means of complete mind-and-body control over COMPLAINANT and every facet of his life, which have been used to deliberately target and attack COMPLAINANT's beliefs (personal, social and political), of which Plaintiff's beliefs are 100% in support of the established constitutional democratic republic of the United States. The actions of those running, operating, and/or participating in the use of said technologies/weapons upon COMPLAINANT, are unwarranted, legally indefensible, intentional, and deliberate attacks on COMPLAINANT in every area of his life. What appears to have been intended to be some sort of government-run social/political policy has been run to deliberately deprive COMPLAINANT of his individual rights and liberties, with the predicate for the same being entirely fabricated using the same technologies/weapons. Violent extremists are (and have been, based upon the entire timeline of the ongoing total immersion scenarios) participating in the use of military-grade mind/body control brain-computer interface technologies/weapons on the domestic population. Based upon the ongoing conduct and acts of those running said technologies and coordinating the events/scenarios thereunder, those running said technologies/weapons appear to have views contrary to the observance of the rights and protections afforded under the U.S. Constitution. The conduct of those running said technologies/weapons upon COMPLAINAINT have been and remain violent and extreme, without necessity for such extreme and violent conduct and with the intentional violation of fundamental rights. Those engaged in the conduct appear to be violent extremists working within government and/or community groups under auspices of some false legal justification that does not truly exist. They consistently, ongoingly, and deliberately choose to act contrary to the Constitution, maliciously, oppressively, and in reckless disregard for COMPLAINANT's rights, act outside of the legal system that is in place, in direct and intentional contravention to the laws, despite there being no legitimate necessity for doing so, evidencing that ill will, spite, and/or the intent and purpose of those running said technologies/weapons are doing so to purposefully injure COMPLAINANT. The technologies/weapons being used to cause COMPLAINANT harm are military-grade and operated with the purposeful intent of causing harm to COMPLAINANT. The use of said technologies/weapons by those running them continue being used in reckless disregard of COMPLAINANT's rights, with (as significant evidence will show) is done with complete indifference to COMPLAINANT's safety and rights, with those running said technologies/weapons knowing their actions violate COMPLAINANT's rights and knowingly persisting with full knowledge of the rights of COMPLAINANT that they are violating. Those running said technologies/weapons are unnecessarily harsh, severe, and misuse/abuse the power/authority they have in their access to the technologies/weapons and the infrastructure required to operate them domestically, using such power/authority to deliberately oppress COMPLAINANT and create disabling conditions unto COMPLAINANT which would not exist but for the illegal/unconstitutional use of said technologies/weapons. The only factually reasonable explanation of the extreme and violent conduct of those running said technologies/weapons upon COMPLAINANT is their ongoing attempt to obfuscate the factual realities of the crimes they have committed against COMPLAINANT, which are human rights violations, which they persist in because of the long history of criminal acts they have previously committed against COMPLAINANT via the same use of said technologies/weapons and the

damage they have done and continue to do to COMPLAINAINT, as many of those involved seem to have (erroneously) believed they were/are somehow legally immune from liability/culpability for engaging in deliberate acts of violence and extreme behavior from their remote, sequestered location at the controls of said technologies/weapons, with the government deliberately concealing the use of said technologies/weapons from COMPLAINANT until recently, in 2016. Said technologies/weapons continue being used to attempt to intimidate, induce fear, force, coerce, stalk, harass, and deliberately deprive the rights of COMPLAINANT, all done without any observance of due process and/or legal protections afforded U.S. citizens under the Constitution, notably so when the U.S. citizen is and at all relevant times been present on U.S. soil, within the jurisdiction of the fully functioning U.S. legal system, rendering claims of "martial law" (as some possible defense) moot at the outset. What becomes significantly more clear, when viewed in context with a presentation of the entirety of the evidence, has been use of said technologies/weapons as both an unconstitutional/illegal medium through which those running said technologies have used the technologies/weapons to attempt to communicate their views/opinions/ideologies including social and political positions on current events, using said technologies/weapons to (very literally) implant thoughts/ideas into COMPLAINANT's head/mind for the sole purpose of then using said technologies/weapons as a means of physically attacking COMPLAINANT to attack the very thoughts/ideas those running said technologies/weapons implanted/imbued into COMPLAINANT's mind/psyche. The apparent intent of those running/operating said technologies for this purpose seems to be that they are trying to frame COMPLAINANT as having a false persona which they then wish to appear to shape/change, as some attempt to claim they have successfully changed/altered COMPLAINANT's views/perceptions with such attacks via the technologies/weapons and those involved in running/operating the same. It is an apparent attempt to manufacture/fabricate a 'victory' and/or 'successes for those participating in running/operating the same technologies/weapons. This very same premise – attempting to manufacture/fabricate a 'victory' and/or 'success' for those at participating in running/operating the same technologies/weapons seems to be an overriding theme of the illegal/unconstitutional use of said technologies/weapons over many years but more pronounced during the last six (6) years, as said technologies/weapons have been used to prevent COMPLAINANT from (literally) thinking and choosing courses of action to alleviate the illegal/unconstitutional use of said technologies/weapons. Instead, those participating in running/operating the same have used the directed energy technologies to (literally) attack COMPLAINAINT's brain/mind, relying on neuromodulation[5] and brain-computer interface technologies/weapons to fully incapacitate, interfere with, impair, embellish upon, and/or completely fabricate/replace COMPLAINANT's mental functions. The entire exercise is one of deliberate torture of COMPLAINANT, as futile as the motivations of those engaged in the acts truly are, the actions themselves fall squarely under the federal laws, 18 U.S.C. §2331(5), *et seq.*, defining the same as "domestic terrorism," which states the following:

> The term "domestic terrorism" means activities that –
> (A) Involve acts dangerous to human life that are a violation of the criminal law of the United States or of any State;
> (B) appear to be intended—
>     (i) to intimidate or coerce a civilian population;
>     (ii) to influence the policy of a government by intimidation or coercion; or

---

[5] Robert G. Malech, U.S. Patent No. 3,951,134. Apparatus and Method for Remotely Monitoring and Altering Brain Waves, April 20, 1976. Plainview, N.Y.

(iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping, and

(C)  occur primarily within the territorial jurisdiction of the United States.

Those running said technologies use this technique/method to attack every personal characteristic of COMPLAINANT which are protected characteristics under federal and state "hate crimes" legislation, including attacking COMPLAINANT's race, gender, religious/faith beliefs, nationality, ethnicity, and sexual orientation. Attacks such as these are done to COMPLAINANT all while the same technologies/weapons are used to interrupt, interfere with, impede, impair, inhibit, and completely stop COMPLAINANT's normal cognitive and volitional abilities, replacing, augmenting, substituting, and/or imbuing thoughts that originate with those at the controls of said technologies. The technologies/weapons are used to exert complete physical control over COMPLAINANT's actions, including every aspect of COMPLAINANT's interactions with others, including causing COMPLAINANT to speak and write thoughts and ideas that are wholly fabricated, generated by and originating from those running said technologies/weapons, which are ongoing acts designed to both deliberately defame, frame, and misrepresent COMPLAINANT, as well as attempts by those running said technologies/weapons to fabricate evidence in violation of 18 U.S.C. 1519. In addition to the federal causes of action associated with creating/fabricating false communications from COMPLAINAINT, there are the tort law claims related to this conduct, including defamation, both libel and slander. Fabricating what COMPLAINANT says and further fabricating text messages, emails and/or written correspondence includes long strings of texts, appearing to come from COMPLAINANT but controlled/fabricated by those running said technologies/weapons to attempt to further frame a narrative of both a fabricated and/or embellished upon persona of COMPLAINANT while simultaneously being used as an attempt to create a tangible physical record, which has a time and date associated with it, as a means of attempting to make COMPLAINANT appear to be engaged in volitional conduct (initiating and sending long strings of text messages) while (as the appearance of those running said technologies/weapons appears to be intended to portray) (during the same time of the long strings of texts, which have times and dates associated with them, are being fabricated and (appear to be) the cognitive choice of COMPLAINANT to send them, as the messages are being sent via control of COMPLAINANT using COMPLAINANT's cellular phone) COMPLAINANT is not filing for legal relief/redress for all of the damages complained of herein – again, this is an example of the ongoing attempt(s) by those running said technologies/weapons to fabricate/falsify/alter tangible evidence which would intentionally interfere with COMPLAINANT from obtaining relief in a federal lawsuit(s) for the same. This ability to completely control COMPLAINANT's tangible physical actions/conduct/behaviors in the form of creating tangible physical records, events, interactions, and scenarios in COMPLAINANT's life, has been taken further, completely controlling/compelling COMPLAINANT to engage in conduct/actions COMPLAINANT would not otherwise engage in. These fabricated scenarios have persisted for isolated moments as well as long stretches of several months, during which COMPLAINANT has been manipulated and controlled through every aspect and action in his life by those remotely operating/running said technologies/weapons to effectuate the physical conduct of COMPLAINANT. The importance of that is that COMPLAINANT fully recognizes being held in the ongoing fabricated/staged sequencing of events, as those running/operating them attempt to frame/construct the entire path/storyline of COMPLAINANT's life, which deprives COMPLAINANT of every fundamental right and liberty, going much further than that to actually control COMPLAINTANT's mental and bodily functions, inducing pain, suffering, mental and bodily

anguish, all without affording any constitutional protections to COMPLAINANT, all done on U.S. soil, and all predicated on perpetuating the previous links in the chain of total immersion links, as those running/operating said technologies/weapons continuously use said technologies/weapons to attempt to force their past fabrications/orchestrations into COMPLAINANT's psyche/acceptance by projecting false narratives the same individuals fabricated/orchestrated in COMPLAINANT's past, using the same to imply threats that they will fabricate additional false narratives and coordinating the projecting of past, staged false scenarios while projecting/triggering COMPLAINANT's mind to experience feelings/emotions in relation to the thoughts those running said technologies/weapons are projecting into COMPLAINANT's mind, with the intent being to intimidate, force, and coerce COMPLAINANT into acceptance of the past false fabrications and thereby 'play the part' presently that those running said technologies/weapons have tried to fabricate for COMPLAINANT. The whole thing works as a means of torture but falls very short on being a convincing replacement for a legitimate substitute of COMPLAINANT's natural human life.

During the time(s) when the technologies/weapons are being used to completely control COMPLAINANT's conduct/actions, COMPLAINANT can do nothing to stop the actions. During the time(s) when the tangible physical actions of COMPLAINANT are being completely controlled, the signals targeting COMPLAINANT's brain dominate COMPLAINANT's own volitional and cognitive abilities, meaning COMPLAINANT can do nothing to alter the conduct/behavior being projected onto his mind/body, nor can COMPLAINANT consciously stop the conduct those projecting actions into his mind intend for COMPLAINANT to engage in. After being put through such an experience/incident, during which COMPLAINANT was completely controlled, the technologies/weapons continue being run on the COMPLAINAINT, but COMPLAINANT has a sense that what just happened was not something that occurred naturally, meaning the exercise of the complete controls of the technologies/weapons seems to prevent the brain from fully acknowledging the completely controlled experience/incident from registering as a naturally occurring experience in the life of the individual being controlled. The memories from the staged/fabricated experiences/instances are in COMPLAINANT's memory, but they seem to be stored differently than memories of more naturally occurring experiences/instances. The same technologies/weapons are used to further impair/impede the controlled individual's thoughts, preventing them from focusing too much on the completely controlled scenario that has just passed, as the control persists (at some level) compelling the controlled individual to move forward in their life with the tangible experience being just that, a tangible experience, but one which the controlled individual may not actually register as being something that was their own, volitional conduct, which results in the tangible experience not necessarily feeling like it was a "real" experience that they chose and thereby have feelings around.

Established laws and legal precedents all rely upon the basic laws of nature, not upon technologies capable of controlling human beings, those being technologies/weapons with the capacity to fabricate behaviors/actions of human beings but for which both the actus reus and mens rea are controlled via a brain-computer interface and not by the person actually being put through the tangible scenario. As an example for illustrative purposes, what is capable with the technologies/weapons, is the ability to completely control an individual in every aspect of their conduct, meaning speech, motion, interactions with others, even bodily reactions/responses (i.e. heart rate, breathing, physical motion, emotions, fears, etc.). If a person who does not know of the capabilities of the technologies/weapons views the individual being completely controlled,

the observer would believe the actions of the completely controlled individual were of that
individual's own volition. If we were to video tape the same controlled individual, we would
have a tangible record of the actions that the corpus of the completely controlled individual
engaged in, but that video evidence would be false evidence, as the acts were not (in any way)
the volitional choices of the individual seen committing the acts in that video. When evaluating
the mens rea and actus reus of an individual in conduct being reviewed in the context of
a legal proceeding before a body designated to review such a matter (i.e. a court, an investigative
agency, etc.) and created to deliver a legal ruling when the findings of fact, including the
individual's actions, are applied to the law, we cannot rely upon the video to convict the
individual in the video if the actions of the individual are controlled via said
technologies/weapons. Taken a step further, the Constitution was created to grant certain powers
to different branches of government and place restrictions on government while conferring legal
rights and protections on individuals. One important protection of the Constitution is to protect
the individual from the overreach of government, which has the power and size to swallow up
individual rights without ever noticing such individual rights have been violated until long after
the violation of the same has occurred. The import of this is that we do not designate ANYONE
in our country the ability to intentionally control individuals' bodies and mind via said
technologies/weapons, notably without the consent of the individual, without some exigent
circumstance(s), without affording the individual legal protections under the Constitution, and
certainly not without providing individuals a means of legal recourse/redress if some person(s)
engages in harmful illegal/unconstitutional conduct towards them with said
technologies/weapons. Said technologies/weapons are a much greater threat (being kept secret)
to this country's national security and the individual rights of U.S. citizens than they ever will be
a benefit. Such is true in the very instance(s) complained of herein. Violent extremists are
committing acts of torture on COMPLAINANT in Southern California, and COMPLAINANT is
being (ongoing for over six (6) years currently, following graduation from law school) prevented
from access to the courts for injunctive and legal relief.  Considering the applications of said
technologies, it is a novel concept for our system of justice (albeit a concept that is clearly past
due in its time for coming into alignment with our justice system) that a person's mens rea and
actus reus may be artificially fabricated/created via the use and application of technologies such
as those COMPLAINANT has been and continues being targeted with. The foregoing, at a bare
minimum, require the full disclosure of the existence and use of said technologies/weapons
domestically, on the civilian population of the United States. Concealment of the source of said
technologies/weapons places U.S. citizen civilians in the precarious position of permitting the
ongoing violation of their individual rights under the auspices that the people running the
technologies/weapons can be trusted by them. COMPLAINANT's assertions, as stated herein,
are clear evidence that such trust is misplaced and cannot be relied upon by all indefinitely.  – a
massive substantive due process violation exists. Someone in the good graces of the individual at
the controls of the technologies/weapons today can be disfavored by the person(s) the
individual(s) at the controls of the technologies/weapons tomorrow. Further, U.S. civilians
cannot rely on the source of the technologies/weapons always being controlled from a source
domestically, meaning that once U.S. civilian have willfully and voluntarily surrendered their
rights to those running the illegal/unconstitutional technologies/weapons domestically, a foreign
power/entity could interfere with the system, thereby placing the entire domestic U.S. population
under the control of a foreign adversary with U.S. citizens/civilians never having an opportunity
to defend themselves or the United States, as those willfully consenting to being under the
control of those they (somewhat misguidedly) trust, who are running said technologies/weapons
today, will have no chance to resist if a foreign power/entity overruns the technologies/weapons.

The capabilities of the technologies/weapons to control all mental and physical bodily functions (including heart rate/function) mean the technologies/weapons can kill people with little more than a few keystrokes at the controls of the computer the technologies/weapons are being run through. The U.S. population being entirely controlled by a foreign power that gains access to the technologies/weapons is the lesser of the harms when viewed in totality, knowing the technologies/weapons can kill mass groups (likely everyone under the control of said technologies/weapons) simply by someone at the controls entering a few commands on a computer. An unseen, non-public source secretly controlling the U.S. population, or any segment thereof, from an undisclosed location, requires a surrender of rights and liberties we should not be willing to acquiesce to as an ongoing form of government in this country. It is unconstitutional and has resulted in human rights violations on U.S. soil.

## 9. PROPERTY DAMAGE

*BURNING DOWN OF THE BUILDING IN WHICH COMPLAINANT WAS RESIDING*
February 07, 2020: those coordinating and running me through the total immersion scenarios in concert with the use of the mind/body control brain-computer interface technologies/weapons coordinated the work opportunities made available to me prior to, throughout the duration of, and following completion of my J.D. degree in May 2016. Evidence shows that my work opportunity for the District Attorney's Office in New Mexico, from January 2016 through September 2016 was staged as part of the ongoing building/fabricating of the false narratives being ran in my life (literally) since prior to being moved (by those coordinating the same scenarios at that time) to Los Angeles, California in January 1996. However, following completion of my J.D. in 2016, the onus on those running said scenarios/technologies/weapons to successfully correlate the previous links in the chain of total immersion scenarios they had been working for many years to develop, to try to frame/fabricate an artificial storyline/overlay/persona in my life, increased exponentially for them as I was then in a position where I was poised to be a professional in a position (that of an attorney) that would expose every aspect of said technologies/weapons and how government entities had been using them, including what those running said technologies/weapons had been doing in my life for (literally) multiple decades and the facts and the laws are not on the side of those who have participated in and/or continue participating in the illegal/unconstitutional use of said technologies/weapons on me and in my life. It bears repeating, I am still, in May 2022, (very literally) being prevented from studying for and legitimately taking the California State Bar Exam. This all ties into COMPLAINANT'S claim for property damage as those running said technologies/weapons had orchestrated/fabricated the scenarios in COMPLAINANT's life to limit COMPLAINANT's work/employment opportunities, thereby limiting his income, which further limited his ability to accumulate enough money to rent a decent apartment, and which resulted in Complainant living in a week-to-week hotel, The Venice Motel, 8686 Venice Boulevard, Culver City, CA 90034. The conditions of the accommodations were questionable as to habitability with repeated problems with roaches, a mouse living in one of the occupant's closet's, community showers and toilets at the end of each of the two floors of the building, carpets that were so dirty that a person would not think to walk on them in bare feet, a sink in each room, dirty old curtains on the windows that looked to be from (possibly) the 1970's hanging on broken current rods that would not draw the curtains opened and closed, problems with bed bugs, the conditions were bad and seemingly deliberately kept that way intentionally. On February 07, 2020, at approximately 2:15 AM, which was during the time when Complainant was being kept living at that location, as part of the ongoing total immersion scenarios, two separate fires (as evidenced by a photo shared with Complainant of one of the other occupants of

the building at that time and further corroborated by the building manager who explained to COMPLAINANT the causes of each of the two (2) fires were independent of the other) which were at two separate ends of the building, on two separate floors (one on the first floor and one on the second floor), and on opposite sides of the building – the building had two floors with a hall running lengthwise from one end of the building to the other with a single rows of rooms on each side of the hallways – meaning one fire was in a downstairs unit on the side of the building closest to the street and was in the unit the second from the end of the building and the other fire was in an upstairs unit on the side of the building away from the street and was in the unit the second from the end of the building on that floor at the opposite end of the building from the fire on the lower floor. With limited resources and being forced to live in those accommodations, COMPLAINANT had the majority of his personal belongings (i.e. clothes (suits, dress shirts, slacks, a leather jacket, etc.), books (including several law school study guides and legal books), hand tools, and personal papers and effects (i.e. photos, documents, evidence which would support this current action by COMPLAINANT), were all destroyed by fire and/or smoke damage. The building was red tagged after the fire, as the fire had damaged the structure of the building as it destroyed everything inside of it. Thus, COMPLAINANT does not have a complete inventory of all that COMPLAINANT lost in that fire. A reasonable fair market value estimate for the total personal property that COMPLAINANT lost to the fire is approximately $7,500.00 to $8,500.00

*DESTRUCTION OF COMPLAINANT'S VEHICLES IN 2003*
The events in 2003 were deliberately staged via the very same coordination/fabrications/orchestrations of Complainant's life combined with said directed energy technologies/weapons that have devolved into the conduct that Complainant has endured (since 2016) and continues to endure presently, which is blatantly "torture" under the law. Equitable tolling applies to the events prior to, including, and following the year 2003, including the following specific instances of the deliberate destruction of Complainant's personal property:
**Date of loss: May 27, 2003 - 1999 Mercury Mountaineer $17,511.00**
One of the physical/psychological/mental controls those running said technologies/weapons are capable of is causing Complainant to 'sleep' (in quotation marks because it was induced and Complainant is not sure if a technologically induced state that resembles sleeping is clinically/scientifically considered actual sleep. As part of a staged series of events Complainant was being moved through, those running said technologies/weapons on Complainant technologically induced a state of 'sleep' upon Complainant as Complainant was driving his 1999 Mercury Mountaineer on Interstate 15 in California. Plaintiff's vehicle went off of the road, flipped multiple times and landed on all four (4) wheels but with the entire vehicle totaled and the four (4) wheels being rims with the tires on all four (4) wheels blown out from rolling multiple times. In addition to Complainant's vehicle being a total loss (of which Complainant has photos of the vehicle in the yard to which it was towed following the incident), Complainant's left shoulder sustained actual nerve damage during the crash. Complainant's left shoulder never properly healed. The shoulder looks deformed from the injury, and Complainant has suffered and continues to experience pain, muscle cramping, and physical limitations, including severely impaired range of motion because of the injury.

**Date of loss: September 20, 2003 - 2000 BMW 323IA $22,292.35**
Note the proximity in time to the preceding total loss of Complainant's Mercury Mountaineer on May 27, 2003. This incident was instrumental in the storyline those running said technologies/weapons have worked to create via the very same fabrications/orchestrations

coordinated with the mind/body control brain-computer interface technologies/weapons. In reliance on relationships artificially fabricated in Complainant's life in 2001, while Complainant was living in San Diego, California. Complainant was drawn out, in Los Angeles, California, to a gathering of people he knew from previous 'work' in San Diego, California. Complainant was involved in a multiple car accident that evening, in which Complainant's vehicle was declared a total loss. The scenario was staged/fabricated/orchestrated as part of those running said technologies/weapons working to develop a storyline and persona of Complainant that was not genuine but with which those running said technologies/weapons sought to create cover for themselves as they continued working to cover the illegal/unconstitutional use of said technologies/weapons upon Complainant. The reasons behind it are complex but transparent when viewed in full context, including the context that the storyline has progressed to now, some nineteen (19) years later in those running said technologies/weapons literally torturing Complainant with said technologies/weapons as Complainant continues working to pursue legal action against those running said technologies/weapons and those running said technologies/weapons keep preventing the same to the extent of committing the most serious crimes possible under the Constitution to attempt to force/coerce/stop Complainant from succeeding in the same.

## 10. PERSONAL INJURY

Use and application of said technology links COMPLAINANT's brain/mind (which thereby exerts complete control over the mental, emotional, and physical functions of COMPLAINANT's body, all regulated and controlled by COMPLAINANT's brain/mind) and a computer interface that is capable of modulating COMPLAINANT's actual thoughts and modifying, eliminating, replacing, augmenting and/or embellishing upon COMPLAINANT's natural brain and body functions in real-time. It essentially turns COMPLAINANT's mind into a central processing location for the computer signals transmitted (via said technologies) from the remote location(s) where those running said technologies remain physically isolated, thereby concealing their identities and the source of the technologies/weapons they are running, from COMPLAINANT, while monitoring and running said technologies to (very literally) control COMPLAINANT's thoughts and outward actions (i.e. physical movements, text messages, typing, work, interactions (and/or lack/prevention of interactions) (spoken and written) with others, etc.). In effectuating complete control over COMPLAINANT, the parties running said technologies move COMPLAINANT through only those events/actions/scenarios those running the technologies arrange for COMPLAINANT to move through, thereby deliberately and intentionally depriving COMPLAINANT of liberty in thoughts, feelings, emotions, actions, and in having a unique personality and characteristics which define COMPLAINANT as an individual. The ongoing operations of said technologies/weapons to imbue thoughts into Complainant's psyche and conscience are a form of illegal Psychological Operations ("PSyOps") in violation of countless laws and the U.S. Constitution. Those running the technologies have and continue attempting to create an entirely fake persona of COMPLAINANT, which they then use to predicate harsh and unwarranted attacks (mental/physical/emotional harms) against COMPLAINANT using the same technologies as microwave (rf) weapons. Complainant's pain, suffering, physical and mental anguish are commensurate with physical, emotional and psychological torture.

Those running the technology can (literally) see what Complainant sees with Complainant's own eyes. As the brain-computer interface technologies/weapons convert Complainant's brain signals

into computer-generated information, the ability of those at the controls of the mind/body control
brain-computer interface technologies/weapons being able to see what Complainant sees (in real
time) should not be a difficult concept to grasp.

The obvious related *Bivens*, invasions of privacy, 4th Amendment violations shock the
conscience in the context I have just disclosed.

The constant, unyielding applications of the technology to Complainant, are designed to create
maximum discomfort and distress for Complainant, while moving complainant through the
normal, required activities for a human being to survive in society (i.e. work, attempting to
maintain personal health (exercise, diet, weight control), paying (a minimal amount of) bills and
expenses, etc.) while keeping Complainant trapped at a subsistence level of existence and
preventing Complainant from experiencing successes, wealth beyond that subsistence level and
the exercise of fundamental rights (i.e. dating, marriage, children, meaningful (unadulterated, not
fabricated by participants in the use of the technology) relationships, etc.).  Throughout the
ongoing scenarios, Complainant is being prevented from completing the path that he began with
law school, that meaning that Complainant is deliberately being prevented from using his mind
when attempting to engage in reading and/or review work that would be done in preparation to
take the bar exam to become a licensed attorney. Thereby, Complainant is prevented from not
only pursuing the profession he studied for but the student loan debts Complainant undertook to
engage in such study continue accumulating interest as those running said technologies/weapons
illegally use every aspect of Complainant's life to attempt to force/coerce Complainant to accept
the fabrications/orchestrations as reality. During the couple of sittings Complainant has done for
the bar exam, based upon all factors involved, it is clear that Complainant was mentally
controlled and prevented from passing the bar examination(s) during those few sittings: one (1)
in New Mexico and two (2) in California. Complainant has told people of the intensity of the
interference with the technologies/weapons during his sittings in California, recalling for others
that the interference with Complainant's ability/ies to think were so great that Complainant was
amazed he could write his own name on the exam materials at the beginning of the
examination(s). Those running said technologies/weapons are violent extremists in that they
continue forcing false scenarios, narratives, conditions, beliefs, to the extent of using illegal
mind/body control brain-computer interface technologies/weapons to attempt to clear themselves
of wrongdoing while working to brainwash Complainant into accepting their false storyline(s).
The entire model/system clearly broke down and failed.

**PERSONAL INJURY – GENERAL AND SPECIAL DAMAGES**

**HEALTH – BODY AND MIND – PAIN AND SUFFERING**
Within the symptoms listed which Complainant has experienced and continues to experience,
you will see that many of the symptoms caused by the technologies/weapons are those same
symptoms associated with Havana Syndrome, which has now been recognized by Congress and
walked back, by the CIA, as being tied to a foreign source.

The physical, mental, and emotional controls over Complainant include but are not limited to the
following:

**BRAIN/MIND**:

1. This is the most heavily targeted region of Complainant's physical person with the technology. Complainant has been controlled using remote neuromodulation and/or Brain-Computer Interface (BCI) technologies to fabricate entire sequences of events, mimicking emotional, psychological, and physical conditions in Complainant which would not exist but for the application of said technologies/weapons.

2. The technology has been used to induce a state of non-wakeful sleep in Complainant, meaning Complainant can be forced to sleep and forced to remain asleep (a bit like a technology induced state of unconsciousness/anesthesia).

3. Plaintiff experiences pain, discomfort, aching, "cramping," enveloping excitation and/or deadening/dulling sensations in multiple regions of his brain/mind and skull at various times throughout the day/night, daily/nightly.

4. Those running the technologies/weapons went so far as to use the technology to mimic symptoms of PTSD, anxiety, depression, and a full gamut of human emotions which Complainant experienced solely as the result of the use of the technology/ies upon Complainant.

5. Complainant exercises regularly and has done so for many years. Thus, complainant understands the physical capabilities and limitations of Complainant's body when engaged in athletic/sporting/recreational physical activities and the related mental capacities for endurance/perseverance when Complainant engages in athletic/sporting/recreational activities.

6. Those at the controls have attempt(ed) to force Complainant to treat the source of the technologies/weapons as the presence of "God" in Complainant's life, attempting to drive Complainant into scenarios in which a person of Complainant's religious background (Roman Catholic) would feel compelled to "repent."

7. Those running the technology have blocked/jammed the natural processes of Complainant's natural brainwaves while imbuing modulated processes in their place, thereby fabricating/orchestrating the storylines in Complainant's life spanning (literally) decades. Such is evidenced by the current complete blocking, impairing, and impeding of Complainant's thoughts which have been used to interfere with Complainant filing and seeing through legal proceedings to stop the use of the technology upon Complainant and to recover money for the damage done to Complainant's life.

8. Control/manipulation of Complainant's thoughts/mind.

9. During the year 2008, Complainant was (falsely) diagnosed with PTSD, as the technology was used to mimic symptoms of PTSD. Complainant was led to believe he suffered from anxiety (anxiety attacks) and/or depression and was then later diagnosed as suffering from PTSD. When those running said technologies/weapons revealed their use and capabilities to Complainant, it was immediately obvious to Complainant that previous symptoms of PTSD were fake, mimicked using said technologies/weapons. Those at the controls of the technologies/weapons have made clear (through deliberate displays of the ability of the technologies/weapons to mimic the symptoms and to (likewise) terminate the symptoms with the precision of turning the symptoms off (or activating them upon Complainant) as if controlled by the flipping of a switch.

10. Complainant's pain, suffering and anguish are severe.

11. The extent of the damage done to Complainant's brain/mind with said technologies/weapons cannot be fully ascertained until such time as said technologies/weapons stop being actively ran on Complainant, which is ongoing at the time of drafting this Notice. Causing an human being to be unable to engage in cognitive decision making, impairing a human being from engaging in and acting upon their own

(true) volition, and/or altering/modulating the brain activity of an individual constitute serious bodily injury. **Intentional serious bodily injury (even if mimicked but the person targeted believes the condition to be a real bodily affliction) resulting in a need for Complainant to seek medical examination/treatment to repair the damage caused by the individual(s) involved in running said technologies/weapons constitutes serious bodily injury and constitutes an act of torture under the law, notably when the use of said technologies/weapons to fabricate/orchestrate the incident are taken in context.**

**HEAD:**

12. Complainant feel various pains/pressures in multiple regions of his scalp as well as under the scalp/skull, as he feels as electrical tingling/excitation of regions of his brain being targeted with the application of the technologies/weapons;

13. Pains and discomfort in multiple regions of Complainant's head, as those at the controls administer intense and painful shocks to the surface of Complainant's head/skull, coordinated and/or sequenced with Complainant's thoughts (whether imbued or natural to Complainant);

14. Pain, pressure and intense twinges of (what feel like) a combination of electrical shocks delivered in unison to Complainant's left temple, which feels as though the person(s) at the controls of the technology are deliberately administering physical strikes to Complainant's left temple;

15. Ringing in the ears, which people have tried to denounce as Tinnitus, while those at the controls deliberately adjust the pitch and intensity of the ringing, as if turning the knobs on a frequency modulator, thereby deliberately notifying Complainant that such ringing is completely within the control of those running the technology;

16. Inability to think, meaning that Complainant's mind is targeted constantly (24-hours a day, 7-days a week) and the technologies/weapons can be used to mimic a full gamut of states of mental function, meaning that the technologies/weapons can be used to make Complainant think (for a segment of time) that he is incapable of thinking for himself at all. Alternatively, scenarios can be run by those controlling the technologies/weapons to make Complainant feel as though his thoughts are crisp and clear, wildly racing, or any of a number of variations on the acuity of Complainant's thoughts and Complainant's ability to think. Within the scope of those of mental function are a virtually limitless number of states of mental functions which can be, have been, and are being run within the confines of the total immersion scenarios to make Complainant feel that capitulating to the ongoing, illegal use of the technology is the only means by which Complainant may EVER have a life that Complainant would choose for himself.

*TEETH*

17. Numbing/pain of the gums and forced grinding of Complainant's teeth. At times, those controlling the technology shift the focus of the technology to concentrate further down in Complainant's skull, resulting in extreme pain in Complainant's gums. When such a shift in the focus of the technology occurs, Complainant endures prolonged, intense discomfort which coincides with Complainant's teeth feeling numb from the intense pain and pressure in Complainant's gums. Complainant's teeth have been damaged, much of the damage (as told to Complainant by a dentist) is due to grinding and/or clenching of Complainant's teeth. **Plaintiff has required dental work to correct cracked teeth, holes that developed on the tops of Complainant's teeth, and receding gums, all of which (per Complainant's dentist) are attributable to excessive grinding of**

**Complainant's teeth, which is one direct and deliberate effect accomplished via the use of said technologies/weapons. Intentional serious bodily injury resulting in a need for Complainant to seek medical examination/treatment to repair the damage caused by the individual(s) involved in running said technologies/weapons constitutes serious bodily injury and constitutes acts of torture under the law, notably when the use of said technologies/weapons to fabricate/orchestrate the incident are taken in context.**

**LEFT SHOULDER**

18. **Date of loss: May 27, 2003 - 1999 Mercury Mountaineer -** Complainant's left shoulder sustained nerve damage during the crash. Complainant's left shoulder never properly healed. The shoulder looks deformed from the injury, and Complainant has suffered and continues to experience pain, muscle cramping, and physical limitations, including severely impaired range of motion because of the injury. The injury is **serious permanent bodily injury and constitutes an act of torture under the law**, notably when the use of said technologies/weapons to fabricate/orchestrate the incident are taken in context. **Intentional serious bodily injury resulting in a need for Complainant to seek future medical examination/treatment to repair the damage caused by the individual(s) involved in running said technologies/weapons constitutes serious bodily injury and constitutes an act of torture under the law, notably when the use of said technologies/weapons to fabricate/orchestrate the incident are taken in context.**

19. The technology is used to tighten the muscles and induce severe pain in and around Complainant's left shoulder. Complainant's shoulder was initially injured during a car accident on May 27, 2003, for which evidence exists that the accident was caused by those using the technology on Complainant which resulted in serious and permanent bodily injury (again, fitting the definition of "torture" as defined by law), and now (as a matter of plausible deniability), those running the technology have focused on tightening the muscles in and around that left shoulder in a way Complainant was not experiencing prior to October 2016 and has only felt pain in the shoulder when it is noticeably being manipulated by the electrical signals of the remote technology, at which times the technology is used to tighten the muscles in the shoulder to a point of excruciating pain. Complainant experiences extremely limited range of motion, as well as ongoing pain and physical limitations since the time when he initially sustained that injury. Complainant will likely require surgery for the shoulder as well as increased amounts of medical attention for the shoulder as he ages.

**CHEST/HEART RATE**

20. During the year 2006/2007, said technologies/weapons were used to fabricate/orchestrate a dramatic sequence of events in Complainant's life designed (as part of the fabrications/orchestrations) to create a plausible set of conditions following which Complainant may believe that he was experiencing symptoms of PTSD and/or anxiety following the same. Notably, the existence and use of said technologies/weapons were concealed from Complainant at the time. Throughout the use of said technologies/weapons on Complainant from 2017 (when the technologies were finally revealed to Complainant) to the present time, those running said technologies/weapons have been very deliberate (from their concealed, remote place of operating/controlling

said technologies/weapons) that the 'symptoms' of what Complainant believed may be PTSD and/or anxiety are 100% capable of being fabricated via said technologies/weapons. The technology is used to manipulate Complainant's heart rate and depth of breathing, thereby fabricating symptoms that mimic anxiety, PTSD, shortness/constriction of breath, and are used as a means of controlling Complainant by both mimicking conditions of anxiety/ADHD/PTSD/and other such related conditions while also being used to  impede Complainant's ability to exercise (i.e. limiting Complainant's air intake/oxygen consumption which affects multiple aspects of Complainant's bodily functions. Complainant has worked to keep himself in shape (i.e. regular weight training and cardiovascular exercise) throughout his life. Those running said technologies/weapons on Complainant have made clear (and used the assertion to attempt to force/coerce/bully Complainant) that said technologies/weapons are capable of directly affecting a person's heart rate and rhythm. Thereby, the implication is that the technologies/weapons could be used to stop Complainant's heart at the whim of one of those running said technologies/weapons. Mimicking the symptoms of serious mental and/or bodily injury using said technologies/weapons to effectuate the conditions of actual serious mental and/or bodily injury is (in effect) intended and designed to be believed by Complainant to be the actual medical conditions of serious bodily injury/harm to Complainant. **Intentional serious bodily injury (even if mimicked but the person targeted believes the condition to be a real bodily affliction) resulting in a need for Complainant to seek medical examination/treatment to repair the damage caused by the individual(s) involved in running said technologies/weapons constitutes serious bodily injury and constitutes an act of torture under the law, notably when the use of said technologies/weapons to fabricate/orchestrate the incident are taken in context.**

**LUNGS/BREATHING/RESPIRATORY**
21. Control of Plaintiff's mind/brain, musculature, and the soft tissues of Complainant's person are the targeted areas of Complainant's person capable of control with said technologies/weapons. Control of Complainant's diaphragm, abdomen, musculature around Complainant's chest, and the regions of Complainant's mind cause constriction of Complainant's respiratory system, thereby limited the amount of air/oxygen Complainant can breathe. Constriction of Complainant's respiratory intake results in symptoms that mimic legitimate medical conditions but which are entirely induced using the mind/body control brain-computer interface technologies/weapons.

22. During 2013/2014, Complainant was attending law school in Lansing, Michigan. A series of obviously orchestrated/fabricated events, coordinating Complainant's tangible surroundings with the controls/manipulations of the mind/body control brain-computer interface technologies/weapons had transpired for several months. During the month of January 2014, Complainant began experiencing symptoms that seem like those related to Covid-19 currently. Complainant had a severe respiratory condition that was a dry, hacking cough with absolutely no mucous. Complainant had extreme weakness and felt the need to sleep. Complainant's doctor prescribed him a cough medication and an inhaler like that someone would use for asthma. Complainant had never suffered from asthma during his life, prior to this, and the condition/illness was not causing Complainant a notable fever. Notably, these symptoms not only mimic Covid-19 but also several of the symptoms known as Havana Syndrome as well. At the time, Complainant was unaware of the existence and use of said technologies/weapons but now recognizes

those symptoms to have been a function of the same illegal use of said technologies/weapons that have now resulted in full-scale torture of Complainant, as that term is defined in law. **Intentional serious bodily injury (even if mimicked but the person targeted believes the condition to be a real bodily affliction) resulting in a need for Complainant to seek medical examination/treatment to repair the damage caused by the individual(s) involved in running said technologies/weapons constitutes serious bodily injury and constitutes an act of torture under the law, notably when the use of said technologies/weapons to fabricate/orchestrate the incident are taken in context.**

**ABDOMEN**

23. The technologies/weapons are used to create stomach conditions including indigestion, heart burn, induce bowel movements and gas creation/expulsion. Notable to Complainant have been times when the technologies/weapons have been run at a period of several days and/or weeks of high intensity and then reduced considerably for a day. At the times of the reduction of the intensity of the technology, Complainant has experienced a substantial amount of blood in bowel movements. The technology is used (or a side effect therefrom is) to induce a need to urinate.

24. **Inducement of a hernia on Complainant during the year (approximately) 2009/2010**. The technologies/weapons were used to keep Complainant in a state of non-wakeful "sleep" (meaning Complainant could not awaken at the time) as Complainant heard the voices of (ex) military personnel Kevin Powell (Army) and Zach Yost (Marines) as Complainant had the thought process and felt the experience of Zach Yost placing Complainant on Yost's shoulder and bouncing Complainant multiple times until a pop occurred in Complainant's abdomen, at which time, Complainant heard the voice of Yost say "there we go" as Yost dropped Complainant back onto Complainant's bed. Complainant awoke when Complainant moved his leg in bed and felt a strong burning in his lower left abdomen. Complainant awoke with a bulge in his lower left abdomen which was diagnosed as a hernia, which then required surgery to repair. **Intentional serious bodily injury resulting in a need for Complainant to undergo surgery to repair the damage caused by the individual(s) involved constitute serious bodily injury and constitutes an act of torture under the law, notably when the use of said technologies/weapons to fabricate/orchestrate the incident are taken in context.**

**GENITALIA**

25. The technology is further used to create unnatural tightness in Complainant's scrotum and allows those at the controls to manipulate Complainant's erections.

26. A significant part of the manipulations have targeted Complainant's gender (male) and sexual orientation (straight/heterosexual). The technology has been used to attempt to make Complainant believe those running the technology are attempting to turn Complainant's sexual interests into those of a homosexual male. Such effect is coordinated between imbuing mental thoughts into Complainant's head while manually (via the technology) inducing Complainant to feel sensations in Complainant's genitalia.

**LEGS**

27. The technology is used to impede Complainant's gait, creating pain, tightness, limitation and inability of Complainant to take complete strides, most noticeable to Complainant when Complainant runs for exercise. Complainant has run for cardiovascular exercise for

many years. Thus, a change in Complainant's stride/gait has been noticeable to
Complainant, as the quality and intensity of Complainant's running workouts have been
severely interfered with. Likewise, those running said technologies/weapons since 2016
have repeatedly caused a knot in Complainant's left calf muscle during times when
Complainant runs for exercise. It is not naturally occurring, as those running said
technologies/weapons have deliberately tightened the knot in concert with the other
effects of the technologies/weapons that those running said technologies/weapons have
shown Complainant they are capable of. During one such instance, in 2021, of someone
at the controls of the technologies/weapons wanting to illegally impart their will on
Complainant and interfere with his run. On Tuesday, August 17, 2021, the
technologies/weapons were used to cause a deliberate impairment in Complainant's left
calf to such an extent that it caused an internal bruise which ended up showing through
Complainant's skin, **leaving a scar** on the surface. Intentional activity that causes injury
to a person and leaves a permanent scar **constitutes serious bodily injury**. Complainant
took photos, as (again) this is a display of how these deliberate actions are intentionally
designed to harm, stalk, and harass Complainant. **Intentional serious bodily injury
resulting in permanent scarring of Complainant's skin constitutes serious bodily
injury and constitutes an act of torture under the law, notably when the use of said
technologies/weapons to fabricate/orchestrate the incident are taken in context.**

**KNEES**
28. Those running the technology have shown Complainant their ability to create conditions
(likely through tightening and/or loosening the contraction of muscles in Complainant's
legs) which mimic a knee pain/misalignment, which can be used to make running and/or
walking uncomfortable or impossible at times.

29. On January 31, 2021, Complainant was controlled to walk into a physical battery. As part
of the ongoing harassment and stalking, following the deliberate burning down of the
week-to-week motel that Complainant was living in, Complainant moved into an
apartment in San Pedro, CA, less than a mile from Fort MacArthur Air Force Base.
Complainant was controlled to walk down on the street near where he was living, where
he was criminally battered. The entire incident was uncharacteristic of Complainant, as
Complainant is not someone who places himself in situations where he will face physical
conflict, and if he were to do so, he would not stand by nonchalantly as someone
presented a physical threat to him. Given that, someone walked up to Complainant and
threw Complainant to the ground, injuring his right knee in the process. Complainant
called 9-1-1 following the incident and made a report with paramedics who responses.
Complainant filed a report with the local police who responded to the scene following
Complainant's 9-1-1 call. Complainant filed a report with Los Angeles Police
Department ("LAPD"). Complainant exchanged emails with the LAPD detective
assigned to investigate the matter, who told Complainant that he had prior military
experience advising the detective that the incident was a part of the ongoing
harassment/stalking those running said technologies/weapons were/are engaged in.
During a telephone conversation, Complainant asked the detective if he was familiar with
the technologies/weapons and the detective acknowledged. The intent was to physically
attack and physically harm Complainant. Complainant experienced significant pain in his
right knee following the incident. Complainant iced the knee for several days/nights
following the incident, and Complainant was unable to run (for exercise) for a couple of
weeks following the incident. Complainant has a crunching sound when he bends that

knee, which did not exist prior to the attack coordinated with the mind/body control brain-computer interface technologies/weapons. The criminal battery resulted in serious bodily injury to Complainant for which Complainant will need to seek medical treatment(s) going forward. **Intentional serious bodily injury resulting in a need for Complainant to seek future medical examination/treatment to repair the damage caused by the individual(s) involved constitute serious bodily injury and constitutes an act of torture under the law, notably when the use of said technologies/weapons to fabricate/orchestrate the incident are taken in context.**

**ANKLES/FEET**

30. The technology is used to tighten/loosen muscles in Complainant's (upper and lower) legs and/or limit Complainant's stride/gait. Causing associated pains in Complainant's ankles and feet.

**ENTIRE BODY/MUSCLOSKELETAL SYSTEM**

31. Physical symptoms including pains, manipulation of Complainant's heart rate, hearing, thoughts, speaking, writing, thinking, control over Complainant's genitalia, control over Complainant's bowels, breathing, muscles throughout Complainant's body, and manipulating Complainant's thoughts to make Complainant believe those running the technology are forever terminating Complainant's interest in women and/or turning Complainant's sexual identity to be that of a gay or transgender, are a few of the numerous bases giving rise to Complainant's countless causes of actions for claims for intentional torts as outlined under 28 U.S.C. §2674. Pain is deliberately and repeatedly induced through the deliberate acts of those at the controls of the technology. Causing Complainant to experience physical, mental, and emotional pain and suffering daily/nightly, for more than six (6) years presently with a past timeline over multiple decades, which has been completely caused by said technologies/weapons intentionally and deliberately operated by those at the controls for the exact effects Complainant has outlined herein, constitute serious bodily injury. **Intentional serious bodily injury resulting in ongoing daily/nightly physical, mental, and emotional injury, pain and suffering, caused by the individual(s) involved constitute serious bodily injury and constitutes an act of torture under the law, notably when the use of said technologies/weapons to fabricate/orchestrate the incident are taken in context.**

**BUG BITES**

32. During the beginning phase of the current link in the total immersion chain in 2016 and 2017, Complainant was forced out of a permanent residence for a period of time during which he was forced to be 'homeless' while owning a vehicle. During this time, Complainant occasionally stayed in short-term hostel living spaces. Complainant was repeatedly subjected to bug bites on his arms, legs, face and body during this time. While bugs in public accommodations are not unheard of, there were always people staying in the shared living spaces with Complainant that stood out to Complainant as people who were there to manipulate the situation. Based upon the information presently known, Complainant's belief, and the evidence available to Complainant, Complainant asserts the bug bites were deliberately administered by someone trained at handling bugs and maintaining them for the purpose of administering the bug bites Complainant experienced.

**ECONOMIC - DAMAGE TO CAREER ASPIRATIONS/EDUCATION/FAMILY LIFE**

**CAREER ASPIRATIONS**

Complainant attended Clarkson University, located in Potsdam, N.Y., during the years 1992 through 1994, which is a short distance from the Air Force Research Lab in Rome, N.Y. Plaintiff's father was enlisted in the Air Force during the Vietnam War and worked with radar technologies, which are the fundamental components of the technologies/weapons being used for the mind/body control brain-computer interface technologies/weapons. Complainant's family have been an essential component needed by those running the technologies/weapons to achieve continuity of the ongoing/overarching theme of the total immersion scenarios, paired with the mind/body control brain-computer interface technologies/weapons. Based upon Complainant's knowledge, experience, and the evidence available to Complainant, Plaintiff's time in Potsdam, N.Y., attending Clarkson University, was entirely manipulated/fabricated/orchestrated using said technology and orchestrating Complainant's tangible experiences in life (at that time) to effectuate the same manipulations Complainant is undergoing currently (see below for the analogous current situation(s) Complainant has experienced both attending and following law school from 2013 through 2016). Had said technologies/weapons not been run on Complainant during this time, Complainant reasonably expected to earn a bachelor's degree from Clarkson University within the normal four (4)-years that curriculum required to complete, which would have resulted in Complainant having his bachelor's degree in Business Administration in May 1996.

Complainant moved (was brought, by those running the technology) to Los Angeles in 1996 and attended California State University, Northridge, earning a Bachelor of Science degree in finance in August 2000. Based upon Complainant's knowledge, experience, and the evidence available to Complainant, this educational experience was entirely manipulated using said technology and orchestrating Complainant's tangible experiences in life (at that time) to effectuate the same manipulations Complainant is undergoing currently.

Complainant went through tremendous tumult and orchestrations/fabrications of his life before attending Western Michigan University, Thomas M. Cooley Law School, in Michigan, from 2013 through 2016. Based upon Complainant's knowledge, experience, and the evidence available to Complainant, this educational experience was entirely manipulated using said technologies/weapons and orchestrating Complainant's tangible experiences in life (at that time) to effectuate the same manipulations Complainant is undergoing currently. When viewed in totality, including acknowledging the existence and use of said technologies/weapons throughout the time, the deliberate, intentional, willful use of said technologies/weapons to harm Complainant and to frame false narratives in Complainant's life, the severe treatment of Complainant (by those secretly operating said technologies/weapons) and the resulting harms done to Complainant's education, personal and professional development are clear. Even at the present time, those moving Complainant through the tangible scenarios to mimic (to outside observers) that Complainant is making advancements professionally, the reality is that those running said technologies/weapons use the technologies/weapons to criminally stalk, criminally harass, and literally torture Complainant with said technologies/weapons as Complainant attempts to work and live his life. Complainant is denied every actual enjoyable quality of life as Complainant continues being held in the ongoing scenarios and is constantly (daily/nightly) criminally stalked and criminally harassed by those running said technologies/weapons.

Control and manipulation of Complainant's work/income opportunities are and
have been 100% controlled by those running the technologies/weapons throughout
Complainant's life, and control over these aspects of Complainant's life are fundamental to the
overall orchestrations/fabrications of the ongoing total immersion scenarios.
Manipulating/controlling Complainant's education/schooling, in concert with control over
Complainant's work opportunities and thereby control over Complainant's ability to earn
including the time when Complainant entered the workforce in California, in the mid-'90's,
interfering with Complainant's ability to earn beyond the amount those running the technology
allow, which (notably) has been and has remained at a subsistence level and less than the total
amount Complainant requires to meet all of his financial obligations (notably student loans with
interest that continues accruing while Complainant is being deprived liberty and trapped within
the total immersion scenarios).

Control of Complainant's finances and income have always been keys to keeping
Complainant trapped within the manageable confines of the parameters those running the
technology/ies need to control Complainant and to orchestrate the scenarios and fabricate the
experiences they want to move Complainant through. Evidence will and does show that the path
through Complainant's life has (at all times) been coordinated under the overarching attempt of
the government entities involved to use mind/body control brain-computer interface
technologies/weapons to orchestrate/fabricate the tangible events in Complainant's life
coordinated with said technologies/weapons to attempt to 'engineer' a human experience using
mind/body control technologies/weapons coordinated with tangible surroundings. In reading this
Notice, the reader should understand, if the reader were to speak with Complainant, it becomes
abundantly clear that there is a massive 'disconnect' in Complainant's life that is not readily,
adequately, and/or properly explained by the cover stories and persona those running those
running said technologies/weapons have attempted to fabricate/orchestrate. The overall use of
the total immersion scenarios in coordination with the mind/body control brain-computer
interface technologies/weapons has not worked in application, and those at the controls of said
technologies/weapons appear to have engaged in conduct they believe(d) would never be drawn
under scrutiny and/or into a court of law, as many of the, seem to have been drawn into the
secretive use of said technologies/weapons and given control over Complainant, who they knew
did not know of the existence and use of said technologies/weapons. What each individual who
has sat at the controls of said technologies/weapons has done with their time at the controls of
said technologies/weapons would indicate there are individuals with violent extremist ideologies
and temperaments who have access to secretive technologies/weapons utilizing government
infrastructure to deliberately violate the Constitution and circumvent the courts, thereby
engaging in acts of sedition and/or domestic terrorism. The current/ongoing torture Complainant
is experiencing appears (based upon all available evidence and information) the foregoing reality
pressing down upon those at the controls of said technologies/weapons as the acts they thought
they would never need to answer for are coming front-and-center, and they are guilty of the most
serious crimes possible domestically, which is conduct recognized as torture and human rights
violations around the world. Their conduct cannot persist, as Complainant is the target of their
poor judgement. Thus, legal and equitable action must be taken to correct the entire ongoing
series of actions of those running said technologies/weapons. They are not serving this country
by attacking Complainant. They are living in a state of fear of their past actions and perpetuating
that by committing an endless string of ongoing actions rooted in their fear of their own
actions/conduct in the illegal/unconstitutional use of said technologies/weapons domestically.

Plaintiff has lost educational opportunities and income while government has deliberately ran mind/body control brain-computer interface technologies/weapons to interfere with and try to frame false narratives incorporating Complainant's jobs; his ability to find work; the quality of opportunities available to Complainant; lost income resulting from the government deliberately creating discord in Complainant's jobs, using technology to interfere with Complainant's ability to make full use of the opportunities while at jobs and/or while enrolled in college/university, and damage to Complainant's professional reputation by sowing/infusing false light into Complainant's path through his adult life. If this seems somehow difficult to fathom, consider that Complainant completed his J.D. in May 2016, and to this day, six (6) years later, Complainant is literally being tortured and prevented from becoming a licensed attorney, the interference with said technologies/weapons on Complainant's mind that Complainant is literally (consistently) prevented from reading, reviewing, and comprehending materials that Complainant attempts to read, review and/or comprehend. Bar exam materials are one component of the entire scope of human rights (and first amendment) violations of Complainant's mental abilities.

Law school student loans have been accruing interest throughout the time while Complainant has been controlled within the current link in the chain of total immersion experiences. **Interest on the student loans has continued growing, while Complainant has been deliberately, intentionally, and systematically prevented from becoming a fully licensed attorney,** while simultaneously having his thoughts impaired and his freedom to travel outside of California prevented, thereby preventing Complainant from seeking better conditions for himself to succeed professionally and start paying down what are **currently nearly $300,000.00 of student loan debt (as interest continues accumulating on that amount).**

Financial damages also include but are not limited to missed educational achievements. Lower income opportunities based upon the schools Complainant was eligible for and admitted to. Complainant's employment opportunities have been completely controlled, which has been necessary to keep Complainant within the total immersion experiences while creating an experience of difficult living, scraping to make ends meet, personal strife from lack of income, and the inability of Complainant to use his mind completely and freely, without the deleterious interferences of the technology/ies; interfering with Complainant's mental focus. Thereby, Complainant has been limited in his actual ability to take opportunities outside the realm of those which the parties running the technology have allowed for Complainant, which are deliberately limited as part of the overall, ongoing false narratives.

**FAMILY LIFE**
Complainant is presently a 48-year old man who has never been married and has no children. These realities are deliberate and an intentional result by those running said technologies/weapons to force/coerce Complainant to accept the fabrications and false narratives those running said technologies/weapons have created in Complainant's life. Complainant's immediate family were incorporated into the staged storylines and the use of the total immersion technologies/weapons upon Complainant from a time when Complainant was very young – Complainant's father was Air Force in Vietnam and worked with radar technologies – such technologies are modified for the type of technological control Complainant has experienced. Thus, Complainant's family has gone along with (and/or been controlled by the very same technologies/weapons to further the storyline in Complainant's life) the storyline and perpetuated

it for many years, remaining distant and not communicating at all (as has been the case since 2016) with Complainant during times when the storyline is being driven/worked against Complainant. Complainant's sister lived in Fort Meade, Maryland for many years, which is where NSA headquarters is located. Based upon information, belief, and all available evidence, Complainant believes Complainant's sister has worked with the NSA, her role therewith being manipulated (to an extent) to make her feel as though she was/is prevented from saying anything related to the ongoing use of said technologies/weapons on Complainant. Complainant believes Complainant's sister may have been a bit duped within that role, given the confidence that she would derive from holding a position with such a federal agency, a confidence which those running said technologies/weapons may have preyed upon to engender the support of Complainant's sister while providing false justification(s) which lack actual tangible reality and further lacked any genuine legal validity.

Complainant had relationships and dated women when Complainant was younger, but deliberate staging of events in Complainant's life have prevented him from finding a woman for a legitimate relationship since before the year 2000. During the last (approximately) 17-years, those running the technology have attacked all facets of Complainant's identity as a straight male, further preventing him from meeting and dating women to find a wife to have children and a family with. Concurrently, those running the technology use the technology to attempt to imbue thoughts into Complainant's head which attempt to make him believe the people running the technology are negatively affecting and/or permanently altering Complainant's heterosexual interest in women. Thereby, Complainant is prevented from finding a woman for intimacy and/or a long-term relationship, including marriage and children. These are fundamental rights violations. When viewed in context, these details about what Complainant continues experiencing are direct evidence of the extent of control and manipulations Complainant continues enduring.

## 11. WITNESSES

"Witnesses" is a bit of a misnomer in the context of the widespread use of said technologies/weapons upon the U.S. population domestically (at large). Most of those involved and with whom Complainant is permitted to interact with are somehow either directly involved in the operation and use of said technologies/weapons on Complainant or are ensnared by those running said technologies/weapons to believe their participation is necessary to avoid reproach (and or the same acts of torture they see Complainant enduring) from those running said technologies/weapons. "Witnesses" and/or conspirators (past and/or present) include Arthur Small (former government Defense contract worker), (last know address) 2471 Kirsten Lee Drive, Westlake Village, CA 91361; John Garissi (former California attorney), other than that Mr. Garissi resides in Los Angeles County, California, Mr. Garissi's address is presently unknown to Complainant; Jason Tolerico, 814 14th Street, Santa Monica, CA 90403 (949) 500-7627; Dr. Rick Jenkins, 1703 Termino Ave., #106, Long Beach, CA 90804; Rick Ugalde (former Navy), other than that Mr. Ugalde previously had an address in the Franklin Hills/Los Feliz region of Los Angeles County, Mr. Ugalde's address is presently unknown to Complainaint; Brian Liebman (former Marine), other than that Mr. Liebamn resides in Los Angeles County, Mr. Liebman's address is presently unknown to Complainaint; Zachary Yost (former Marine), other than that Mr. Yost resided in Ventura County, Mr. Yost's address is presently unknown to Complainaint; Kevin Powell, (last known addres) Burbank, CA, other than that Mr. Powell previously resided in Burbank, in Los Angeles County, Mr. Powell's address is presently unknown to Complainaint; George York (Complainant's father, formerly Air Force) and

Lorraine York, 3558 East River Road, Grand Island, N.Y. 14072; Bradley Brunon (California attorney), 11601 Wilshire Blvd., #1400, Los Angles, CA 90025;  William (Bill) T. Delekta (former Army) 209 Beckwith Ave., Niagara Falls, N.Y. 14304; Deborah S. Hansen, 226 River Oaks Drive, Grand Island, N.Y. 14072; Nicole A. York (Complainant's sister, based on knowledge, information and belief, works for National Security Agency), 7000 Cool Springs Lane, Charlotte, N.C. 28226; Kathy Watt (instrumental to the fabrication of the false narrative(s)), 1242 N. Alexandria Ave, Los Angeles, CA 90029; Ross Bettis (attorney and Army), (last known address) 3320 N. Del Paso St., Apt. 9E, Hobbs, NM 88240; Judge J. Cedric Simpson, (last known address) 7740 Platt Road, Ypsilanti, MI 48197; Joan Vestrand, (attorney in Michigan) (last known address) 44515 Woodland Park, Northville, MI 48168; Sammy Weiss (California attorney), 8981 Sunset Blvd., Los Angeles, CA 90069; Steve Noble, 1061 Laguna Ave., Los Angeles, CA 90026; Jason Smith (California attorney), 3435 Wilshire Boulevard, Suite 1800, Los Angeles, CA 90010; the entire list of "witnesses" is extensive. As previously stated within this Notice, the matter is complex, wherein those who are witnesses to one aspect or another of a segment/link of the entire chain of total immersion scenarios is not necessarily knowing of the orchestrations/fabrications of a previous link in the ongoing chain. Evaluation of Complainant's assertions which form the bases of this Notice require a comprehensive evaluation of the totality of the circumstances. Anything short of that will result in only a partial understanding of the gravamen of Complainant's Notice and will miss the essential element that is the ongoing, overarching theme of those running said technologies/weapons working to string together the individual component links in the ongoing chain to fabricate the overlay onto Complainant's life from which Complainant seeks equitable and legal relief. The intent of those running the overarching scenarios is for those viewing a complainant from Complainant as an isolated set of incidents for which those running said technologies/weapons/scenarios have attempted to frame with plausibly deniable (false narrative) cover stories, all effectuated via the use of the same directed-energy mind/body control brain-computer interface technologies/weapons which have resulted in the ongoing torture and deliberate/intentional deprivation of Complainant's rights.

**12. AMOUNT OF CLAIM (in dollars)**
**a. PROPERTY DAMAGE – IN A TOTAL AMOUNT OF NOT LESS THAN $48,303.35**
*BURNING DOWN OF THE BUILDING IN WHICH COMPLAINANT WAS RESIDING*
**February 07, 2020: In an amount not less than $7,500.00 to $8,500.00;**
*DESTRUCTION OF COMPLAINANT'S VEHICLES IN 2003*
**Date of loss: May 27, 2003 - 1999 Mercury Mountaineer: in an amount not less than $17,511.00;**
**Date of loss: September 20, 2003 - 2000 BMW 323IA: in an amount not less than $22,292.35;**

**b. PERSONAL INJURY – IN A TOTAL AMOUNT OF NOT LESS THAN $17,313,796.75**
Attacked on Complainant's physical person include the intentional torment of Complainant's thoughts/psyche via directed energy mind/body control brain-computer interface technologies/weapons as a means of deliberately torturing, tormenting, and depriving Complainant of all fundamental rights afforded and protected by the U.S. Constitution. Not all effects of the physical injuries are visible. As Complainant's causes of action are rooted in the principles of tort liability, the intentional deliberate attempts to shame, humiliate, brutalize, attack, malign and impugn the integrity of Complainant's integrity, going so far as to use said technologies/weapons to draw Complainant's individual persona and individual, personal

characteristics into question and literally deprive Complainant of (or try to override the existence of) those individual, personal characteristics as a means of causing mental torment and/or anguish in Complainant's very existence, are some, but not all, examples of the unique set of dignitary torts that our legal system has not had grounds (or reason) to address before the current advent of the use of said technologies/weapons being used to control human beings domestically, on U.S. soil. Thereby, quantifying the extent of those dignitary torts is not something that is documented in the form of a bill(s) and/or consultation(s) with experts in a medical or other professional field. Complainant has experienced such dignitary torts result from and/or in conjunction with the following torts, including but not limited to: Assault, Battery, False Imprisonment, Negligence, Abuse of process, Fraud, Tortious interference, Conspiracy (Civil and Criminal), Malicious prosecution, Nuisance, Negligence per se, Breach of confidence, Stalking/Harassment, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress; Trespass; Trespass to chattels; Conversion; Defamation – libel/slander/false light; Invasion of privacy – intrusion into seclusion, tortious interference with business relations, tortious interference with contractual relations. Complainant has been subjected to ongoing physical attacks and mental attacks/manipulations. Such physical and mental attacks on Complainant have intentionally, deliberately, and dramatically altered Complainant's path in life, as the entire point of fabricating an overlay onto a person's life is to alter the natural course of that life. These physical and mental attacks/manipulations were deliberately designed/constructed to incorporate the legal system (i.e. attorneys, judges, federal and state agencies, etc.) both to add pressure/weight/leverage to the seemingly insurmountable challenge Complainant would face if/when Complainant works/ed to overcome the same – this is precisely the juncture that we remain at presently, with Complainant needing equitable and legal relief and those orchestrating/fabricating the false narratives interfering with Complainant's natural mental and physical abilities to address and overcome the ongoing conduct of those at the controls. Thereby, past instances where the court(s) have become involved in the ongoing scenarios are instances where the process of the court system has been deliberately abused by those fabricating/orchestrating the scenarios in Complainant's life, (again) to add some legitimacy to the fabrications/orchestrations while simultaneously attempting to overwhelm Complainant's ability to overcome the same. Complainant has been prevented from dating, having children, getting married, having a social life in general. Complainant has been prevented from becoming established in a career and experiencing any satisfaction with accomplishments in Complainant's life. An estimate of the amount of tangible income that Complainant has been prevented from obtaining, due to orchestrating/fabricating a false path through Complainant's life is approximately **$2,499,380.00.** The foregoing are results and intentional deprivations of those things in Complainant's life, and there is no basis for any of the deprivations other than those running said technologies/weapons wanting to 'succeed' in keeping Complainant within the confines of the total immersion scenarios they have worked to fabricate/orchestrate to keep him within. Complainant understands the foregoing. Those running said technologies/weapons continue using said technologies/weapons to torment/torture Complainant as ongoing attempts to cause Complainant to experience physical, mental and emotional harm.

In addition to the foregoing Complainant has experienced intentional, deliberate, reckless, and willful attacks on Plaintiff's physical person, including but not limited to Complainant's brain/mind; head/skull/scalp; teeth, which have required professional examination/care/treatment by dentists to repair damage caused via said technologies/weapons; left shoulder, which remains deformed in appearance as well as remaining injured and in physical pain/discomfort/cramping to the extent of Complainant requiring future examination/treatment to examine and treated the

ongoing condition; chest/heart rate, including mimicking symptoms of anxiety, PTSD, and other conditions relating to the rate at which Complainant's heart beats, including countless manipulations thereof to torment/torture Complainant; Complainant's abdomen, including the deliberately induced hernia Complainant needed surgery to repair in approximately 2009/2010, as well as the ongoing manipulation of Complainant's abdomen and bowels to torment, harass, and cause Complainant distress, discomfort, pain and suffering; genitalia, which are targeted and controlled by those running said technologies/weapons to torment, attack, torture, and attempt to force/coerce Complainant to capitulate to the illegal/unconstitutional conduct (working to have Complainant accept the fabricated/false narrative(s) as reality) by attacking Complainant's gender, sexual preferences, and physical comfort/discomfort via manipulation of Complainant's genitalia by those running/operating said technologies/weapons; legs, as Complainant has ran for exercise for many years and the technologies/weapons are used to deliberately interfere with the muscles and tendons in Complainant's legs to interfere with Complainant's ability to run, (on Tuesday, August 17, 2021) the technologies/weapons were used to cause a deliberate impairment in Complainant's left calf to such an extent that it caused an internal bruise which ended up showing through Complainant's skin, **leaving a scar** on the surface; knees, including deliberately staged attack on Complainant on January 31, 2021, in San Pedro, California, which have resulted in Complainant now having a crunching sound in his right knee which will required additional medical examination/treatment; ankles feet, and ongoing attacks on Complainant's entire body; bug bites were also deliberately administered to Complainant (accomplished by a person(s) with biting insects (i.e. bed bugs) in small vials which (when opened and placed to allow the bug(s) to interact with Complainant's skin) administered bites. The foregoing physical conditions include ongoing need for medical examination and treatment for Complainant's left shoulder, which may require surgery to repair correct. The same is true for injury to Complainant's right knee, with need for further examination/treatment. Likewise, the effects of the mind/body control brain-computer interface technologies/weapons continue being ran on Complainant by those intentionally, recklessly, willfully, and deliberately ignoring the laws and running military-grade technologies/weapons domestically on a U.S. citizen/civilian (Complainant) as he attempts to go about his daily/nightly life and advance in the legal profession. Quantifying the medical damages will require obtaining past medical bills and recommendations of further treatments. Arthroscopic shoulder surgery can cost upwards of **$26,000.00, with additional physical therapy for recovery required following that**. **Arthoscopic knee surgery can cost upwards of $20,000.00, with additional physical therapy for recovery required following that**. The pain and suffering associated with the foregoing are immeasurable and difficult to accurately quantify.

Given the foregoing, Complainant has been unable to begin repaying his law school loans which currently total at approximately **$300,000.00** with interest continuing to accumulate thereon.

Pain and suffering on the foregoing special damages amounts was mentioned briefly above, when Complainant delineated the following:

> [Q]uantifying the extent of those dignitary torts is not something that is documented in the form of a bill(s) and/or consultation(s) with experts in a medical or other professional field. Complainant has experienced such dignitary torts result from and/or in conjunction with the following torts, including but not limited to: Assault, Battery, False Imprisonment, Negligence, Abuse of process, Fraud, Tortious interference, Conspiracy (Civil and Criminal), Malicious prosecution, Nuisance,

Negligence per se, Breach of confidence, Stalking/Harassment, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress; Trespass; Trespass to chattels; Conversion; Defamation – libel/slander/false light; Invasion of privacy – intrusion into seclusion, tortious interference with business relations, tortious interference with contractual relations. Complainant has been subjected to ongoing physical attacks and mental attacks/manipulations. Such physical and mental attacks on Complainant have intentionally, deliberately, and dramatically altered Complainant's path in life, as the entire point of fabricating an overlay onto a person's life is to alter the natural course of that life.

Complainant estimates pain and suffering to be in an amount not less than **$14,468,416.75.**

**c. WRONGFUL DEATH**
Not applicable.

**d. TOTAL**

Complainant's total damages are **$17,362,100.10**

**13a. SIGNATURE OF CLAIMANT**

---

**13b. PHONE NUMBER OF PERSON SIGNING FORM**
(323) 359-9336

**14. DATE OF SIGNATURE**

May 31, 2022

---